**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 13th day of October, 2017.**



_____
Robert D. Berger
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

**John Q. Hammons Fall 2006, LLC,** *et al.*,
      **Debtors.**

Case No. 16-21142
Chapter 11
[Jointly Administered]

_____

### Order Granting, in Part, Debtors' Motion to Estimate Claims and Establish Procedures for the Estimation Process

Debtors in the above-captioned jointly administered cases seek estimation of the proofs of claim filed by Creditor J.D. Holdings, L.L.C., and its affiliates (collectively referred to herein as "J.D. Holdings") and to establish an expedited procedure for the estimation process.[1]

The Court first finds that estimation is appropriate under both 11 U.S.C. § 502(c)(1) (providing for the estimation of "any . . . unliquidated claim, the . . . liquidation of which, as the case may be, would unduly delay the administration of the case") and (c)(2) (providing for the estimation of "any right to payment arising from a right to an equitable remedy for breach of

---

[1] Doc. 1252.

17.10.13 Hammons 502c claim estimation.wpd

performance").[2] The Court therefore grants Debtors' motion, in part, and will estimate the claims of J.D. Holdings and its affiliates. The Court will not adopt Debtors' proposed expedited schedule, however, and will instead require the parties to meet and confer to generate mutually agreeable procedures for moving forward.

I.  **Procedural Background**

Debtors consist of the Revocable Trust of John Q. Hammons and 75 of that trust's directly or indirectly wholly-owned subsidiaries and affiliates. Debtors own dozens of hotels and real estate assets and employ thousands of individuals throughout the United States.

This Court has previously detailed the circumstances surrounding the filing of Debtors' bankruptcy petitions.[3] In summary, John Q. Hammons, now deceased, entered into a Sponsor Entity Right of First Refusal Agreement on September 16, 2005, with J.D. Holdings (hereinafter referred to as the "2005 ROFR"). That 2005 ROFR required the parties bound thereby to sell certain hotel assets by a defined date and, if the 2005 ROFR were breached, stated that J.D. Holdings would "be entitled, in addition to any other remedy that may be available at law or in equity as a result of such failure, to obtain an injunction and/or specific performance of any such obligations as a remedy for such breach." The 2005 ROFR also provided for attorney's fees and costs in seeking to enforce the rights under the agreement.

In addition, the 2005 ROFR provided that in case of material default, J.D. Holdings would be permitted to purchase any of the subject hotel properties related to the breach at 80

---

[2] All future statutory references are to title 11, the Bankruptcy Code, unless otherwise stated.

[3] Doc. 1297.

percent of the price otherwise stated therein. The parties executed an amendment to the 2005 ROFR on December 10, 2008, and added a requirement that in any sale to J.D. Holdings, Debtors had to provide seller financing of at least 22.5 percent of the sale price, plus costs. J.D. Holdings asserts that Debtors breached the 2005 ROFR and the 2008 amendment. J.D. Holdings commenced litigation alleging a breach of the ROFR in Delaware state court, and the parties litigated there for years before Debtors commenced their Chapter 11 cases in mid-2016. About six months later, on December 13, 2016, the Court approved Debtors' rejection of the ROFR.[4]

On December 23, 2016, J.D. Holdings filed a proof of claim for $587.6 million against each Debtor, alleging joint and several liability for the alleged prepetition breaches of the ROFR. Debtors refer to this group of claims as the prepetition claims. Then on January 11, 2017, J.D. Holdings filed a proof of claim for $565.3 million against each Debtor, also for breach of contract, for the § 365(g) statutory breach that occurred when the ROFR was rejected. Debtors refer to this group of claims as the rejection claims. Finally, four of J.D. Holdings' affiliates filed additional proofs of claim: 1) a claim from Atrium Gaming, LLC, for $687,723; 2) a claim from Eastgate Funding, LLC, for $2,400,876; 3) a claim from Jonesboro Funding, LLC, for $2,229,832; and 4) a claim from Atrium TRS IV, LP, and/or Atrium Finance IV, LP, for $928,989.51. The affiliate claims are also tied to rejection of the ROFR in various ways.

Over eight months after the ROFR was rejected and the above-detailed claims were filed, on August 30, 2017, Debtors filed an omnibus objection to all claims immediately above-

---

[4] Doc. 694.

- 3 -
17.10.13 Hammons 502c claim estimation.wpd

Case 16-21142   Doc# 1376   Filed 10/13/17   Page 3 of 14

detailed.[5] Within that objection, Debtors assert 23 separate "counts," arguing for rejection of the claims on at least that many bases. For example, in their Omnibus Claim Objection, Debtors argue, among many other issues, that J.D. Holdings is precluded from enforcing any rights under the ROFR because a prior event of default had occurred as to J.D. Holdings' failure to obtain written approval before bringing an action on the ROFR; that the 20 percent penalty stated within the ROFR is unenforceable; and that therefore any claim based on that penalty should not be permitted, and enforcement of the 20 percent penalty and the 22.5 percent seller loan financing provisions would be a violation of the Uniform Fraudulent Transfer Act and the Bankruptcy Code. In other words, the Court recognizes that the Omnibus Claim Objection raises issues that were the subject of the Delaware state court litigation *and* new issues.

The same date they filed the Omnibus Claim Objection, Debtors also filed the motion to estimate claims that is the subject of this Order. Debtors argue that J.D. Holdings' claims are not properly liquidated, are imprecise and incomplete, and that to fully litigate the claims would unduly delay administration of Debtors' cases. Debtors also contend that the claims assert rights to payment arising from an equitable remedy of specific performance. Debtors note that their exclusive period for filing a plan is quickly approaching and that J.D. Holdings' claims must be estimated because they will not be able to determine the feasibility of any plan without such a decision.

J.D. Holdings responds that any "rush" is due to Debtors' own delay in waiting so long to object to J.D. Holdings' claims and that Debtors have not carried their burden to show the need

---

[5] Doc. 1251.

17.10.13 Hammons 502c claim estimation.wpd

for any urgency. J.D. Holdings also argues that final adjudication of its claims requires a full trial to ensure J.D. Holdings receives a full and fair adjudication of its claims, and it argues that Debtors should be restricted from litigating issues already decided in the Delaware litigation or raising new issues that could have been raised in the Delaware litigation.[6]

The Court heard oral argument on September 18, 2017, considered the parties additional briefing filed September 25, 2017,[7] and is now prepared to rule.

## II.     Analysis

A proceeding "concerning the administration of the estate" and to determine "the allowance or disallowance of claims against the estate" is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B) over which this Court may exercise subject matter jurisdiction.[8]

### A.     Bankruptcy Code and Claim Estimation

The express language of the Bankruptcy Code controls this Court's decision.[9] Section 502 of the Bankruptcy Code is titled "[a]llowance of claims or interests." The Bankruptcy Code defines

---

[6] J.D. Holdings also argues that the correct forum for the determination of its claims is Delaware, an argument the Court will separately address in an Opinion on J.D. Holdings' motion for relief from stay. In addition, J.D. Holdings' arguments concerning whether Debtors are eligible for bankruptcy relief have previously been overruled in a prior Opinion of this Court. Doc. 1297. The Court will not address either of these lines of argument further herein.

[7] Docs. 1334 and 1335.

[8] 28 U.S.C. § 157(b)(1) and § 1334(b).

[9] *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (stating that when interpreting the Bankruptcy Code, the Court "begin[s] with the understanding that Congress says in a statute what it means and means in a statute what it says there") (internal quotation marks omitted); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

"claim" as:

> The term "claim" means– –
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.[10]

The express definition of claim, therefore, is that a claim is a liquidated or unliquidated right to payment or a right to an equitable remedy for breach of performance if the breach gives rise to a right to payment—stated another way, a right to payment arising from an equitable remedy for breach of performance is a claim. Subsection (c) of § 502 then states:

> There shall be estimated for purpose of allowance under this section– –
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
> (2) any right to payment arising from a right to an equitable remedy for breach of performance.

The language of § 502(c) is clear. First, the directive: the Court "shall"—i.e., subsection (c) is mandatory, not permissive. Second, what shall the Court do? The Court shall "estimate for purpose of allowance"—i.e., the statute tells us exactly for what purpose claims should be estimated. Then finally, the statute applies to any (c)(1) or (c)(2) claims or interests. A (c)(1) interest is a contingent or unliquidated claim that would "unduly delay the administration of the case" if it were not fixed or liquidated. A (c)(2) interest is a "right to payment arising from a right to an equitable remedy for breach of performance." We know from the definition of claim that a right to payment arising from an equitable remedy for breach of performance is nothing

---

[10] § 101(5).

17.10.13 Hammons 502c claim estimation.wpd

more than a claim.[11]

Debtors' motion seeks estimation of J.D. Holdings' claims under both § 502(c)(1) and (c)(2). J.D. Holdings argues that subdivision (c)(1) cannot apply because Debtors cannot show any "undue delay" to the administration of their case and (c)(2) cannot apply because its claims are not based on a right to payment arising from an equitable remedy since the Delaware state court litigation seeking specific performance had not ended in a judgment, and thus, no "right to payment" had yet been realized.

Applying subsection (c)(1) first, the Court finds that Debtors have shown all elements. There is no dispute that the claims at issue qualify as "unliquidated" claims. Rather, the dispute focuses on whether the failure to liquidate those claims "would unduly delay the administration of the case." Under § 502(c)(1), "[w]hen considering whether the delay would be 'undue,' a court considers all the circumstances in the case and, in particular, how long the liquidation process would take compared with the uncertainty due to the contingency in question."[12] "The costs and benefits associated with both liquidation and estimation also should be considered. Although liquidation of a claim may take longer, the delay is only undue if it is unjustifiable."[13] Stated another way:

> [E]stimation does not become mandatory merely because liquidation may take longer

---

[11] *See In re Udell*, 18 F.3d 403, 408 (7th Cir. 1994) ("[A] right to an equitable remedy for breach of performance is a 'claim' if the same breach also gives rise to a right to a payment 'with respect to' the equitable remedy. If the right to payment is an 'alternative' to the right to an equitable remedy, the necessary relationship clearly exists, for the two remedies would be substitutes for one another.").

[12] *In re Teigen*, 228 B.R. 720, 723 (Bankr. D.S.D. 1998).

[13] *Id.* (internal citation omitted).

- 7 -
17.10.13 Hammons 502c claim estimation.wpd

Case 16-21142    Doc# 1376    Filed 10/13/17    Page 7 of 14

and thereby delay administration of the case. Liquidation of a claim, in fact, will almost always be more time consuming than estimation. Nonetheless, bankruptcy law's general rule is to liquidate, not to estimate. For estimation to be mandatory, then, the delay associated with liquidation must be 'undue.'[14]

The Court's undertaking is to determine whether failing to liquidate J.D. Holdings' claims would unduly delay the administration of Debtors' jointly administered cases.

As stated above, the definition of undue delay will be circumstantial.[15] This Court considers "undue" delay to be excessive or unwarranted slowing of the administration of a debtor's case, and the Court finds that undue delay here. In these jointly administered cases, J.D. Holdings has filed hundreds of claims. All are unliquidated and require this Court's interpretation of myriad contracts and clauses therein, and many are duplicative. J.D. Holdings is the most active creditor involved in Debtors' cases, and no party could disagree that the resolution of J.D. Holdings' claims is a critical juncture for the administration of Debtors' cases. Debtors need to know which debtor is liable to J.D. Holdings and for what amount, so that the plan they propose is meaningful. Even if this process cannot be done within the exclusive period, *any* entity proposing a plan would need the same information. J.D. Holdings' claims are

---

[14] *In re Dow Corning Corp.*, 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997).

[15] *See, e.g., Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 10 F.3d 944, 957 (2d Cir. 1993) (finding no undue delay, and thus no reason to estimate the claim under § 502(c)(1), when the plan at issue was "substantially consummated"); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 651 (2d Cir. 1988) (finding undue delay where claims were uncertain as to liability and damages, and the delay in having to assess each claim individually could be fatal to a reorganization plan); *Apex Oil Co. v. Stinnes Interoil, Inc. (In re Apex Oil Co)*, 107 B.R. 189, 193 (Bankr. E.D. Mo. 1989) (finding no undue delay where trial in state court action between the parties that would result in liquidated claim was "imminent"); *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) (liquidation of claim by state court, and any appeals thereof, would cause the administration and closing of the case to be unduly delayed).

uncertain as to liability and damages, and delay in fixing them could be fatal to moving these Chapter 11 cases from the theoretical to the working reorganization they propose to be.

In addition, the Court also finds that Debtors have shown that all elements of § 502(c)(2) apply. Under § 502(c)(2), the Court shall estimate the claims of J.D. Holdings and its affiliates if those claims stem from "any right to payment arising from a right to an equitable remedy for breach of performance." Because Debtors rejected the ROFR contract, that rejection "'deprive[d] the nondebtor party [i.e., J.D. Holdings] of a specific performance remedy that it might otherwise have under applicable non bankruptcy law for breach of the contract.'"[16] Because § 502(c)(2) only applies if a right to payment exists, the Court must look to Delaware state law to determine if a right to payment arises from Debtors' breach of the ROFR contract.[17] This is easily determined. In Delaware, the damages remedy is "routinely available" for breach of contract, while "specific performance is considered extra ordinary."[18]

J.D. Holdings makes no argument that Delaware law bars a right to payment in the

---

[16] *In re Tousa, Inc.*, 503 B.R. 499, 504 (Bankr. S.D. Fla. 2014) (quoting *Collier on Bankruptcy* ¶ 365.10[1]).

[17] *Ohio v. Kovacs*, 469 U.S. 274, 280 (1985) (quoting the legislative history for the definition of claim and noting that "in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11"); *Route 21 Assoc. of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75, 90 (S.D.N.Y. 2012) (referring to state law to determine if a right to money damages existed as an alternative to specific performance); *In re Tousa, Inc.*, 503 B.R. at 504 (analyzing state law "to determine whether an alternative remedy is available under applicable non bankruptcy law for breach of contract"); *In re Kilpatrick*, 160 B.R. 560, 565 (Bankr. E.D. Mich. 1993) ("[A]pplicable state law determines the existence *vel non* of a 'right to payment' arising from the breach of a noncompete agreement.").

[18] *Morabito v. Harris*, No. CIV.A. 1463-K, 2002 WL 550117, at *3 (Del. Ch. Mar. 26, 2002).

scenario found herein and has readily admitted throughout Debtors' bankruptcy that it did, in fact, allege an alternative claim for monetary damages in the Delaware state court proceedings. Rather, J.D. Holdings argues that because the Delaware state court litigation seeking specific performance had not yet ended in a judgment, no "right to payment" had been realized. But nothing in the Code requires that a judgment for the right to payment arising out of the equitable remedy have been entered. Rather, the interplay of the definition of claim in § 101(5) and the use of the "right to payment" language in § 502(c)(2) make clear that a claim can arise before judgment is entered on that claim. The claims of J.D. Holdings and its affiliates represent the monetization of the loss of any right to specific performance they had under the ROFR--the exact types of claims § 502(c)(2) is designed to address.

The Court readily finds that estimation is appropriate, and in fact, mandatory in this case.

### B. Claim Estimation Procedure

First, regarding estimation generally, the procedures adopted will be case specific—"using whatever method is best suited to the particular contingencies at issue," with the "principal consideration" an "accommodation to the underlying purposes of the Code."[19] Namely, those goals in Chapter 11 are a quick and efficient reorganization.[20] The efficient

---

[19] *Bitner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982).

[20] *Id.* at 137; *First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1053 (5th Cir. 1992) ("This section of the Code serves at least two purposes. First, it is designed to avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions. By so doing, the trustee can more rapidly determine the payout to each creditor who, in the meantime, receives no interest on its claim. Second, section 502(c)(1) is designed to promote a fair distribution to creditors through a realistic assessment of uncertain claims.").

- 10 -

17.10.13 Hammons 502c claim estimation.wpd

Case 16-21142   Doc# 1376   Filed 10/13/17   Page 10 of 14

administration of the estate is paramount, and "where there is sufficient evidence on which to base a reasonable estimate of the claim, the bankruptcy judge should determine the value."[21] That stated, estimation under § 502(c) "is only for [the] purpose of allowance in the bankruptcy case" and the estimation "process does not result in a liquidated, non-bankruptcy claim."[22]

J.D. Holdings argues for a narrow claims estimation purpose in this case. And it is true that "[a]n estimation under section 502(c) may be for broad or narrow purposes. For example, the court may estimate a claim solely for the purpose of determining a creditor's ability to vote on a plan of reorganization or solely for the purpose of determining feasibility of a plan."[23] Both the method of estimation and its purpose are discretionary decisions for this Court.[24] On the other hand, Debtors argue for a broad estimation for all purposes.

This Court sees no reason to limit the effect of the estimation it intends to render. If the point of estimation is the efficient and speedy administration of the bankruptcy estate, why would this Court limit the impact of an estimation decision? The estimation process is not a final liquidation of the claim. Rather, the estimate "is not a finding or fixing of an exact amount. It is merely the court's best estimate for the purpose of permitting the case to go forward."[25]

J.D. Holdings also argues that estimation would detrimentally alter its due process rights,

---

[21] *Bitner*, 691 F.2d at 135.

[22] *In re Teigen*, 228 B.R. 720, 722 (Bankr. D.S.D. 1998).

[23] *In re Pac. Gas & Elec. Co.*, 295 B.R. 635, 642 (Bankr. N.D. Cal. 2003)

[24] *Id.* ("There is no question that the Court has discretion to determine the appropriate method of estimation, especially the purpose of the estimation.") (internal quotation omitted).

[25] *Id.* (internal quotations omitted).

- 11 -
17.10.13 Hammons 502c claim estimation.wpd

Case 16-21142   Doc# 1376   Filed 10/13/17   Page 11 of 14

because Federal Rules of Bankruptcy Procedure 3007(b) and 7001 require a full adversary proceeding if Debtors wish to challenge the validity of J.D. Holdings' property interests. These Rules require parties objecting to an allowance of a claim, who also seek to determine the "validity, priority, or extent of a lien or other interest in property," to do so via an adversary proceeding.[26] The Committee Notes to Rule 3007 make clear, however, that the change to the Rule to require this procedure was to foreclose "unfair surprise" and to put the party "on notice of the potential for an affirmative recovery."[27] Clearly, J.D. Holdings has been on notice of every step of Debtors' bankruptcy, and this Court will ensure its due process rights are protected. The statutory estimation process under § 502(c) will not run afoul of these Rules.[28]

Debtors propose a sixty-day discovery period, and a two-day estimation trial.[29] J.D. Holdings seeks a far longer discovery period. The Court orders the parties to meet, confer and

---

[26] *See* Fed. R. Bankr. P. 3007(b) and 7001(2).

[27] *See* Fed. R. Bankr. P. 3007(b) advisory committee's note (2007) ("[T]he amendment prohibits a party in interest from including in a claim objection a request for relief that requires an adversary proceeding. A party in interest may, however, include an objection to the allowance of a claim in an adversary proceeding. Unlike a contested matter, an adversary proceeding requires the service of a summons and complaint, which puts the defendant on notice of the potential for an affirmative recovery. Permitting the plaintiff in the adversary proceeding to include an objection to a claim would not unfairly surprise the defendant as might be the case if the action were brought as a contested matter that included an action to obtain relief of a kind specified in Rule 7001.").

[28] J.D. Holdings also contends the parties should be required to mediate before undertaking the costly estimation process. The Court wholeheartedly agrees that mediation would be helpful in this case and will order it in a separate order to occur simultaneously with estimation.

[29] The Court notes, however, that a two-day trial could not possibly include an eight-hour presentation, a two-hour rebuttal, and a thirty-minute closing for each side as Debtors propose. The Court must be cognizant of its staff and building security's time.

propose a joint procedure. Neither party knows what the other side needs to prepare for trial, and the Court certainly does not. As the Court noted in the background recitation above, there are both new and old issues at play. The parties must recognize this when proposing procedures and only propose additional discovery that is truly necessary to update or address specific new issues. It is more effective for the parties to jointly propose an estimation process than for the Court to make up its own out of whole cloth. The parties are, therefore, ordered to meet and thereafter propose an agreed procedure within seven days. If the parties cannot agree, in whole or in part, then they shall file their respective proposals within five days thereafter. The parties are cautioned that the Court may adopt one of the submissions *in toto*.

### III. Conclusion

The Court believes the estimation process envisioned in § 502(c) is tailor-made for the situation at hand, and it therefore orders estimation of J.D. Holdings' claims. The Court will not grant that portion of Debtors' estimation motion seeking the procedures proposed therein, however, and instead requires the parties to meet, confer and propose, within seven days, a suitable estimation process, as outlined in more detail above.

**It is, therefore, by the Court ordered** that Debtors' motion for estimation and to establish a joint procedure[30] is granted in part and denied in part, as more fully set forth herein.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE

---

[30] Doc. 1252.

17.10.13 Hammons 502c claim estimation.wpd

DISTRICT OF KANSAS