**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 13th day of October, 2017.**

_____
Robert D. Berger
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

**John Q. Hammons Fall 2006, LLC,** *et al.*,
    Debtors.

Case No. 16-21142
Chapter 11
[Jointly Administered]

**Memorandum Opinion and Order Granting Debtors' Motion
for Summary Judgment and
Denying Creditor's Motions for Summary Judgment and Relief From Stay**

Creditor J.D. Holdings, LLC and its affiliates (hereinafter referred to as "J.D. Holdings") seek relief from the automatic stay in order to pursue litigation in Delaware state court against Debtors for breach of contract.[1] Debtors have moved for summary judgment seeking denial of J.D. Holdings' motion,[2] and J.D. Holdings has cross-moved for summary judgment seeking relief

---

[1] Docs. 257, 269. Note: Doc. 269 is a duplicate of Doc. 257, without the attached exhibits.

[2] Doc. 775.

17.10.13 Hammons Order on MRS.wpd

from stay.[3] Because the Court finds that J.D. Holdings has not met its burden to show cause for relief from the automatic stay, the Court denies J.D. Holdings' motion for relief from stay and cross-motion for summary judgment seeking relief from stay. The Court grants Debtors' motion for summary judgment dismissing J.D. Holdings' motion.

I. **Findings of Fact**[4]

Debtors consist of the Hammons Trust and 75 of its directly or indirectly wholly owned subsidiaries and affiliates. Debtors' cases are jointly administered, as referenced in the caption above. John Q. Hammons, of which the Hammons Trust is named, entered into a Sponsor Entity Right of First Refusal Agreement ("ROFR") on September 16, 2005 with J.D. Holdings. The ROFR was amended in 2008. Broadly, the ROFR required the parties to sell certain hotels by a defined date, and the 2008 amendment added a requirement that in any sale to J.D. Holdings, Debtors had to provide seller financing of at least 22.5% of the sale price, plus costs. The ROFR also contained a forum selection clause that states, in pertinent part:

> 3.8 <u>Jurisdiction;</u> . . . Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement shall be brought against any of the parties only in the Courts of the State of Delaware or, if it has or can acquire jurisdiction, in the United States District Court for the District of Delaware, and each of the parties consents to the exclusive jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

---

[3] Doc 889.

[4] The Court's Findings of Fact are established by the Court's record and the parties' statements of undisputed material facts. Because stay relief is requested to pursue the state court litigation, the factual recitation will be limited to that aspect of the proceedings. Additional factual background about the parties can be found in this Court's Memorandum Opinion and Order Granting Debtors' Motions for Partial Summary Judgment and Denying Creditor's Motions for Partial Summary Judgment and Dismissal. Doc. 1297.

17.10.13 Hammons Order on MRS.wpd

Litigation concerning the ROFR kicked off in 2012, when J.D. Holdings filed suit in Delaware state court for breach of contract to address breaches of the ROFR. The litigation had been ongoing since that date, until Debtors filed their bankruptcy petitions.

In 2013 Hammons died, triggering a number of affirmative obligations in the ROFR, which in turn triggered more litigation. J.D. Holdings filed an amended complaint seeking specific performance of the ROFR in the form of a compelled transfer of certain hotels to J.D. Holdings. J.D. Holdings then sought, and obtained, a ruling largely in its favor in the state court litigation, interpreting various terms and obligations of the ROFR.[5] J.D. Holdings ultimately also obtained a status quo order from the Delaware state court in October, 2015, enjoining Debtors from taking action outside the ordinary course of business.[6]

In April, 2016, J.D. Holdings filed a motion for contempt for a violation of the status quo order. A trial was already scheduled for July 2016 in the matter, therefore, the Delaware court set the contempt matter to that trial date as well and stated it would hear evidence regarding contempt at that time.[7]

In late June and early July 2016, essentially on the eve of the state court trial, Debtors filed their Chapter 11 petitions. J.D. Holdings initially requested that this Court either dismiss the Chapter 11 cases, abstain from hearing them, or lift or modify the automatic stay.[8] In a

---

[5] *JD Holdings, L.L.C. v. Dowdy*, No. 7480-VCL, 2014 WL 4980669 (Del. Ch. Oct. 1, 2014).

[6] Doc. 257-11, Ex. J.

[7] Doc. 257-13, Ex. L.

[8] Docs. 257, 269.

separate order, this Court addressed the motion for dismissal or abstention[9] and other aspects of that initial motion have been withdrawn.

On December 13, 2016, this Court entered an order approving the rejection of the ROFR by the Debtors pursuant to § 365(a).[10] J.D. Holdings has appealed that decision to the Tenth Circuit Bankruptcy Appellate Panel.[11]

In this Order the Court will address the remaining issue from J.D. Holdings' initial motion: the automatic stay. The specific matters before this Court are:

(1) J.D. Holdings' Motion to Dismiss Debtors' Chapter 11 Petitions, Abstain from these Chapter 11 Cases, or Alternatively, to Lift or Modify the Automatic Stay (Doc. 257), Motion for Relief from Stay (Doc. 269), and related briefing thereto (Docs. 336,[12] 401, 406);

(2) Debtors' Motion for Partial Summary Judgment Denying JD Holdings' Motion for Relief from the Automatic Stay (Doc. 775), and related briefing thereto (Docs. 776, 889-1, 913); and

(3) J.D. Holdings' Cross-Motion for Summary Judgment Granting J.D. Holdings' Motion for Relief from the Automatic Stay (Doc. 889), and related briefing thereto (Docs. 889-1, 928, 968).

**II.     Analysis**

A motion to lift or modify the automatic stay is a core proceeding under 28 U.S.C. §

---

[9] Doc. 1297.

[10] Doc. 694.

[11] Doc. 716.

[12] Five additional creditors have joined Debtors in objecting to J.D. Holdings' stay relief motion. *See* Doc. 326 (Creditor Missouri State University's Objection to J.D. Holdings' requested relief); Doc. 350 (same from Creditor City of Law Vista, Nebraska); Doc. 351 (same from Creditor UMB Bank, N.A.); Doc. 354 (same from Creditor Hawthorn Bank); Doc. 360 (same from Creditor Great Southern Bank).

17.10.13 Hammons Order on MRS.wpd

157(b)(2)(A) ("matters concerning the administration of the estate") and (G) ("motions to terminate, annul, or modify the automatic stay"), over which this Court may exercise subject matter jurisdiction.[13]

  A. **Legal Standard for Assessing Cross Motions for Summary Judgment**

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] An issue is 'genuine' if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[15] 'Material facts' are those that are "essential to the proper disposition of [a] claim" under applicable law.[16] The party moving for summary judgment bears the initial burden of demonstrating—by reference to pleadings, depositions, answers to interrogatories, admissions, or affidavits—the absence of genuine issues of material fact.[17] When analyzing summary judgment, the Court draws all reasonable inferences in favor of the non-moving party.[18]

In a scenario with cross-motions for summary judgment, the Court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary

---

[13] 28 U.S.C. § 157(b)(1) and § 1334(b).

[14] Fed. R. Civ. P. 56(a). Rule 56 is incorporated and applied in bankruptcy courts via Federal Rule of Bankruptcy Procedure 7056.

[15] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[16] *Id.*

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[18] *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

- 5 -
17.10.13 Hammons Order on MRS.wpd

Case 16-21142 Doc# 1379 Filed 10/13/17 Page 5 of 20

judgment is nevertheless inappropriate if disputes remain as to material facts."[19] In addition, the court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor."[20] "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[21]

B.   **The Automatic Stay Generally and the Burden of Proof**

The Bankruptcy Code's automatic stay is governed by 11 U.S.C. § 362,[22] and bankruptcy courts have the power to grant relief from the stay under § 362(d). J.D. Holdings seeks relief from the automatic stay under § 362(d)(1), which states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay– –
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; . . .

The standard for stay relief under § 362(d)(1), then, is "cause." Other than the lack of adequate protection mentioned in § 362(d)(1), "cause" is not further defined in the Bankruptcy Code. Because of this lack of a specific definition, whether to lift the stay is a discretionary

---

[19] *A. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotations omitted).

[20] *United States v. S. Ct. of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (internal quotations omitted).

[21] *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (internal quotations omitted).

[22] Unless otherwise stated, all future citations are to Title 11 of the United States Code (the Bankruptcy Code, 11 U.S.C. 101, et.seq.).

17.10.13 Hammons Order on MRS.wpd

determination to be made on a case by case basis.[23]

Under § 362(g), the party requesting relief from stay has the burden of proof on the issue of the debtor's equity in property; the party opposing such relief has the burden on all other issues. However, as a preliminary matter, the party requesting relief has the burden of showing the cause exists, and must establish a *prima facie* case for the relief requested.[24]

### C. Whether cause exists to lift the stay under § 362(d)

Pending litigation in another forum can be sufficient cause for lifting the stay.[25] In weighing whether to lift the stay to allow litigation to continue in another forum, courts may consider a number of factors. Twelve nonexclusive factors were identified in *In re Curtis*[26] as some of the issues a bankruptcy court might consider in determining whether to lift the stay to

---

[23] *Busch v. Busch (In re Busch)*, 294 B.R. 137, 140 (10th Cir. BAP 2003); *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 525 (10th Cir. BAP 2002) (*citing Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987)).

[24] *In re Hoffman*, 500 B.R. 37, 39 (Bankr. D. Kan. 2013), *as corrected* (Oct. 1, 2013) (*citing First Nat'l Bank of Barnesville v. Alba (In re Alba)*, 429 B.R. 353, 356 (Bankr. N.D. Ga. 2008)).

[25] *Busch*, 294 B.R. at 141.

[26] 40 B.R. 795, 800 (Bankr. D. Utah 1984). The twelve factors identified by *Curtis* are: (1) whether the relief will result in partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceedings involve the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the case and whether it has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for the defense; (6) whether the action essentially involves third parties; (7) whether the litigation would prejudice the interests of other creditors and interested parties; (8) whether any judgment in another forum is subject to equitable subordination under § 510(c); (9) whether the movant's success in a foreign proceeding would result in a judicial lien avoidable by debtor under § 522(f); (10) judicial economy; (11) the degree to which the parties are prepared for trial; and (12) the impact of the stay on the parties and the balance of the hurt.

permit litigation in another forum. These factors, commonly referred to as the "*Curtis* factors," have been widely adopted by bankruptcy courts.[27] Not every factor need be present.[28] Nor does every factor weigh equally.[29] In considering these factors, courts must bear in mind that "the process of determining the allowance of claims is of basic importance to the administration of a bankruptcy estate."[30]

The *Curtis* factors that J.D. Holdings argues weigh in favor of lifting the stay are (1) judicial economy, (2) the progression of the Delaware litigation, (3) the Delaware Chancery Court's ability to resolve all of the issues, (4) the Delaware litigation's lack of interference with the bankruptcy case, and (5) the lack of prejudice to other creditors.[31] J.D. Holdings also argues that the forum selection clause in the ROFR dictates that relief from stay be granted.

### 1. Judicial Economy

Judicial economy is the notion that courts should operate efficiently and "minimize duplication of effort . . . to avoid wasting the judiciary's time and resources."[32] Judicial economy

---

[27] *Busch*, 294 B.R. at 141.

[28] *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014).

[29] *Curtis*, 40 B.R. at 806 (most important factor is the effect of such litigation on the administration of the estate).

[30] *Id*. at 800.

[31] Docs. 257, 269. Initially, J.D. Holdings also argued that litigating the ROFR would not be unduly burdensome on Debtors (balance of the hurt), but has not discussed that factor in subsequent filings. Also, J.D. Holdings has withdrawn all good faith arguments initially stated in its Motion.

[32] Black's Law Dictionary 975 (10th ed. 2014).

alone can be sufficient reason for lifting the stay.[33]

Judicial economy is sometimes cited as weighing in favor of lifting the stay[34] and sometimes against.[35] Unsurprisingly in this case, both parties argue that judicial economy favors their position. Interestingly, outside of the bankruptcy courts, federal courts are more inclined to retain supplemental jurisdiction in the interest of judicial economy.[36]

J.D. Holdings argues that judicial economy would be served by lifting the stay because the Delaware Chancery Court had made previous rulings in this case and was prepared to conduct a trial on the merits, as well as the contempt motion. Debtors counter that judicial economy is better served by resolution of all issues in a bankruptcy court, especially given that the rejection of the ROFR under § 365(a) leaves J.D. Holdings with claims for damages, which should be resolved by this Court.

---

[33] *Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble)*, 776 F.2d 802, 807 (9th Cir. 1985).

[34] *See, e.g.*, *In re Danzik*, 549 B.R. 804, 809 (Bankr. D. Wyo. 2016) (judicial economy weighed in favor of lifting the stay to complete state court litigation, when state court entered judgment in favor of creditor on the same day debtor filed suggestion of bankruptcy with the state court).

[35] *See, e.g., In re Dynamic Drywall, Inc.*, No. 14-11131, 2014 WL 5395722, at *5 (Bankr. D. Kan. Oct. 22, 2014) (judicial economy would not be served by lifting the stay to allow creditors to pursue state court claims when state court no longer had jurisdiction over litigation of fee award due to pending appeal).

[36] *See, e.g., Bank of Okla., N.A., Grove Branch v. Islands Marina, Ltd.*, 918 F.2d 1476, 1480 (10th Cir. 1990); *Barragan v. St. Catherine Hosp.*, 339 F. Supp. 2d 1141, 144 (D. Kan. 2004). As an aside, the Court notes the voluminous filings in both the current proceedings and the state court litigation and is cognizant that whatever forum these parties litigate, significant court time and resources will be used. *See In re U.S. Airways, Inc.*, 445 B.R. 566, 572-73 (Bankr. E.D. Va. 2011) ("courts should not engage in the useless task of closing the barn doors after the horses have fled").

The Court acknowledges that the Delaware court has invested significant time in the parties' disputes, and the parties and their issues would undoubtedly be familiar to that court. Yet Debtors' point is well-taken. Since J.D. Holdings first moved for relief from stay, this Court granted Debtors' motion to reject the ROFR pursuant to § 365(a), thus negating J.D. Holdings' quest for specific performance of the ROFR. Rejection of an executory contract under § 365(a) leaves the aggrieved party with a damage claim for breach.[37] J.D. Holdings has not shown, however, that the Delaware Court is in a better position, or better equipped, to rule on such claims than this Court.[38] Although the Delaware trial was scheduled to begin in July, 2016, the Delaware court is presently in no better position than this Court to rule on the matter. Indeed, ruling on the validity, extent, and dischargeability of debtors' obligations to a prepetition creditor is the *raison d'être* of bankruptcy courts.[39] Also, in this Court any party in interest can lodge an

---

[37] § 365(g); 3 *Collier on Bankruptcy* ¶ 365.10[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Debtors argue that no dispute exists upon which to grant stay relief because the ROFR was rejected and, therefore, J.D. Holdings cannot seek specific performance in *any* court. But J.D. Holdings has an alternate claim for money damages, as discussed more fully below. It has been clear all along that Debtors would object to J.D. Holdings claims; they have now done so, *see* Doc. 1251 (Debtors' Omnibus Objection to Proofs of Claims Filed by J.D. Holdings, L.L.C. and Certain of its Affiliates), and there is a live dispute between the parties.

[38] Debtors asserted counterclaims in the Delaware litigation, and the parties dispute whether those counterclaims are or would progress in the Delaware court independently of the bankruptcy proceeding. This Court finds, however, that Debtors' counterclaims, if any still exist, are irrelevant to its consideration of stay relief on J.D. Holdings' claims against Debtors.

[39] *See In re Reed*, 559 B.R. 194, 203 (Bankr. N.D. Ohio 2016) (stating that seeking a ruling "on the validity, extent, and dischargeability of any obligations . . . as debtors to a prepetition creditor" was "not merely within the power of the bankruptcy courts, it is their *raison d'être*—the core of the federal bankruptcy power" (internal quotations omitted)). *See also* 28 U.S.C. 157(b)(2)(B) (stating that the "allowance or disallowance of claims against the estate" is a core proceeding); *Curtis*, 40 B.R. at 806 (Bankr. D. Utah 1984) (stating that where the "ultimate question in the case" was the allowance of claims and a determination of liability in the state court would only be followed by the fling of a proof of claim in the bankruptcy court, "the

17.10.13 Hammons Order on MRS.wpd

objection to claim, whereas in the Delaware court not all of the 4,000 creditors in this case would have standing to participate in the proceedings. Thus, judicial economy does not weigh in favor of lifting the stay.

### 2. Progression of the Delaware litigation

This bankruptcy case was commenced just a few weeks prior to the scheduled trial in Delaware. J.D. Holdings argues that the imminent trial weighs in favor of lifting the stay, given the extensive discovery, depositions, and overall preparation of the parties in that court, and that starting over in bankruptcy court would be waste of resources and time.

Stay relief may be granted to proceed with an imminent trial.[40] However, as previously discussed, the underlying cause of action in the Delaware litigation—specific performance of a contract—is no longer available as a remedy due to the rejection of the ROFR. J.D. Holdings has a claim for damages for breach of contract.[41] This Court is prepared to resolve the damages claim though the claim estimation process found in § 502(c). In addition, any discovery that was undertaken in the Delaware court can be used here; this Court would not permit the parties to start over, but would require the parties to merely update the discovery undertaken in Delaware, or engage in new discovery only as to any new issues. This factor does not weigh in favor of

---

most expeditious course would be to adjudicate movants' claim here and, if necessary, estimate their claim under the procedure afforded by Section 502(c)").

[40] *See, e.g., In re Dampier*, 523 B.R. 253, 257 (Bankr. D. Colo. 2015) (stay relief warranted to allow creditor to resume pending litigation against Debtors to recover money Debtor-husband stole from former employer; bankruptcy cases filed less than one month from date of scheduled state-court trial).

[41] § 365(g) ("the rejection of an executory contract . . . constitutes a breach of such contract").

- 11 -

17.10.13 Hammons Order on MRS.wpd

Case 16-21142   Doc# 1379   Filed 10/13/17   Page 11 of 20

lifting the stay.

### 3. The Delaware Court's Ability to Resolve the issues

J.D. Holdings argues that the Delaware court's familiarity with Delaware law and with the parties in this case make that court better-suited to resolve this litigation. While the Delaware Chancery court "certainly has a significant amount of experience and expertise in interpreting and applying [state] law, that court cannot be considered a specialized tribunal."[42] Again, rejection of the ROFR rendered it unenforceable; and as Debtors point out, anything learned by the Delaware court in the previous litigation will have little bearing on any future litigation regarding J.D. Holdings' claims. Any litigation in Delaware over the damage claims would not result in a complete resolution of the issues between the parties; as the allowance of the claims would still be for this Court to determine. This factor does not weigh in support of lifting the stay.

### 4. Interference with the Bankruptcy case and impact on other creditors

Courts have long recognized that:

> The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit.[43]

It is difficult to see how the Delaware litigation would not interfere with the administration of the bankruptcy estate. J.D. Holdings is one of Debtors' largest creditors. The proposal and

---

[42] *Dampier*, 523 B.R. at 257–58.

[43] *Curtis*, 40 B.R. at 806.

- 12 -
17.10.13 Hammons Order on MRS.wpd

Case 16-21142   Doc# 1379   Filed 10/13/17   Page 12 of 20

confirmation of a plan will undoubtedly be impacted by the amount of J.D. Holdings' claims; pausing the bankruptcy proceedings in order for the parties to return to state court would be a great interference and further delay proceedings herein. J.D. Holdings' claims—referred to by J.D. Holdings as "hundreds of millions of dollars larger than the next largest claims"[44]—would necessarily impact the other 4,000 creditors, again, many of whom would not have standing in the Delaware litigation.[45]

The Court finds it significant that five creditors have filed motions opposing J.D. Holdings and in support of the Bankruptcy Court's continued oversight.[46] At a minimum, those creditors believe that they will be adversely impacted if the Delaware litigation resumes. Instead of causing no interference with this case, lifting the stay will undoubtedly further complicate and interfere with the bankruptcy proceedings.[47] This factor weighs against lifting the stay.

### 5. Forum Selection Clause

---

[44] Doc. 889-1 p.4.

[45] Docs. 913, 928.

[46] *See* Doc. 326 (Creditor Missouri State University's Objection to J.D. Holdings' requested relief); Doc. 350 (same from Creditor City of Law Vista, Nebraska); Doc. 351 (same from Creditor UMB Bank, N.A.); Doc. 354 (same from Creditor Hawthorn Bank); Doc. 360 (same from Creditor Great Southern Bank).

[47] *See Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 561–62 (C.D. Cal. 2004) (lifting stay to allow creditor to pursue contempt and patent infringement actions against debtor in state court would interfere with bankruptcy case); *In re Towner Petroleum Co.*, 48 B.R. 182, 191 (W.D. Okla. 1985) (relief from stay to pursue state court litigation would hinder, rather than assist, economical administration of the case); *In re Landmark Fence Co., Inc.*, No. CV 11-00934, 2011 WL 6826253, at *5–6 (C.D. Cal. Dec. 9, 2011) (denial of stay relief to resume state court litigation was not an abuse of discretion when the debtor's ability to confirm a feasible Chapter 11 plan was dependent upon resolution of claim).

The ROFR, which Debtors rejected under § 365(a), contains a forum selection clause mandating that disputes be decided by either a Delaware State Court, or the U.S. District Court for the District of Delaware. The forum selection clause is broad: it requires "[a]ny action or proceeding seeking to enforce any provision of, or based on any right arising out of" the ROFR to be brought only in Delaware. J.D. Holdings argues that the litigation over the claims for breach of the ROFR should take place in Delaware due to this forum selection clause.

As a preliminary matter, J.D. Holdings argues, without authority, that the forum selection clause divests this Court of jurisdiction. This Court can find no authority for this proposition; rather, the Supreme Court explicitly has stated that such clauses do not "oust" a court of jurisdiction but that instead a court may exercise its jurisdiction to give effect to the legitimate expectations of the parties.[48] Rejection of a contract under § 365 does not, by itself, affect other rights under the contract that a party might have, such as, for example, an arbitration clause, although there may be other, non-bankruptcy reasons to reject the arbitration.[49] However, some courts have said that rejection under § 365(a) constitutes rejection *in toto*, and at least as far as the debtor is concerned, the debtor cannot reject undesirable aspects of the contract while

---

[48] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972).

[49] *Madison Foods, Inc. v. Fleming Cos., Inc. (In re Fleming Cos., Inc.)*, 325 B.R. 687, 693–94 (Bankr. D. Del. 2005) (holding that "rejection of a contract, or even breach of it, will not void an arbitration clause"). *See also Scherk v. Alberto-Culver*, 417 U.S. 506, 519 (1974) (arbitration clauses are a type of forum-selection clause); *Riederer v. John Dietrich Ins., Inc. (In re Brooke Corp.)*, No. 08-22786, 2011 WL 5117932, at *3 (Bankr. D. Kan. Oct. 26, 2011) (because it was not necessary for resolution of dispute, court declined to weigh in on enforceability of arbitration clause in rejected contract, noting that it was a "difficult, unsettled question for which there is no direct guidance from the Tenth Circuit").

claiming its benefits.[50] Moreover, the voluntary act of filing a proof of claim triggers the process of allowance and disallowance of claims, a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).[51]

This issue involves the interplay of a forum selection clause, rejection of a contract under § 365(a), and the § 362 automatic stay. The Tenth Circuit has not provided guidance on this issue, and our sister jurisdictions within the Circuit have reached differing results.[52] The Supreme Court, however, analyzed a forum selection clause in *M/S Bremen v. Zapata Off-Shore*

---

[50] *Auto Dealers Group v. Auto Dealer Servs., Inc. (In re Auto Dealer Servs., Inc.)*, 65 B.R. 681, 684 (Bankr. M.D. Fla. 1986).

[51] *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (stating that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power" (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989))). As the parties are of course aware, the *Granfinanciera* and *Lagenkamp* cases have been impacted by the Supreme Court's more recent holdings in *Stern v. Marshall*, 564 U.S. 462 (2011) (holding that a counterclaim for tortious interference with a gift asserted by a debtor against a creditor must be resolved by a judge appointed under Article III and that the "public rights" exception that allows some types of claims to be adjudicated in non-Article III forums did not bring the counterclaim within the bankruptcy court's permissible jurisdiction because the counterclaim did not stem from the bankruptcy itself and would not necessarily be resolved in the claims allowance process of bankruptcy), and *Wellness Intern'l Network Ltd. v. Sharif*, 135 S. Ct. 1932 (2015) (holding that Article III allows bankruptcy judges to adjudicate so-called *Stern* claims with the parties knowing and voluntary consent, although that consent need not be express). But although the parties throw around the word "core," they never actually analyze any of this jurisdictional case law, and it seems these matters are left for another day.

[52] *Compare, e.g.*, *D.E. Frey Group, Inc. v. FAS Holdings, Inc. (In re D.E. Frey Group, Inc.)*, 387 B.R. 799, 807 (D. Colo. 2008) (debtor's claims against creditor should be litigated in U.S. District Court for the Southern District of New York due to enforceable forum selection clause), *with Harpole Constr., Inc. v. Medallion Midstream, LLC (In re Harpole Constr., Inc.)*, No. 15-12630, 2016 WL 7373780, at *5-6 (Bankr. D.N.M. Nov. 23, 2016) (creditor's breach of contract claim in Chapter 11 case would not be transferred to different venue in spite of forum selection clause, claim resolution is core bankruptcy proceeding and policy of centralized resolution of claims outweighed policy of enforcing forum selection clauses).
- 15 -
17.10.13 Hammons Order on MRS.wpd

*Co.*,[53] and stated that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[54] Under the *Bremen* framework, a forum selection clause may be unreasonable if it would cause great inconvenience, is contrary to a strong public policy, or if the clause is invalid for reasons such as fraud or overreaching.[55] The *Bremen* case concerned an international shipping dispute, however, not bankruptcy.[56] And the Supreme Court has subsequently recognized that the presumption of validity of a forum selection clause from the *Bremen* case must give way when Congress specifically enacts legislation that controls.[57]

The Bankruptcy Code does not specifically address this matter, but the Bankruptcy Code's strong public policy in favor of centralized claim resolution is cited by Debtors as favoring retaining oversight of this matter. Most courts that have touched on the issue have shied away from bright line, per se rules disfavoring such clauses, instead adopting a case by case

---

[53] 407 U.S. 1 (1972).

[54] *Id.* at 10.

[55] *Id.* at 15-16.

[56] *Id.* at 11 ("We believe this is the correct doctrine to be followed by federal district courts *sitting in admiralty*.") (emphasis added).

[57] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988) (in diversity action in which party moved for transfer from U.S. District Court for the Northern District of Alabama to Southern District of New York based on forum selection clause, 28 U.S.C. § 1404(a) was sufficiently broad to control transfer issue and statute represented a valid exercise of Congressional authority under constitution; Court of Appeals erred in only considering the *Bremen* factors instead of statute).

approach.[58]

Here, Debtors argue that the second *Bremen* unreasonableness factor—strong public policy—applies. Debtors say the strong public policy in favor of centralized claim resolution favors retaining oversight of this matter in bankruptcy court. Debtors argument is persuasive. When disputed matters "constitute core proceedings and are not inextricably intertwined with non-core proceedings," a court may decline to enforce a forum selection clause in light of the strong public policy of the Bankruptcy Code's primary objective of centralized resolution of disputes.[59] Some courts have found that the filing of a proof of claim may transform a contract-based state law cause of action into a core proceeding.[60] Resolution of claims is a core proceeding under 28 U.S.C. § 157(b)(2)(B). So long as the claim is not inextricably intertwined

---

[58] *D.E. Frey Group, Inc.*, 387 B.R. at 807 ("Rather than analyze the three *Bremen* factors, however, the Bankruptcy Court improperly created a bright line per se rule that presumed *Bremen* to be met any time a bankruptcy court considers a core proceeding. While there is a public policy consideration that may be impaired when core proceedings are transferred, the public policy consideration is only one factor and should not be given controlling weight in light of the permissive nature of bankruptcy jurisdiction."); *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006) (stating that the decision of whether to enforce an arbitration clause as to a core proceeding "requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy" and commending the bankruptcy and district courts' "thoughtful analysis" of all competing interests in the case).

[59] *Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044, 1051 (9th Cir. 2014); *Harpole Constr., Inc. v. Medallion Midstream, LLC (In re Harpole Constr., Inc.)*, No. 15-12630, 2016 WL 7373780, at *5-6 (Bankr. D.N.M. Nov. 23, 2016).

[60] *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 644 (D. Del. 2011) (concluding htat a state law contract-based cause of action constituted a core bankruptcy proceeding "because it directly affects the allowance or disallowance of claims against [the] estate"); *see also Lagenkamp v. Culp*, 498 U.S. 42, 44 (1990) (stating that the voluntary act of filing a proof of claim "triggers the process of allowance and disallowance of claims, thereby subjecting [the claimant] to the bankruptcy court's equitable power" (internal quotations omitted)).

with other litigation, the bankruptcy court is the appropriate forum.[61] Retaining core proceedings in a bankruptcy court "promotes the well-defined policy goals of centralizing all bankruptcy matters in a specialized forum to ensure the expeditious reorganization of debtors."[62]

This is not to say that every dispute involving a prepetition claim will lead to the same result. In *D.E. Frey Group, Inc.,* the U.S. District Court for the District of Colorado reversed the bankruptcy court's finding that a debtor's adversary complaint for breach of contract against a creditor should be litigated in the U.S. District Court for the Southern District of New York due to an enforceable forum selection clause.[63] However, that case involved a debtor's affirmative claims against a creditor, and the bankruptcy court in that case had adopted a per se, bright line rule that forum selection clauses were unenforceable when the dispute concerned the adjudication of claims.[64] Instead, the District Court said that the *Bremen* factors should be considered, and found that in that particular case the enforcement of the forum selection clause

---

[61] *Alsohaibi v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c))*, 508 B.R. 814, 820 (S.D.N.Y. 2014) (stating that forum selection clauses are not binding "'provided the litigation at issue amounts to a core proceeding and is not inextricably intertwined with non-core matters'" (quoting *Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 837 (S.D.N.Y. 2002)).

[62] *N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.)*, 221 B.R. 609, 622 (Bankr. D. Mass. 1998); *In re Wheeling-Pittsburgh Steel Corp. v. Blue Cross & Blue Shield of W. Va., Inc.*, 108 B.R. 82, 85 (Bankr. W.D. Pa. 1989) ("Public policy and inconvenience require us to deny enforcement of Blue Cross's forum selection clause. Public policy favors centralization of bankruptcy proceedings in the bankruptcy court where the case is pending. A disputed claim is a core matter to be heard by the bankruptcy court despite a forum selection clause. Proceeding in two separate forums to adjudicate related claims and counterclaims is a manifest inconvenience for the parties and the court system. The case is pending in this court. This is the most convenient forum.").

[63] 387 B.R. 799, 807 (D. Colo. 2008).

[64] *Id.* at 807.

would not be inherently unfair.⁶⁵

The Court is persuaded that in this case the strong public policy of centralized resolution of claims supports keeping the matter in bankruptcy court and not enforcing the forum selection clause in the rejected ROFR. The Court has invested significant time and resources to this litigation, and the commencement of the claims estimation process is imminent. Although the Delaware litigation had been ongoing for four years prior to the commencement of the bankruptcy case, the parties were focused on specific performance of the ROFR, and had not focused on a monetary claim for damages for breach of contract. Therefore the Delaware Court is in no better position to resolve the dispute than this Court, and, in fact, returning to the Delaware Court would cause a significant delay and burden to the resolution of the bankruptcy case, as well as be inherently unfair to the numerous other creditors who do not have standing to participate in the Delaware litigation. For these reasons, this factor does not weigh in favor of lifting the stay.

### III. Conclusion

J.D. Holdings has not carried its initial burden of showing that cause exists to lift the automatic stay. The Court therefore grants Debtors' motion for summary judgment,⁶⁶ and denies J.D. Holdings' motion to lift stay ⁶⁷ and J.D. Holdings' cross-motion for summary judgment seeking relief from the automatic stay.⁶⁹

---

⁶⁵ *Id.*

⁶⁶ Doc. 775.

⁶⁷ Docs. 257, 269.

⁶⁹ Doc. 889.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS