Prepared by and Return to:
Kevin C. Donaldson
Jones, Childers, Donaldson & Webb, PLLC
P.O. Box 3010
Mooresville, NC 28117

**NORTH CAROLINA**
**IREDELL COUNTY**

**AGREEMENT REGARDING JOINT ROADWAY & UTILITY EASEMENT, LAKEFRONT ACCESS EASEMENT, TEMPORARY GRADING & CONSTRUCTION EASEMENT, AND TEMPORARY ACCESS EASEMENT**

THIS AGREEMENT REGARDING JOINT ROADWAY & UTILITY EASEMENT, LAKEFRONT ACCESS EASEMENT, TEMPORARY GRADING & CONSTRUCTION EASEMENT, AND TEMPORARY ACCESS EASEMENT (this "Agreement") made and entered into to be effective this the ________ day of _________, 2017 (the "Effective Date"), by and between **LANGTREE PROPERTIES, LLC, a North Carolina limited liability company** (hereinafter referred to as "Langtree") and **JACQUELINE DOWDY and GREGGORY GROVES AS SUCCESSOR TRUSTEES OF THE REVOCABLE TRUST OF JOHN Q. HAMMONS DATED DECEMBER 28, 1989, AS AMENDED AND RESTATED** (hereinafter referred to as "Hammons");

***WITNESSETH:***

THAT WHEREAS, Langtree is the owner in fee simple of that certain tract of land located in Mooresville, North Carolina along and near Alcove Road and more particularly described in Deed Book 1753 at Page 2303 in the office of the Register of Deeds for Iredell County, North Carolina, as more particularly described on Exhibit A attached hereto and incorporated herein by this reference (the "Langtree Property"); and

WHEREAS, Hammons is the owner in fee simple of those certain tracts of land

located in Mooresville, North Carolina along Alcove Road, adjoining the Langtree Property, and being more particularly described in Deed Book 1650 at Page 497 and Deed Book 1753 at Page 1125 in the office of the Register of Deeds for Iredell County, North Carolina, as more particularly described on Exhibit B attached hereto and incorporated herein by this reference (collectively, the "Hammons Property"); and

WHEREAS, Langtree desires to develop the Langtree Property and, in connection therewith, desires to construct a roadway along a common boundary line of the Langtree Property and the Hammons Property, as well as a roadway along the northern boundary of the Hammons Property, all for the joint use of the Langtree Property and the Hammons Property (the "Joint Roadway"); and

WHEREAS, both the Langtree Property and the Hammons Property will each use and access the Joint Roadway which, when constructed, will leave the right-of way of Alcove Road and run along the northern boundary of the Hammons Property and across the common property line of the Langtree Property and Hammons Property; and

WHEREAS, the parties to this agreement hereby agree that it is in their mutual interests that said Joint Roadway be for the common use of the Langtree Property and Hammons Property; and

NOW, THEREFORE, for and in consideration of the mutual promises and covenants herein and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

**1. Grant of Joint Roadway and Utility Easement.** The parties hereto mutually agree, and by their signature hereto hereby grant, bargain and convey to each other, theirs successors and assigns, a perpetual, non-exclusive right, privilege and easement, as an appurtenance to, for the benefit of and running with the Hammons Property and Langtree Property, respectively, to provide ingress, egress and regress, and to allow for the constructing, reconstructing, inspecting, maintaining, using, and repairing underground utility lines and facilities for water, sewer, telecommunications, natural gas, and electric, which easement rights and privileges shall commence immediately upon the recording of this Agreement to both the Langtree Property and Hammons Property, a "Joint Roadway and Utility Easement", for all of the purposes set forth above, as depicted on the survey attached hereto as Exhibit C, and more particularly described on Exhibit D.

**2. Lakefront Access Easement**. Langtree hereby grants to Hammons, its successors and assigns, licensees, employees and invitees, a perpetual, non-exclusive right, privilege and easement for pedestrian access, ingress and egress to and from Lake Norman over and across the Langtree Property and all sidewalks, boardwalks and pathways located on the Langtree Property (the "Lakefront Access Easement"). The boardwalk located on the Langtree Property is depicted on Exhibit E attached hereto and incorporated herein. The Lakefront Access Easement shall be for the benefit of and run with the Hammons Property.

**3.** **Temporary Grading and Construction Easement.** Hammons hereby grants to Langtree, its successors and assigns, a temporary grading and construction easement along the Joint Roadway described above and twenty-five (25) feet on the Hammons side of the Joint Roadway, as depicted on Exhibit C attached hereto and incorporated herein, for the purpose of constructing and installing utilities and the roadway within the Joint Roadway described above (the "Temporary Construction Easement"). The Temporary Construction Easement shall terminate upon completion of construction of the Joint Roadway and Utility Easement described in Paragraph 1, above, but in no event later than thirty-six (36) months from the date of execution of this Agreement. The Temporary Construction Easement is more particularly described on Exhibit F.

**4.** **Temporary Access Easement.** Hammons hereby grants to Langtree, its successors and assigns a temporary access easement twenty (20) feet in width, along the gravel access road running along the Hammons Property as set forth on Exhibit C attached hereto and incorporated herein running from Alcove Road to the Langtree Property (the "Temporary Access Easement", and collectively with the Temporary Construction Easement, the Lakefront Access Easement and the Joint Roadway and Utility Easement, the "Easements")). The Temporary Access Easement shall terminate upon the completion of construction of the Joint Roadway and Utility Easement described in Paragraph 1, above, but in no event later than thirty-six (36) months from the date of execution of this Agreement, and Langtree agrees to waive any and all rights in and to the Temporary Access Easement thereafter. The Temporary Access Easement is more particularly described on Exhibit G.

**5.** **Maintenance of Easements**. Langtree and its successors and assigns shall be solely responsible for the construction, repair, maintenance, and replacement costs and expenses associated with the Easements and agrees to maintain the same and the improvements located thereon in good condition and repair for so long as the Easements continue to exist. However, Langtree shall not be responsible for any repair, maintenance and/or replacement costs and expenses that become necessary as the result of any action, construction or damage caused by Hammons or its agents, contractors, successors or assigns. Hammons and its successors and assigns shall be solely responsible for such costs and expenses. Langtree's obligation to maintain such Easements shall continue until such time that the Easements are dedicated to and expressly assumed by a governing municipality, at which point, Langtree's maintenance obligations shall cease. Langtree agrees that if Langtree fails to perform any of its maintenance obligations hereunder and such non-performance continues for a period of thirty (30) days following receipt of written notice thereof, Hammons shall have the right, but not the obligation, to perform such work on behalf of Langtree, and in such event, Langtree shall reimburse Hammons upon demand for the out-of-pocket costs actually expended by Hammons in connection with the performance of such work. Any such amounts remaining owing and unpaid shall be a lien on the Langtree Property in favor of Hammons.

6. **Perpetual and Non-Exclusive Easement.** Except as otherwise provided in this Agreement and except for the Temporary Construction Easement and Temporary Access Easement granted herein which shall terminate no later than thirty-six (36) months from the date of execution of this Agreement, the Easements granted herein are and shall be permanent, non-exclusive, and perpetual. All covenants and provisions of this Agreement shall be deemed to run with the land and shall run with and burden the properties affected thereby for the respective benefit of the Langtree Property and the Hammons Property, as stated herein. All covenants and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, successors-in-title, assigns and legal representatives.

7. **Indemnification**. Langtree shall indemnify, defend, and hold Hammons and its successors and assigns, employees, agents, contractors, invitees, visitors and guests harmless for any and all claims, liabilities, damages, injury, and causes of action whatsoever, including, but not limited to reasonable attorneys' fees, costs and expenses arising out of or caused by the acts of Langtree, or anyone claiming by, through or under Langtree, with respect to the exercise of the rights and privileges granted herein.
.

8. **Insurance**. At all times during the term of the Easements, Langtree shall continuously maintain, at its expense, (i) a policy of commercial general liability insurance in an aggregate sum of not less than Two Million and No/100 Dollars ($2,000,000.00) (or such greater amount as shall reasonably be determined by Hammons in its sole discretion) combined single limit insuring against bodily injury or property damage occurring on or arising from the use by Langtree, its successors, assigns, employees or agents of the Easements granted herein, and (ii) builder's risk insurance during all periods of construction. Said insurance shall name Hammons as an additional insured.

9. **Amendment.** This Agreement may be modified, amended or terminated by the recording of an agreement of modification, amendment or termination executed by the current owners from time to time of the Langtree Property and the Hammons Property.

10. **Governing Law.** This Agreement is to be governed, construed and enforced in accordance with the laws of the State of North Carolina.

TO HAVE AND TO HOLD the rights and easements hereby granted to the respective parties to this Agreement and their successors in title forever, it being agreed that the rights and easements hereby granted are for the uses described herein as located on the respective properties and said rights and easements are to run with the properties of Langtree and Hammons as more particularly described hereinabove.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed this _____day of _____________, 2017.

**LANGTREE PROPERTIES, LLC**,
a North Carolina limited liability company

By: Land Acquisition and Investments, LLC
Its: Manager

By: ______________________________
Richard W. Howard, Manager

**JACQUELINE DOWDY and GREGGORY GROVES AS SUCCESSOR TRUSTEES OF THE REVOCABLE TRUST OF JOHN Q. HAMMONS DATED DECEMBER 28, 1989, AS AMENDED AND RESTATED**

By: ____________________________
Jacqueline Dowdy, Successor Trustee

By: ____________________________
Greggory Groves, Successor Trustee

STATE OF NORTH CAROLINA
COUNTY OF IREDELL

I, certify that the following persons, who are known to me or proved to me on the basis of satisfactory evidence to be the persons described, personally appeared before me this day; each acknowledging to me that they voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: **Richard W. Howard, Manager of Land Acquisition and Investments, LLC, Manager of Langtree Properties, LLC, a North Carolina limited liability company.**

Date:______________ ______________________________________

_________________________, Notary Public

(Official Seal) My commission expires: ________________

STATE OF ____________
COUNTY OF __________

I, certify that the following persons, who are known to me or proved to me on the basis of satisfactory evidence to be the persons described, personally appeared before me this day; each acknowledging to me that they voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: **Jacqueline Dowdy, as Successor Trustee of the Revocable Trust of John Q. Hammons dated December 28, 1989, as amended and restated.**

Date:______________ ______________________________________

_________________________, Notary Public

(Official Seal) My commission expires: _______________

STATE OF ____________
COUNTY OF __________

I, certify that the following persons, who are known to me or proved to me on the basis of satisfactory evidence to be the persons described, personally appeared before me this day; each acknowledging to me that they voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: **Greggory Groves, as Successor Trustee of the Revocable Trust of John Q. Hammons dated December 28, 1989, as amended and restated.**

Date:______________ ______________________________________

_________________________, Notary Public

(Official Seal) My commission expires: ________________

# EXHIBIT A – DESCRIPTION OF LANGTREE PROPERTY

Lying in Davidson Township, Iredell County, North Carolina:

BEGINNING at a point in the line of that certain 4 acre tract conveyed to John Q. Hammons, Trustee of the John Q. Hammons Revocable Trust dated December 28, 1989, recorded in Book 1753, Page 1125, Iredell County Registry, said point lying North 78-41-18 West 124.03 feet from a set #5 rebar lying in the margin of the right of way for Alcove Road, said rebar having coordinates of N:654942.939 feet and E:1446137.714 feet NAD 83/2011 GRID; and running with a new line of Langtree Properties South 11-18-42 West 399.31 feet to a point in the northern margin of Wade's Way; thence with the northern margin of Wade's Way as follows: (1) South 85-43-16 East 98.44 feet to a found #5 rebar; and (2) on a curve to the left, said curve having a radius of 30.00 feet for an arc length of 43.44 feet and a chord bearing of South 52-47-43 West 39.74 feet to a point in the western margin of the right of way for Alcove Road; thence with the western margin of the right of way for Alcove Road South 11-18-42 West 97.55 feet to a set #5 rebar in the southern margin of the right of way for Wades Way; thence with the southern margin of Wades Way the following courses and distances: (1) on a curve to the left, said curve having a radius of 30.00 feet for an arc length of 42.60 feet and a chord bearing of North 45-02-44 West 39.11 feet to a point; (2) North 85-43-16 West 17.69 feet to a found #5 rebar (bent) and (3) North 85-43-16 West 255.40 feet to a point; thence crossing Wades Way North 04-16-44 East 45.00 feet to a point in the northern margin of the right of way for Wades Way; thence with five new lines of Langtree Properties, LLC as follows: (1)North 45-36-01 West 80.01 feet to a point; (2) North 54-19-53 West 40.04 feet to a point; (3) North 20-24-25 West 36.94 feet to a point; (4) North 85-31-07 West 21.02 feet to a point; and (5) North 66-58-38 West 56.05 feet to a found #4 rebar at a common corner with Dale Investments, LLC (see Book 2121, Page 288) said rebar lying in the southern margin of Tax Parcel 4645-54-3773 owned by Langtree Properties LLC (see Book 2085, Page 711); thence with the southern margin of said parcel as follows: (1) North 75-57-51 West 105.24 feet to a point; (2) South 04-17-51 East 26.39 feet to a point; and (3) South 89-34-00 West 371.16 feet to a found #4 rebar at a common corner with Tax Parcel No. 4546-54-0931; thence with said tax parcel as follows: (1) South 89-34-00 West 120.69 feet to a point, a common corner with Lot 5 as set forth on Plat Book 20, Page 78; (2) North 06-57-16 West 357.16 feet to a found #4 rebar located in the 760 contour elevation line of Lake Norman; thence with the contour elevation line of Lake Norman the following courses and distances: (1) North 69-21-30 East 11.10 feet to a set #5 rebar; (2) South 73-52-32 East 74.97 feet to a point; (3) North 39-07-45 East 55.95 feet to a found #4 rebar (4) North 39-07-45 East 42.58 feet to a set #5 rebar; (5) North 33-46-57 East 66.10 feet to a set #5 rebar; (6) North 86-56-57 East 71.90 feet to a set #5 rebar; (7) South 87-10-03 East 127.10 feet to a set #5 rebar; (8) South 84-20-03 East 81.40 feet to a set #5 rebar; (9) South 23-34-03 East 310.80 feet to a set #5 rebar; (10) North 78-36-57 East 50.40 feet to a set #5 rebar; (11) North 23-17-03 West 466.80 feet to a set #5 rebar; (12) North 19-59-57 East 149.90 feet to a set #5 rebar; (13) North 60-42-57 East 60.30 feet to a set #5 rebar; (14) North 36-24-57 East 67.80 feet to a set #5 rebar; (15) North 49-57-03 West 64.70 feet to a point; (16) North 13-34-57 East 92.30 feet to a point; (17) North 73-39-57 East 102.90 feet to a set #5 rebar; (18) North 47-

11-57 East 70.20 feet to a set #5 rebar; (19) North 58-31-57 East 57.40 feet to a set #5 rebar; (20) South 63-31-03 East 74.70 feet to a set #5 rebar; (21) North 88-02-57 East 61.60 feet to a point; (22) South 77-39-03 East 85.04 feet to a found 1" pipe at a common corner with Marie Locklear Watts (see Book 654, Page 626); thence with the Watts line South 09-40-24 East 46.77 feet to a 1.0" existing iron pipe, a common corner with John Q. Hammons Revocable Trust (see Book 1753, Page 1125); thence with four lines of Hammons as follows: (1) South 55-53-47 West 241.00 feet to a set #5 rebar; (2) South 18-17-43 West 158.04 feet to a set #5 rebar; (3) South 09-45-44 East 401.58 feet to a set #5 rebar and (4) South 78-41-18 East 275.97 feet to the point and place of Beginning, the same containing 14.060 acres, more or less, all in accordance with that certain survey prepared by Jimmy N. Faires, PLS dated April 13, 2015.

# EXHIBIT B – DESCRIPTION OF HAMMONS PROPERTY

Parcel I:

BEING A PORTION OF THE "CALDWELL PROPERTY" TRACT I
LYING IN THE DAVIDSON TOWNSHIP, NORTH CAROLINA
DEED BOOK 1114 PAGE 1103

COMMENCING FROM A NCGS MONUMENT "EDMISTON" , HAVING NAD 83 GRID COORDINATES OF NORTHING: 655647.3927 FEET, EASTING: 1449755.5030 FEET, THENCE SOUTH 84-09-07 WEST, A GROUND DISTANCE OF 3569.55 FEET (COMBINED FACTOR: 0.999843837) TO A #4 REBAR SET, HAVING NAD 83 GRID COORDINATES OF NORTHING: 655283.7538 FEET, EASTING: 1446205.0867 FEET, LOCATED ON THE WESTERN RIGHT-OF-WAY OF ALCOVE ROAD; THENCE NORTH 79-53-51 WEST, 483.83 FEET TO A #4 REBAR SET; THENCE NORTH 11-18-42 EAST, 163.00 FEET TO A #4 REBAR SET; THENCE NORTH 43-18-46 EAST, 241.00 FEET TO A FOUND 1 INCH IRON PIPE; THENCE SOUTH 89-16-44 EAST, 362.18 FEET TO A FOUND #4 REBAR, LOCATED ON THE WESTERN RIGHT-OF-WAY OF ALCOVE ROAD; THENCE WITH SAID RIGHT-OF-WAY, SOUTH 11-18-42 WEST, 423.73 FEET TO THE POINT AND PLACE OF BEGINNING. CONTAINING 4.00 ACRES MORE OR LESS.

Parcel 2:

BEGINNING at a #4 rebar in the western margin in the right of way for Alcove Rd., said beginning point being a common corner of John Q. Hammons, Trustee of the John Q. Hammons Revocable Trust Deed Book 1650, page 497, thence from said beginning point with line of Hammons as follows 1: North 79-53-51 West 483.83 feet to a #4 rebar 2: North 11-18-42 East 163.00 feet to a #4 rebar 3: North 43-18-46 East 241.00 feet to a 1'' pipe a common corner with Hammons and Marie Locklear Watts deed Book 654 Page 626, thence with 4 new lines of grantor 1: South 55-53-47 West 241.00 feet to an iron pin set 2: South 18-17-43 West 158.04 feet to an iron pin 3: South 09-45-44 East 401.58 feet to an iron pin set thence South 78-41-18 East 400.00 feet to an iron pin in the Western margin of Alcove Rd thence with the margin of said right of way North 11-18-42 East 346.07 feet to the point and place of beginning the same containing 4.00 acres more or less and being designated as tract 1A on that certain survey entitled Acquisition Survey for Richard and Pamela Howard dated April 4, 2006 prepared by Jimmy N. Faires, Professional land s

**EXHIBIT C – SURVEY**

SEE ATTACHED

I, JIMMY N. FAIRES, CERTIFY THAT THIS PLAT WAS DRAWN UNDER MY SUPERVISION FROM AN ACTUAL SURVEY MADE UNDER MY SUPERVISION; DEED DESCRIPTION AND/OR MAP BOOK SEE, PAGE NOTE #2 ; THAT THE BOUNDARIES NOT SURVEYED ARE CLEARLY INDICATED AS DRAWN FROM INFORMATION FOUND IN BOOK 84 , PAGE 110-112 ; THAT THE RATIO OF PRECISION AS CALCULATED IS 1:10,000+; THAT THIS PLAT WAS PREPARED IN ACCORDANCE WITH THE STANDARDS OF PRACTICE FOR LAND SURVEYING IN NORTH CAROLINA (21 NCAC 56.1600). WITNESS MY ORIGINAL SIGNATURE, REGISTRATION NUMBER AND SEAL THIS ____ DAY OF ______________, 2017.

**PRELIMINARY**

JIMMY N. FAIRES, PLS
LICENSE NUMBER: L-4311

# PRELIMINARY NOT FOR RECORDATION CONVEYANCES AND/OR SALES







| CURVE TABLE | | | | |
|---|---|---|---|---|
| CURVE | RADIUS | ARC | BEARING | CHORD |
| C1 | 175.00' | 106.37' | N73°18'31"E | 104.74' |
| C2 | 150.00' | 89.28' | S72°56'54"W | 87.97' |
| C3 | 175.00' | 114.85' | N37°05'46"E | 112.80' |
| C4 | 150.00' | 98.44' | S37°05'45"W | 96.68' |
| C5 | 175.00' | 85.70' | N04°16'00"E | 84.84' |
| C6 | 150.00' | 61.14' | S06°37'04"W | 60.72' |
| C7 | 150.00' | 12.31' | S07°24'40"E | 12.31' |
| C8 | 225.00' | 107.08' | N69°31'43"E | 106.07' |
| C9 | 225.00' | 147.70' | N37°06'05"E | 145.06' |
| C10 | 225.00' | 110.18' | N04°16'00"E | 109.08' |

| LINE TABLE | | |
|---|---|---|
| LINE | BEARING | DISTANCE |
| L1 | N11°18'42"E | 50.87' |
| L2 | S11°18'42"W | 25.43' |
| L3 | N55°53'47"E | 5.49' |
| L4 | N55°53'47"E | 60.92' |
| L5 | N18°17'43"E | 39.98' |
| L6 | N78°41'18"W | 26.79' |
| L7 | S78°41'18"E | 26.79' |
| L8 | N78°41'18"W | 26.79' |
| L9 | N11°18'42"E | 20.02' |
| L10 | N76°09'41"W | 99.65' |
| L11 | S76°09'41"E | 99.25' |
| L12 | N83°30'43"W | 57.05' |
| L13 | S83°30'43"E | 55.67' |
| L14 | N84°03'29"W | 104.18' |
| L15 | S84°03'29"E | 106.07' |
| L16 | N72°43'22"W | 67.67' |
| L17 | S72°43'22"E | 73.97' |
| L18 | N48°21'31"W | 136.79' |
| L19 | S48°21'31"E | 173.70' |
| L20 | N47°42'55"W | 44.58' |

| LINE TABLE | | |
|---|---|---|
| LINE | BEARING | DISTANCE |
| L21 | S46°02'46"E | 68.85' |
| L22 | N46°02'46"W | 72.05' |
| L23 | S18°17'43"W | 39.98' |
| L24 | N11°18'42"E | 40.07' |
| L25 | S55°53'47"W | 66.41' |
| L26 | N79°53'51"W | 30.41' |
| L27 | N79°53'51"W | 7.82' |
| L28 | S11°18'42"W | 21.87' |
| L29 | S11°18'42"W | 1.88' |
| L30 | S09°45'44"E | 10.77' |
| L31 | N55°53'47"E | 66.36' |
| L32 | N18°17'43"E | 39.98' |

SURVEYOR NOTES

1) ALL DIMENSIONS SHOWN ARE IN US SURVEY FEET AND DECIMALS THEREOF AND ARE HORIZONTAL GROUND DISTANCES UNLESS OTHERWISE INDICATED. AREA BY COORDINATE METHOD.

2) THIS EASEMENT EXHIBIT IS BASED ON DEED BOOK 1650 PAGE 497, DEED BOOK 1753 PAGE 1125, DEED BOOK 1753 PAGE 2303 AND PLAT BOOK 56 PAGES 126 AS RECORDED AT THE IREDELL COUNTY REGISTER OF DEEDS.

3) PROPOSED EASEMENT EXHIBIT WAS PREPARED WITHOUT THE BENEFIT OF A TITLE EXAMINATION BY AN ATTORNEY. THE PROPERTY MAY BE SUBJECT TO RECORDED OR UNRECORDED RIGHTS-OF-WAY, EASEMENTS, RESTRICTIVE COVENANTS OR CONDITIONS NOT OBSERVED OR SHOWN HEREON.

4) CORNERS NOT LABELED "FOUND" OR "SET" ARE COMPUTED POINTS ONLY. ALL CORNERS "FOUND" or "SET" ARE FLUSH WITH THE GROUND, UNLESS OTHERWISE NOTED.

5) THIS SURVEY IS OF AN EXISTING PARCEL OR PARCELS OF LAND AND DOES NOT CREATE A NEW STREET OR CHANGE AN EXISTING STREET.

6) THIS PROPERTY LIES IN FLOOD ZONE "X" AS SHOWN ON FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA) FLOOD INSURANCE RATE MAP (FIRM) COMMUNITY PANELS 3710464500J/PANNEL#4645, WITH AN EFFECTIVE DATE OF MARCH 18, 2008.

7) THE PROPOSE OF THIS EASEMENT EXHIBIT IS TO ILLUSTRATE A PROPOSED ROADWAY AND UTILITY EASEMENT, TEMPORARY GRADING CONSTRICTION EASEMENT AND TEMPORARY ACCESS EASEMENT AS SHOWN.

GRAPHIC SCALE

60 0 30 60

( IN FEET )
1 inch = 60 feet

EASEMENT EXHIBIT

## JOHN Q. HAMMONS REVOCABLE TRUST PROPERTY

ALCOVE ROAD
TOWN OF MOORESVILLE, DAVIDSON TOWNSHIP, IREDELL COUNTY, NORTH CAROLINA

| Owner: | Prepared For: |
|---|---|
| JOHN Q. HAMMONS<br>300 JOHN Q HAMMONS PKWY-S 900<br>SPRINGFIELD MO 65806 | LANGTREE PROPERTIES, LLC<br>229 MEDICAL ROAD, SUITE 201<br>MOORESVILLE, NC 28117 |

**GEOMATIC CONCEPTS, PLLC**
NC LICENSE #: P-1031
470 NORTH BROAD STREET, SUITE A, MOORESVILLE NC 28115
PHONE: 704-664-1994 EMAIL: JIMMY.FAIRES@GEOMATICCONCEPTS.COM

| | | |
|---|---|---|
| Tax Parcel #'s: 4645-55-5274<br>4645-65-0419 & 4645-55-9147 | Date of Map: JULY 15, 2017 | Project No. 15007 |
| SHEET 1 OF 1 | Date of Field Survey: N/A | |
| Drawn By: SI / Checked By: JNF | | Scale 1" = 60' |
| File: 15007-Alcove-Langtree-Hammons-Easement.dwg | | |

## EXHIBIT D – DESCRIPTION OF JOINT ROADWAY AND UTILITY EASEMENT

50 FT. JOINT ROADWAY AND UTILITY EASEMENT:

BEGINNING at a found #4 rebar (disturbed) located in the western margin of Alcove Road (SR 1206) at a common corner with Marie Locklear Watts (See Deed Book 654, Page 626) and John Q. Hammons Revocable Trust (See Deed Book 1650, Page 497 and Plat Book 56, Page 126) and running thence the following 17 courses and distances: 1) North 89-16-44 West 362.18 feet to a found 1" pipe; 2) on a curve to the left said curve having a radius of 225.00 feet for an arc distance of 107.08 feet with a chord bearing of South 69-31-43 West 106.07 feet to a point; 3) South 55-53-47 West 66.36 feet to a point; 4) on a curve to the left said curve having a radius of 225.00 feet for an arc distance of 147.70 feet with a chord bearing of South 37-06-05 West 145.06 feet to a point; 5) South 18-17-43 West 39.98 feet to a point; 6) on a curve to the left said curve having a radius of 225.00 feet for an arc distance of 110.18 feet with a chord bearing of South 04-16-00 West 109.08 feet to a point; 7) South 09-45-44 East 341.98 feet to a point; 8)South 78-41-18 East 26.79 feet to a #5 rebar found; 9) South 78-41-18 East 26.79 feet to a point; 10) North 09-45-44 West 361.24 feet to a point; 11) on a curve to the right said curve having a radius of 175.00 feet for an arc distance of 85.70 feet with a chord bearing of North 04-16-00 East 84.84 feet to a point; 12)North 18-17-43 East 39.98 feet to a point; 13) on a curve to the right said curve having a radius of 175.00 feet for an arc distance of 114.85 feet with a chord bearing of North 37-05-46 East 112.80 feet to a point; 14) North 55-53-47 East 66.41 feet to a point; 15) on a curve to the right said curve having a radius of 175.00 feet for an arc distance of 106.37 feet with a chord bearing of North 73-18-31 East 104.74 feet to a point; 16) South 89-16-44 East 326.04 feet to a point; 17) North 11-18-42 East 50.87 feet to the point and place of Beginning and being designated as that certain "Proposed 50' Joint Roadway and Utility Easement Area" shown on survey prepared by Jimmy N. Faires, PLS dated July 15, 2017.

**EXHIBIT E – SITE PLAN MARKED WITH LAKEFRONT ACCESS EASEMENT**

SEE ATTACHED




ESP Associates, P.A.
20484 Chartwell Center Dr.
Suite D
Cornelius, NC 28031
1-800-960-7317
NC License C0587
www.espassociates.com

NORTH CAROLINA LICENSE NO.: C-0587 ESP ASSOCIATES, P.A.

NORTH CAROLINA PROFESSIONAL SEAL 17582 ENGINEER DANE BREWER

| NO. | DATE | REVISION | BY |
|---|---|---|---|
| 1 | 12-30-15 | TOWN COMMENTS | RJG |
| 2 | 06-01-2016 | ADDED "T" TURN AROUND, REVISED BOARDWALK, PARKING & DUMPSTERS | RJG |
| 3 | 08-08-16 | ARCHITECT & IREDELL COUNTY COMMENTS | |
| 4 | 10-11-16 | BOARDWALK | |
| 5 | 02-02-17 | VAN SPACES, VISITOR | |

# SITE PLAN

## LANGTREE VILLAGE APARTMENTS

MOORESVILLE, IREDELL COUNTY, NC

LANGTREE VILLAGE APARTMENTS, LLC

| PROJECT INFORMATION | |
|---|---|
| PROJECT MANAGER: | RJG |
| DESIGNED BY: | ESP |
| DRAWN BY: | ESP |
| PROJECT NUMBER: | DR28.400 |
| ORIGINAL DATE: | 11/06/15 |
| SHEET: | C-2.2 |

R:\Projects\2015 (D)\DR28.400.000 - Langtree Village Apartments_DR28\Sheets\C-2.1-2.3 SITE PLAN.dwg, 1:1

**EXHIBIT F – DESCRIPTION OF TEMPORAY GRADING AND CONSTRUCTION EASEMENT**

25 FT. TEMPORARY GRADING AND CONSTRUCTION EASEMENT:

TO LOCATE THE BEGINNING POINT begin at a found #4 rebar (disturbed) located in the western margin of the right of way for Alcove Road (SR 1206) at a common corner with Marie Locklear Watts (See Deed Book 654, Page 626) and John Q. Hammons Revocable Trust (See Deed Book 1650, Page 497 and Plat Book 56, Page 126) and running thence with the western margin of the right of way of Alcove Road (SR 1206) South 11-18-42 West 50.87 feet to the Point and Place of Beginning; thence running from said Beginning Point the following 18 courses and distances: 1) South 11-18-42 West 25.43 feet to a point; 2) North 89-16-52 West 323.26 feet to a point; 3) on a curve to the left said curve having a radius of 150.00 feet for an arc distance 89.28 feet with a chord bearing of South 72-56-54 West 87.97 feet to a point; 4) South 55-53-47 West 66.41 feet to a point; 5) on a curve to the left said curve having a radius of 150.00 feet for an arc distance of 98.44 feet with a chord bearing of South 37-05-45 West 96.68 feet to a point; 6) South 18-17-43 West 39.98 feet to a point; 7) on a curve to the left said curve having a radius of 150.00 feet for an arc distance of 61.14 feet with a chord bearing South 06-37-04 West 60.72 feet to a point; 8) on a curve to the left said curve having a radius of 150.00 feet for an arc distance of 12.31 feet with a chord bearing South 07-24-40 East 12.31 feet to a point; 9) South 09-45-44 East 10.77 feet to a point; 10) South 09-45-44 East 360.11 feet to a point; 11) North 78-41-18 West 26.79 feet to a point; 12) N 09-45-44 West 361.24 feet to a point; 13) on a curve to the right said curve having a radius of 175.00 feet for an arc distance of 85.70 feet with a chord bearing of North 04-16-00 East 84.84 feet to a point; 14) North 18-17-43 East 39.98 feet to a point; 15) on a curve to the right said curve having a radius of 175.00 feet for an arc distance of 114.85 feet with a chord bearing of North 37-05-46 East 112.80 feet to a point; 16) North 55-53-47 East 66.41 feet to a point; 17) on a curve to the right said curve having a radius of 175.00 feet for an arc distance of 106.37 feet with a chord bearing of North 73-18-31 East 104.74 feet to a point; 18) South 89-16-44 East 326.04 feet to the point and place of Beginning and being designated as that certain "Proposed 25' Temporary Grading and Construction Easement Area" shown on survey prepared by Jimmy N. Faires, PLS dated July 15, 2017.

## EXHIBIT G – DESCRIPTION OF TEMPORAY ACCESS EASEMENT

20 FT. TEMPORARY ACCESS EASEMENT:

TO LOCATE THE BEGINNING POINT begin at a found #4 with grid coordinates N: 654942.939 ft. E: 1446137.714 ft. NAD 83/2011 located in the western margin of the right of way for Alcove Road (SR 1206) at a common corner of Langtree Properties, LLC (See Deed Book 1753, Page 2303) and John Q. Hammons Revocable Trust (See Deed Book 1753, Page 1125) and running thence with the western margin of the right of way for Alcove Road (SR1206) North 11-18-42 East 250.69 feet to the Point and Place of Beginning; thence running from said Beginning Point the following 15 courses and distances: 1) North 11-18-42 East 20.02 feet to a point; 2) North 76-09-41 West 99.65 feet to a point; 3) North 83-30-43 West 57.05 feet to a point; 4) North 84-03-29 West 104.18 feet to a point; 5) North 72-43-22 West 67.67 feet to a point; 6) North 48-21-31 West 136.79 feet to a point; 7) North 47-42-55 West 44.58 feet to a point; 8) North 46-02-46 West 68.85 feet to a point; 9) South 18-17-43 West 22.19 feet to a found #4 rebar; 10) South 46-02-46 East 72.05 feet to a point; 11) South 48-21-31 East 173.70 feet to a point; 12) South 72-43-22 East 73.97 feet to a point; 13) South 84-03-29 East 106.07 feet to a point; 14) South 83-30-43 East 55.67 feet to a point; 15) South 76-09-41 East 99.25 feet to the point and place of Beginning and being designated as that certain "Proposed 20' Temporary Access Easement Area" shown on survey prepared by Jimmy N. Faires, PLS dated July 15, 2017.