UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JOHN Q. HAMMONS FALL 2006, LLC, *et al.*, | ) | Case No. 16-21142-11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**RESPONSE IN OPPOSITION TO MOTION OF MISSOURI STATE UNIVERSITY AND THE MISSOURI STATE UNIVERSITY FOUNDATION TO REQUIRE POST-PETITION PERFORMANCE OF OBLIGATION AND COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS**

COMES NOW JD Holdings, by and through undersigned counsel, and for its Response In Opposition To Motion of Missouri State University and the Missouri State University Foundation to Require Post-Petition Performance of Obligations and Compel Assumption or Rejection of Executory Contracts, states as follows:

1. The Motion of Missouri State University and The Missouri State University Foundation to Require Post-Petition Performance of Obligation and Compel Assumption or Rejection of Executory Contracts (the "Motion to Compel") was filed on December 8, 2017 (Doc. #1546). In the Motion to Compel, Movants Missouri State University ("MSU") and the Missouri State University Foundation ("MSU Foundation") seek the post-petition performance by Debtor Revocable Trust of John Q. Hammons, dated December 28, 1989, as Amended and Restated (the "Trust") of two purported executory contracts, the Agreement for the Making and Accepting of a Charitable Gift[1] (the "Gift Agreement") and the Trademark License Agreement (the "Trademark Agreement"), pending any assumption or rejection of the foregoing agreements (jointly referred to as the "MSU Agreements"). MSU and MSU Foundation (jointly referred to as

---

[1] The Gift Agreement includes the Addendum and Second Addendum attached to the Motion to Compel as Exhibits B and C, respectively.

5979943

the "MSU Parties") also seek imposition of a deadline for Debtors to file a motion to assume or reject the MSU Agreements as executory contracts under 11 U.S.C. § 365 (the "365 Motion").

2. As set forth below, JD Holdings ("JDH") opposes any authorization for Debtors' post-petition performance of the MSU Agreements and, for good cause shown, expressly requests entry of an order directing discontinuation of all post-petition performance. The MSU Agreements do not evidence reasonably equivalent value flowing to the bankruptcy estate in exchange for the substantial payments imposed by those agreements on the bankruptcy estate and, therefore, post-petition performance (i.e. payments) by Debtors should not be ordered by the Court unless and until the MSU Agreements, if ever, are assumed pursuant to the Order of this Court. The Court should also deny the present request of the MSU Parties to compel assumption or rejection of the MSU Agreements on the basis that such relief is premature in that the bankruptcy estates and their creditors do not yet know who will eventually own Debtors' assets and the value of the MSU Agreements, if any, to the continuing enterprise at that time.

## MSU AGREEMENTS

3. The Gift Agreement together with Addenda (attached to the Motion to Compel as Exhibits A, B, and C, respectively) is expressly denominated as a "charitable gift" by which the Trust as "Donor" agreed to fund[2] the debt service associated with a $20,000,000 obligation that the MSU Parties intended to incur through the sale of bonds to finance the sports arena on the MSU campus. In exchange for the funding by the Trust, the MSU Parties agreed to provide "benefits" to the Trust in the form of naming rights to the arena, marketing of the name ("JQH Arena") in various channels and rent-free use of a luxury suite in the arena (which JDH believes to be expired). The annual funding donation by the Trust currently amounts to nearly $2 million.

---

[2] The Trust also committed to an upfront donation of $5,000,000.

- 2 -
Case 16-21142   Doc# 1637   Filed 01/16/18   Page 2 of 8

4. As an initial matter, JDH seriously questions the value of the "benefits" to the bankruptcy estate in comparison to the significant annual donation amount by the Trust of nearly $2 million. While this issue is substantially implicated in any assumption motion that Debtors may file, it is also material to the present relief sought by the MSU Parties in the form of ongoing, post-petition performance of the donation payments.[3] JDH contends that the substantial funding donation by the Trust is not remotely met by reasonably equivalent value to the bankruptcy estate[4] and the Motion to Compel fails to present any compelling evidence or argument to the contrary. Among other things, hotels owned by the Debtors operate under various flagships and do not operate under the JQH moniker. By virtue of the utterly inadequate value afforded to the Trust in the Gift Agreement, the estate would be depleted by the donation payments to the clear detriment of creditors.

5. JDH previously objected to the Budget Motion filed by Debtors and the 2018 Budget to the extent that it contemplated any payment to MSU. The 2018 Budget contains a line item titled "Gen Exp Contribution Other" for $1,933,999. JDH believes this constitutes payments to MSU (and maybe others) under the Gift Agreement. *See* Budget Motion Ex. 4 at 2. As the Court is aware from the Examiner Motion, MSU previously treated those contributions as charitable contributions as did the Debtors. Indeed, Debtors reported $3.77 million of payments to MSU as "charitable contributions" in the 2 years prior to the commencement of the bankruptcy case, i.e. just over $1.8 million per year. *See* JQH Trust Statement of Financial Affairs at 94 of 104.

---

[3] It is evident that the impetus for the Motion to Compel is the forthcoming bond payment apparently due on April 1.

[4] Indeed, any and all payments from the estate to the MSU Parties may themselves be subject to recapture. As one bankruptcy court observed, "the filing of a petition in bankruptcy makes a pre-petition contract no longer automatically enforceable and that pre-petition contract may never be enforceable again." *In re Providence Television,* 113 B.R. 446, 451 (Bkrtcy. N. D. Ill. 1990).

6. In an effort to justify their continued payments to MSU on this pre-petition obligation, Debtors previously represented to this Court and parties-in-interest that MSU was "a critical vendor." Debtors initially claimed that MSU "owns the logo used by the Debtors in all their business and marketing material . . . ." ECF 129 ¶ 14. When JD Holdings questioned the truthfulness of that sworn statement, Debtors produced a Trademark License Agreement between JQH Trust and MSU in which the JQH Trust purported to license a trademark referenced on "Schedule A" thereto. But Debtors did not attach "Schedule A" to the agreement. Moreover, according to the United States Patent and Trademark Office online database, it is the JQH Trust that owns the "JQH" logo, not MSU, and there is no evidence that the Trust uses the MSU-owned logo in any of its business affairs.

7. Furthermore, even if MSU owned the relevant JQH logo – the federal government's records indicate it does not – MSU itself did not claim to own the JQH corporate trademark in its objection to the Examiner Motion. Debtors likewise have not provided any proof that MSU actually does own the trademark.

8. Perhaps mostly importantly, under the Trademark License Agreement, the JQH Trust was only required to pay *$1 for a fifty year license* (for whichever logo MSU might own, which appears to be the logo for the "JQH Arena"). That agreement in no way obligates the JQH Trust to pay *more than $1.8 million annually.* See Trademark Agreement at ¶ 3 (providing for $1.00 payment).

## ARGUMENT

9. As a matter of law, the MSU Parties are not entitled to the requested relief. While the Bankruptcy Code expressly requires the bankruptcy estate to perform post-petition on nonresidential real property leases and personal property leases in Chapter 11 prior to any assumption or rejection, there is no such provision mandating any performance by the

- 4 -

bankruptcy estate of any executory contracts[5] during the gap period preceding assumption or rejection. "The Supreme Court has determined that after a debtor commences a Chapter 11 proceeding, but before executory contracts are assumed or rejected under § 365(a), these contracts remain in existence, enforceable by the debtor but not against the debtor. *N.L.R.B. v. Bildisco* and *Bildisco*[6], 465 U.S. 513, 532, 104 S. Ct. 1188, 1199, 79 L. Ed. 2d 482 (1984);" *In re S.N.A. Nut Co.*, 191 B.R. 117, 120 (Bkrtcy. N.D. Ill. 1996). In a leading decision in this area, another Illinois bankruptcy court observed that "most courts agree that before an executory contract is assumed or rejected under § 365(a), that contract continues to exist, enforceable by the debtor-in-possession, but not enforceable against the debtor-in-possession." *In re: National Steel Corporation*, 316 B.R. 287, 305 (Bkrtcy. N.D. Ill. 2004). In a similar vein, the Eighth Circuit declared: "After a debtor commences a Chapter 11 proceeding, but before executory contracts are assumed or rejected under § 365(a), those contracts remain in existence *enforceable by the debtor but not against the debtor.*" *U.S. on Behalf of Postal Serv. v. Dewey Freight,* 31 F. 3d 620, 624 (8th Cir. 1994). Other circuit courts of appeal have weighed in with the same view. See *Mason v. Official Comm. Of Unsecured for FBI Distribution*, 330 F.3d 36, 43 (1st Cir. 2003) ("Although during the Chapter 11 proceeding a prepetition executory contract remains in effect and enforceable against the nondebtor party to the contract, the contract is *unenforceable* against the debtor in possession unless and until the contract is assumed.") and *In re University Medical Center*, 973 F. 2d 1065, 1075 (3rd Cir. 1992) (during the gap period, "the terms of an executory contract are temporarily unenforceable against the debtor."); *In re*

---

[5] It remains to be seen whether the Gift Agreement qualifies as an executory contract.

[6] "Accordingly, after *Bildisco* one can state with considerable certainty that the non-debtor party to an executory contract cannot require the DIP [debtor in possession] to adhere to the terms of the contract, for that contract is "unenforceable" against the DIP unless and until it is assumed. Stated differently, the *Bildisco* Court concluded that the DIP is *not* in fact bound by the provisions of an executory contract unless the DIP subsequently assumes the contract." 59 Am.Bankr.L.J. 197, 200 (1985).

*Monarch Capital Corp.*, 163 B.R. 899, 907 (Bkrtcy. D. Mass. 1994) ("The non-debtor party may not enforce an executory contract prior to its assumption or rejection.") [7]

10. As it is clear that a "debtor-in-possession is not bound by the provisions of the executory contract unless the contract is subsequently assumed", *National Steel*, 316 B.R. at 305, the MSU parties are not entitled to post-petition performance by the Trust presently and may never become entitled to any such relief.

11. In connection with the relief sought by the MSU Parties to compel the decision by the Trust to assume or reject the MSU Agreements and "file appropriate pleadings within thirty (30) days of entry of the requested order" (see subsection (i) of the WHEREFORE clause of the Motion to Compel at pg. 11), JDH submits that it is premature for Debtors to file any 365 Motion. Debtors' recent filing of its Plan of Reorganization[8] (Doc # 1584) and Disclosure Statement[9] (Doc # 1583) raise serious concerns about the plan process and engender considerable doubt about the ultimate outcome of this case. As such, an informed decision under Section 365 (especially one involving assumption of the material financial burden in the Gift

---

[7] This regnant view is also supported by caselaw in this circuit. See *In re Feyline Presents, Inc*. 81 B.R. 623, 626 (Bkrtcy. D. Colo. 1988) ("In the Court's view, an executory contract under Chapter 11 is not enforceable against the debtor party but is enforceable against the non-debtor party prior to the debtor's assumption or rejection of the contract.")

[8] Debtors' Plan is fraught with uncertainties and considerable doubt relating to feasibility as otherwise described in the JDH Objection to Debtors' Disclosure Statement (Doc #1617).

[9] The JDH Objection sets out a barrage of deficiencies, inaccuracies and omissions with respect to the Disclosure Statement.

Agreement) cannot yet be made and should not be made prior to any confirmation hearing.[10]

12. JDH observes the filing of Debtors' Limited Initial Response (Doc. #1628) on January 15, 2018 to the Motion to Compel. It is noteworthy that Debtors contend that a lack of "sufficient grounds exist to accelerate the assumption" of the MSU Agreements.[11] Debtors also question the existence of authorization to use cash collateral to fund any payments under the Gift Agreement.[12]

---

[10] The request to compel simply presents the discrete issue of requiring the Trust to make its decision on assumption or rejection within a specified timeframe. As such, the substantive issues regarding assumption/rejection do not arise until such time as the Trust files its § 365 Motion. JDH specifically reserves the right to file substantive responses to Debtors' future filing of any 365 Motion in the aftermath of any ruling by the Court to compel assumption or rejection. At the present time, JDH reserves the right to fully address the substantive issues when they become ripe including, but not limited to, whether the MSU agreements constitute executory contracts under § 365 and whether any decision by the Trust in favor of assumption represents an appropriate and sustainable exercise of business judgment. There also is a question whether the contracts are supported by any consideration.

[11] Debtors indicate their intention to assume the MSU Agreements but assert that any such assumption would be premature at present in view of "the pending Examiner Motion and anticipated issues relating to confirmation of the Plan."

[12] As set forth above, JDH submits that irrespective of any cash collateral authorization Debtors may not make any payments under the Gift Agreement as a matter of law.

January 16, 2018.			Respectfully submitted,

**McDOWELL RICE SMITH & BUCHANAN, P.C.**
*/s/Jonathan A. Margolies*
Jonathan A. Margolies			(MO 30770)
The Skelly Building, Suite 350		(KS Fed 70693)
605 W. 47th Street
Kansas City, Missouri  64112
Telephone: (816) 753-5400
Facsimile: (816) 753-9996
jmargolies@mcdowellrice.com

Scott A. Edelman (admitted *pro hac vice*)
Jed M. Schwartz (admitted *pro hac vice*)
**MILBANK, TWEED, HADLEY & McCLOY, LLP**
28 Liberty Street
New York, NY 10005-1413
Tel: (212) 530-5000
Fax:  (212) 530-5219
Email: jschwartz@milbank.com

Mark Shinderman (admitted pro hac vice)
**MILBANK, TWEED, HADLEY & McCLOY, LLP**
2029 Century Park East
33rd Floor
Los Angeles, CA 90067-3019
Tel:  (424) 386-4000
Fax:  (213) 629-5063
mshinderman@milbank.com
**Counsel for JD Holdings, L.L.C.**