# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| | ) | **Case No. 16-21142** |
| **JOHN Q. HAMMONS FALL 2006, LLC, et al.,** | ) | **(Lead Case)** |
| | ) | |
| **Debtors.** | ) | **Chapter 11** |
| | ) | |

## MODIFIED AMENDED JOINT AND CONSOLIDATED CHAPTER 11 PLANS OF REORGANIZATION FOR ALL DEBTORS FILED BY CREDITOR JD HOLDINGS, L.L.C.

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
OF TIME, AND GOVERNING LAW ................................................................... 1
- A.    Defined Terms ....................................................................................... 1
- B.    Rules of Interpretation ........................................................................ 10
- C.    Computation of Time ........................................................................... 10
- D.    Governing Law .................................................................................... 10

ARTICLE II. CLASSIFICATION OF CLAIMS AND INTERESTS ............................ 10
- A.    Allowed Claims and Equity Interests ................................................ 10

ARTICLE III. TREATMENT OF CLAIMS AND INTERESTS ................................. 11
- A.    Administrative Claims (Other Than Professional Compensation Claims) ........... 11
- B.    Professional Compensation Claims .................................................... 12
  - 1.    Final Fee Applications ................................................... 12
- C.    Priority Tax Claims ............................................................................. 12
- D.    U.S. Trustee Fees ................................................................................ 12

ARTICLE IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ........................................................................................ 12
- A.    Summary ............................................................................................. 12
- B.    Classification and Treatment of Claims and Equity Interests .......... 12
  - 1.    Class 1 – Other Priority Claims ................................... 13
  - 2.    Class 2 – Secured Claims .............................................. 13
  - 3.    Class 3 – General Unsecured Claims ........................... 13
  - 4.    Class 4 – Equity Interests ............................................. 14
- C.    Special Provision Governing Unimpaired Claims and Equity Interests ........... 14
- D.    Acceptance or Rejection of Plan ....................................................... 14
  - 1.    Voting Classes Under Plans .......................................... 14
  - 2.    Presumed Acceptance Under Plans ............................... 15
- E.    Confirmation Pursuant to Section 1129(b) of Bankruptcy Code ........... 15

ARTICLE V. CHARITABLE CONTRIBUTION ...................................................... 15

ARTICLE VI. EFFECT OF CONFIRMATION ....................................................... 16
- A.    Actions Required By Confirmation Order ......................................... 16
- B.    Cooperation by Debtor Parties ........................................................... 17

ARTICLE VII. IMPLEMENTATION OF THE SALE AND OTHER PLANS
TRANSACTIONS .................................................................................. 19
- A.    Overview ............................................................................................. 19

    B.     Sources of Consideration for Sale and Other Plans Transactions and Plans Distributions ................................................................................................20

    C.     Provisions Governing Distributions ..............................................................21

    D.     Compliance Matters .......................................................................................21

    E.     Exemption from Certain Taxes and Fees ......................................................22

    F.     Employment of Debtors' Employees / Severance Matters .............................22

**ARTICLE VIII. EFFECTIVE DATE OF PLANS** ...............................................................24

    A.     Binding Effect of Plans ..................................................................................24

    B.     Discharge of Claims .......................................................................................24

    C.     Releases by the Debtors .................................................................................24

    D.     Releases by JD Holdings ................................................................................25

    E.     Exculpation ....................................................................................................26

    F.     Dismissal of Delaware Litigation ..................................................................26

    G.     Third Party Releases by Holders of Claims and Equity Interests .................26

    H.     Preservation, Transfer, and Waiver of Rights of Action .............................27

**ARTICLE IX. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .............................................................................................................27

    A.     Assumption of Executory Contracts and Unexpired Leases .........................27

    B.     Rejection of Executory Contracts and Unexpired Leases .............................28

**ARTICLE X. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS** ...............28

    A.     Allowance of Claims and Equity Interests ....................................................28

    B.     Administration of Claims and Equity Interests .............................................28

    C.     Interest ............................................................................................................28

    D.     Deadline to File Objections to Claims ..........................................................29

    E.     New Claims and Amendments to Claims .......................................................29

**ARTICLE XI. MODIFICATION, AMENDMENT, REVOCATION OR WITHDRAWAL OF PLANS** .................................................................................29

    A.     Modification and Amendments .......................................................................29

    B.     Effect of Confirmation on Modifications and Amendments .........................29

    C.     Revocation or Withdrawal of Plans ..............................................................29

**ARTICLE XII. RETENTION OF JURISDICTION** .........................................................29

**ARTICLE XIII. MISCELLANEOUS PROVISIONS** .......................................................30

    A.     Additional Documents ...................................................................................30

    B.     Reservation of Rights .....................................................................................30

    C.     Successors and Assigns ..................................................................................30

    D.     Service of Documents .....................................................................................30

    E.     Entire Agreement ..........................................................................................32

    F.     Non-severability of Plans Provisions ............................................................32

    G.     Votes Solicited in Good Faith .......................................................................32

    H.     Waiver or Estoppel .......................................................................................32

I.      Conflicts.................................................................................................................32

iii

# INTRODUCTION

JD Holdings[1] hereby proposes the following plans of reorganization for the resolution of outstanding claims against, and equity interests in, all Debtors pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101-1532.[2] Schedule 1 sets forth a list of each Debtor.

As detailed below, these Plans provide for the Sale of the Assets to JD Holdings and payment in full of all Allowed Claims against Debtors (except to the extent a Holder of an Allowed Claim agrees to an alternative treatment) upon the Effective Date of the Plans or as soon thereafter as is practicable, with JD Holdings subordinating its Claims arising from the ROFR to all other Allowed Claims. In addition, JD Holdings will contribute assets to a new Charitable Trust to honor Mr. Hammons' charitable intent (in an amount that will increase if Debtors cooperate in Confirmation and implementation of the Plans), even though such beneficiaries have not been identified, do not have standing under the Bankruptcy Code, and are not parties in interest.

There are no contingencies to the implementation of these Plans after Confirmation.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.*     *Defined Terms*

The following capitalized terms shall have the following meanings when used herein:

1.     **"2005 Transaction"** means the transaction in 2005 entered into by Mr. Hammons, JQH Trust, and certain of their Affiliates, in which, among other things, Jonathan Eilian and his Affiliates took private John Q. Hammons Hotels, Inc., a publicly traded company.

2.     **"Administrative Claim"** means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (including wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services, and reimbursement of expenses pursuant to sections 328, 330(a), 331, or 332 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date, including Professional Compensation Claims; (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including the U.S. Trustee Fees; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

---

[1] Capitalized terms are defined in Article I hereof.

[2] In an abundance of caution, JD Holdings states that the submission of these Plans is not intended to be, and should not be construed as, an admission that venue in the Bankruptcy Court is proper with respect to any current or future proceedings that may arise in connection with the Chapter 11 Cases, the 2005 Transaction, or the ROFR. Upon consummation of the Sale of the 27 hotels being financed by the Sale Lender, JD Holdings' objections to venue in the Bankruptcy Court shall be deemed withdrawn.

1

3.     **"Administrative Claims Bar Date"** means the deadline for filing requests for payment of Administrative Claims, which shall be thirty (30) days after the Effective Date.

4.     **"Affiliate"** has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.     **"Allowed"** means any Claim that (a) is evidenced by a Proof of Claim that has been timely Filed by the applicable Claims Bar Date, or is not required to be evidenced by a Proof of Claim under the Bankruptcy Code or a Final Order, (b) is listed on the Schedules as of the Effective Date as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed, (c) has been compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors by a Final Order, or (d) is Allowed pursuant to the Plans or a Final Order; provided, however, that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to any Claim, (1) no objection to the allowance of such Claim, request for estimation, motion to amend the Schedules, or other challenge of such Claim has been made by the Claims Objection Bar Date, or (2) such objection, request, motion or challenge is made and the Claim is Allowed for distribution purposes by a Final Order. Any Claim that has been or is hereafter listed on the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely Filed, is deemed Disallowed and shall be expunged without further action by the Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing or anything else to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors.

6.     **"APA"** means the Asset Purchase Agreement for the sale of the Assets between Debtors, as sellers, and JD Holdings, as purchaser.

7.     **"Assets"** means all title, rights, interests and other forms of ownership of the Debtors of any nature in property of any kind, whether vested or contingent, wherever located, including all real property, personal property (both tangible and intangible), cash, Causes of Action, and Equity Interests held by any Debtor in any other Debtors or JQH Non-Debtor Entities.

8.     **"Assumed Agreements"** means all of the Executory Contracts and Unexpired Leases of Debtors other than Rejected Executory Contracts and Unexpired Leases to be (a) assumed by the Debtors and assigned to JD Holdings, or (b) assumed and retained by Debtors.

9.     **"Assumed Liabilities"** means any liabilities of the Debtors to be (a) assumed by JD Holdings pursuant to the APA, or (b) retained by the Debtors.

10.     **"Assumed Loans"** means those loans to be identified in the Plans Supplement to be reinstated, as necessary, and assumed by JD Holdings pursuant to the terms of the underlying loan agreement(s) and/or an agreement between JD Holdings and the applicable lender or its authorized representative.

11.     **"Avoidance Actions"** means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547-553,

2

and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

12. **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases, as may be amended from time to time.

13. **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Kansas.

14. **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15. **"Business Day"** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16. **"Cash"** means the legal tender of the United States of America.

17. **"Causes of Action"** means any claim, cause of action, controversy, demand, action, suit, defense, offset, setoff, counterclaim, recoupment, power, privilege or license of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including: (a) the right to object to Claims; (b) any claim pursuant to section 362 of the Bankruptcy Code; (b) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (d) any Avoidance Actions; (e) indemnification, reimbursement or recovery under any insurance policies; and (e) any cause of action to be identified in any Plans Supplement.

18. **"Chapter 11 Cases"** means *In re John Q. Hammons Fall 2006, LLC, et al.*, Case No. 16-21142.

19. **"Charitable Trust"** means a new charitable trust to be established by JD Holdings to honor the charitable intent of Mr. Hammons.

20. **"Claim"** means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

21. **"Claims and Solicitation Agent"** means BMC Group, Inc., the notice, claims, solicitation, and balloting agent retained by the Debtors in the Chapter 11 Cases.

22. **"Claims Bar Date"** means, with reference to a Claim, the date by which Proofs of Claim must be or must have been Filed with respect to such Claim, as ordered by the Bankruptcy Court pursuant to the Claims Bar Date Order or another Final Order.

23.    "**Claims Bar Date Order**" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and Interest, (II) Establishing Procedures for Filing Proofs of Claim and Interest, and (III) Approving Form and Manner of Notice Thereof* [ECF No. 525].

24.    "**Claims Objection Bar Date**" means the deadline for JD Holdings and other parties in interest to object to a Claim, other than Administrative Claims (which are addressed separately), which shall be on the date that is the later of (a) the Effective Date and (b) such later period of limitation as may be specifically fixed or extended by a Final Order of the Bankruptcy Court.

25.    "**Claims Register**" means the official register of Claims maintained by the Claims and Solicitation Agent.

26.    "**Class**" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

27.    "**Collateral**" means any property or interest in property of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

28.    "**Confirmation**" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

29.    "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

30.    "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court on the Confirmation of the Plans pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

31.    "**Confirmation Hearing Date**" means the date of the commencement of the Confirmation Hearing.

32.    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plans pursuant to section 1129 of the Bankruptcy Code.

33.    "**Cure Costs**" means all amounts (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed and assigned by the Debtors to JD Holdings pursuant to sections 365 or 1123 of the Bankruptcy Code.

34.    "**Debtor Parties**" has the meaning set forth in Article V.

35.    "**Debtors**" means those Entities listed on Schedule 1.

36.    "**Debtors Released Party**" means the Debtors and each of their respective predecessors, successors and assigns, and each of the current and former officers, directors, and

4

employees thereof, and Stinson Leonard Street LLP and Merrick, Baker & Strauss, P.C. (in each case, in his, her, or its capacity as such).

37. **"Delaware Litigation"** refers to the matter captioned *JD Holdings, L.L.C. v. Dowdy*, C.A. No. 7480-VCL, commenced in the Delaware Court of Chancery on May 1, 2012.

38. **"Disallowed"** means, as it relates to any Claim, that it (a) has been disallowed under these Plans, (b) has been found by a Final Order not to be an Allowed Claim, (c) is listed on the applicable Schedule at zero or as contingent, disputed or unliquidated and as to which no proof of claim has been timely Filed, (d) is not listed on the Schedules and as to which no proof of claim has been timely Filed, or (e) has been withdrawn.

39. **"Disclosure Statement"** means the written Disclosure Statement that relates to the Plans, as supplemented or modified from time to time and that is prepared and disseminated in accordance with Section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules.

40. **"Distribution Record Date"** means the Confirmation Date.

41. **"Effective Date"** means a date selected by JD Holdings that is any Business Day after the Confirmation Order is a Final Order on which the first closing under the APA occurs.

42. **"Entity"** has the meaning set forth in section 101(15) of the Bankruptcy Code which, for avoidance of doubt, shall include a limited liability company.

43. **"Equity Interest"** means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in a Debtor or in a JQH Non-Debtor Entity held by a Debtor, including any issued or unissued share of common stock, preferred stock, membership interests in limited liability companies, general and limited partnership interests in partnerships, or other ownership interest in a Debtor or JQH Non-Debtor Entity, whether or not transferable or represented by a certificate, including any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor or JQH Non-Debtor Entity that existed immediately prior to the Effective Date, any award of stock options, restricted stock units, equity appreciation rights, restricted equity, or phantom equity granted to an existing employee of the Debtors JQH Non-Debtor Entity pursuant to any equity plan maintained by the Debtors or JQH Non-Debtor Entity or under any existing employment agreement of the Debtors' or JQH Non-Debtor Entities' existing employees, any Existing Shares, and any Claim against any Debtor or JQH Non-Debtor Entity subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing. For the avoidance of doubt, Equity Interest does not include beneficial interests in the JQH Trust.

44. **"Executory Contract"** means a contract to which any Debtor is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

45. **"Exculpated Parties"** means the Debtors Released Parties, the JD Holdings Released Parties, and the Trustees Released Parties.

5

46. **"File," "Filed,"** or **"Filing"** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

47. **"Final Order"** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction in the Chapter 11 Cases, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari or leave to appeal has expired and no appeal or petition for certiorari or motion for leave to appeal has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for leave to appeal that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari or leave to appeal was sought; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure may be Filed relating to such order shall not prevent such order from being a Final Order. Notwithstanding the foregoing, JD Holdings shall have the right to waive the conditions set forth herein with regard to the Confirmation Order, in which case the Confirmation Order shall be deemed a Final Order for purposes of the Plans and the APA.

48. **"General Unsecured Claim"** means any Claim against a Debtor that is not one of the following Claims: (a) Administrative Claim; (b) Priority Tax Claim; (c) Other Priority Claim; or (d) Secured Claim.

49. **"Governmental Unit"** has the meaning set forth in section 101(27) of the Bankruptcy Code.

50. **"Holder"** means the Entity holding the beneficial interest in a Claim or Equity Interest.

51. **"Impaired"** means a Class of Claims that is not Unimpaired.

52. **"Insider"** has the meaning set forth in section 101(31) of the Bankruptcy Code.

53. **"JD Holdings"** means JD Holdings, L.L.C., and/or its subsidiary Entities, and/or its designees (as the context requires).

54. **"JD Holdings Released Party"** means (i) JD Holdings and each of its Affiliates, and each of their respective predecessors, successors and assigns, and each of the current and former shareholders, subsidiaries, members (including ex-officio members), officers, directors, principals, managers, trustees, employees, partners, attorneys, lenders, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, consultants, agents and representatives of each of the foregoing Entities (in each case, in his, her, or its capacity as such); and (ii) the Sale Lender. The term "Affiliate" as used in this definition includes Jonathan D. Eilian and Ronald C. Brown, personally, and any Entity in which either of them has any equity interest, and any trust in which either of them is a grantor, trustee, or beneficiary.

55. **"JQH Non-Debtor Entities"** means those Entities listed on Schedule 2.

56. **"JQH Trust"** means The Revocable Trust of John Q. Hammons, dated December 29, 1989, as amended and restated.

6

57. **"Judicial Code"** means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

58. **"Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

59. **"Non-Hotel Assets"** means all Assets of Debtors other than hotels or cash.

60. **"Other Priority Claim"** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

61. **"Outside Effective Date"** means the date that is 60 days after the Confirmation Order becomes a Final Order.

62. **"Outside Closing Date"** means the date that is 120 days after the Confirmation Order becomes a Final Order.

63. **"Person"** has the meaning set forth in section 101(41) of the Bankruptcy Code.

64. **"Petition Date"** means June 26, 2016.

65. **"Plans"** mean these *Chapter 11 Plans of Reorganization for all Debtors* (as amended, supplemented, or modified from time to time in accordance with the terms hereof), including, the Plans Supplement, which are incorporated herein by this reference. For ease of reference, the term "Plan" may be used throughout this document in place of "Plans".

66. **"Plans Distribution"** means a payment or distribution to Holders of Allowed Claims or other eligible Entities under the Plans.

67. **"Plans Documents"** means the documents other than the Plans, to be executed, delivered, assumed, or performed to consummate the Plans Transactions and implement the Plans on the Effective Date.

68. **"Plans Supplement"** means all documents that supplement this *Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for all Debtors Filed by Creditor JD Holdings, L.L.C.* that are Filed no less than seven (7) days prior to the Confirmation Date.

69. **"Plans Transactions"** means one or more transactions to occur on or before the closing dates set forth in the APA or other Plans Documents (as the case may be) or as soon thereafter as reasonably practicable, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plans, including: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, equity issuance, sale, dissolution, certificates of incorporation, certificates of partnership, operating agreements, bylaws, or other documents containing terms that are consistent with or necessary or appropriate to implement the terms of the Plans and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of equity issuance, conveyance, assignment, assumption, delegation or other transfer of any property, right, liability, duty, or obligation on terms

7

consistent with the terms of the Plans; and (c) all other actions that are consistent with the terms of the Plans that JD Holdings reasonably determines in its sole discretion are necessary or appropriate.

70. **"Priority Tax Claim"** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

71. **"Professional"** means any Entity employed by a Debtor pursuant to a Bankruptcy Court order in accordance with section 327, 328, 330, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code or awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

72. **"Professional Compensation Claims"** means, at any given moment, all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses. To the extent that the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Compensation Claim.

73. **"Proof of Claim"** means a proof of Claim Filed against a Debtor in the Chapter 11 Cases.

74. **"PSA"** means the Plan Support Agreement and Claim Allowance dated February 10, 2018 by and among (i) the JQH Trust, for itself and on behalf of all other Debtors; (ii) Greggory Groves and Jacqueline A. Dowdy, individually and as co-successor trustees of the JQH Trust, and as officers, directors and employees of various Debtors and JQH Non-Debtor Entities; and (iii) JD Holdings.

75. **"Purchased Assets"** means those Assets purchased by JD Holdings pursuant to the APA.

76. **"Purchased Assets Secured Claim"** means a Secured Claim on any of the Purchased Assets.

77. **"Rejected Executory Contracts and Unexpired Leases"** means those Executory Contracts and Unexpired Leases that JD Holdings identifies on a schedule of Rejected Executory Contracts and Unexpired Leases on or before the Effective Date, which shall be deemed rejected pursuant to section 365 of the Bankruptcy Code on the Effective Date.

78. **"ROFR"** means the Sponsor Entity Right of First Refusal Agreement provided by the Debtors and the JQH Trust to JD Holdings in 2005, including all amendments thereto.

79. **"Sale"** means the sale contemplated by the APA.

80.     **"Sale Financing Facility"** means the secured credit facility to be entered into by JD Holdings of and subject to the occurrence of the Effective Date in order to facilitate the consummation of the Sale.

81.     **"Sale Lender"** means the lenders, agents and arrangers providing the Sale Financing Facility, including Goldman Sachs Mortgage Company and certain of its affiliates, in their capacity as such.

82.     **"Schedules"** means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules (as they may be amended, modified, or supplemented from time to time).

83.     **"Secured Claim"** means a Claim against any Debtor that is secured by a Lien on property in which such Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code as determined pursuant to section 506(a) of the Bankruptcy Code.

84.     **"Settlement Agreement"** means the Settlement Agreement dated February 10, 2018 by and among (i) the Debtors; (ii) Greggory Groves and Jacqueline A. Dowdy, individually and as co-successor trustees of the JQH Trust, and as officers, directors and employees of various Debtors and JQH Non-Debtor Entities; and (iii) JD Holdings and its affiliates.

85.     **"Third-Party Releasing Party"** has the meaning set forth in Section VII.G. hereof.

86.     **"Trustees Released Party"** means Greggory Groves and Jacqueline A. Dowdy, individually and in their respective capacities as co-successor trustees of the JQH Trust, officers, directors, general counsel, managers, representatives, agents, and employees of any Debtors and JQH Non-Debtor Entities.

87.     **"Unexpired Lease"** means a lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code, or may be amended by mutual agreement of the parties thereto.

88.     **"Unimpaired"** means, with respect to a Class of Claims or Equity Interests, a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

89.     **"U.S. Trustee"** means the United States Trustee for Region 20.

90.     **"U.S. Trustee Fees"** means fees arising under section 1930(a)(6) of the Judicial Code and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

9

*B.    Rules of Interpretation*

The following rules for interpretation and construction shall apply to the Plans: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in such form or substantially on such terms and conditions; (3) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit as it may thereafter be amended, modified, or supplemented; (4) unless otherwise stated, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time; (5) any reference herein to an Entity as a Holder of a Claim includes that Entity's successors and assigns; (6) unless otherwise stated, all references herein to "Articles" or "Sections" are references to Articles or Sections hereof or hereto; (7) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plans in their entirety rather than to a particular portion of the Plans; (8) unless otherwise stated, the words "include," "including" and similar terms shall be construed as if followed by the phrase "without limitation"; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (10) unless otherwise stated, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

*C.    Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

*D.    Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York shall govern the construction and implementation of the Plans and any agreements, documents, and instruments executed in connection with the Plans.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

*A.    Allowed Claims and Equity Interests*

The Allowed Claims against, and Equity Interests in, each of the Debtors are divided into the following classes:

(1)    Class 1 shall consist of all Other Priority Claims.

(2)    Class 2 shall consist of all Secured Claims.

10

(3)    Class 3 shall consist of all General Unsecured Claims.

(4)    Class 4 shall consist of all Equity Interests[3].

## ARTICLE III.
## TREATMENT OF CLAIMS AND INTERESTS

All Claims (except Administrative Claims and Priority Tax Claims) and Equity Interests are placed in the Classes set forth in Article II hereof. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and the Holders thereof are not entitled to vote on the Plans. A Claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim falls within the description of such other Classes.

*A.     Administrative Claims (Other Than Professional Compensation Claims)*

Except to the extent the Holder of an Allowed Administrative Claim agrees to an alternative treatment, each Holder of an Allowed Administrative Claim (other than of an Professional Compensation Claim) shall receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Administrative Claim, Cash in an amount equal to the unpaid amount of such Allowed Administrative Claim on the date, or as soon thereafter as is reasonably practicable, that is the later of (i) the Effective Date or (ii) the date such Administrative Claim becomes an Allowed Claim or otherwise becomes payable under the Plans.

Except for Professional Compensation Claims and U.S. Trustee Fees, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on JD Holdings and other parties in interest no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. Objections to such requests may be Filed by JD Holdings or any party in interest and must be Filed and served by the Claims Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, JD Holdings or its Affiliates, or any of their respective property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or JD Holdings or any action by the Bankruptcy Court.

---

[3] JD Holdings understands that all Equity Interests in Debtors other than JQH Trust are held by other Debtors and that there are no Equity Interests in JQH Trust. In addition, Debtors also own certain Equity Interests in JQH Non-Debtor Entities.

11

B.    *Professional Compensation Claims*

1.    Final Fee Applications

All final requests for payment of Claims of a Professional shall be Filed no later than forty-five (45) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Compensation Claims shall be determined by the Bankruptcy Court and satisfied in accordance with an order of the Bankruptcy Court.

C.    *Priority Tax Claims*

Except to the extent the Holder of an Allowed Priority Tax Claim agrees to an alternative treatment, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the date, or as soon thereafter as is reasonably practicable, that is the later of (i) the Effective Date or (ii) the date such Priority Tax Claim becomes an Allowed Claim or otherwise becomes payable under the Plans.

D.    *U.S. Trustee Fees*

On the Effective Date or as soon thereafter as reasonably practicable, JD Holdings shall pay all U.S. Trustee Fees that are due and owing on the Effective Date. Following the Effective Date, JD Holdings shall pay the U.S. Trustee Fees for each quarter (including any part thereof) until the first to occur of the Chapter 11 Cases being converted, dismissed, or closed.

## ARTICLE IV.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.    *Summary*

The categories listed in Section IV.B hereof classify Claims against, and Equity Interests in, each of the Debtors for all purposes, including Confirmation and Plans Distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving Plans Distributions only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.    *Classification and Treatment of Claims and Equity Interests*

To the extent a Class contains Allowed Claims or Allowed Equity Interests with respect to a particular Debtor, the treatment provided to each Class for purposes of Plans Distributions is specified below:

12

1.   Class 1 – Other Priority Claims

   (a)   *Classification*: Class 1 consists of all Other Priority Claims.

   (b)   *Treatment*: Except for any Allowed Priority Claim that relates to an Assumed Agreement, each Holder of an Allowed Other Priority Claim shall receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, Cash in an amount equal to the unpaid amount of such Allowed Other Priority Claim on the date, or as soon thereafter as is reasonably practicable, that is the later of (i) the Effective Date or (ii) the date such Other Priority Claim becomes an Allowed Claim or otherwise becomes payable under the Plans. Allowed Priority Claims relating to Assumed Agreements shall receive Cure Costs in accordance with Section VII hereof.

   (c)   *Voting*: Class 1 is Unimpaired by the Plans. Each Holder of a Class 1 Other Priority Claim is conclusively presumed to have accepted the Plans pursuant to section 1126(f) of the Bankruptcy Code. No Holder of a Class 1 Other Priority Claim is entitled to vote to accept or reject the Plans.

2.   Class 2 – Secured Claims

   (a)   *Classification*: Class 2 consists of all Secured Claims other than Assumed Loans.

   (b)   *Treatment*: Each Holder of an Allowed Secured Claim shall receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Secured Claim, Cash in an amount equal to the unpaid amount of such Allowed Secured Claim on the date, or as soon thereafter as is reasonably practicable, that is the later of (i) the Effective Date or (ii) the date such Secured Claim becomes an Allowed Claim or otherwise becomes payable under the Plans, unless such Holder of an Allowed Secured Claim agrees to extend the term of the loan on terms, or accept other treatment, mutually agreeable to such Holder and JD Holdings.[4]

   (c)   *Voting*: Class 2 is Unimpaired by the Plans. Each Holder of a Class 2 Secured Claim is conclusively presumed to have accepted the Plans pursuant to section 1126(f) of the Bankruptcy Code. No Holder of a Class 2 Secured Claim is entitled to vote to accept or reject the Plans.

3.   Class 3 – General Unsecured Claims

   (a)   *Classification*: Class 3 consists of all General Unsecured Claims.

---

[4] For the avoidance of doubt, a loan may be reinstated and/or assumed. To the extent that any loan is neither reinstated nor assumed, then such loan shall be treated as a Secured Claim.

13

(b)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to an alternative treatment, each Holder of an Allowed General Unsecured Claim shall receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each General Unsecured Claim, Cash in an amount equal to the unpaid amount of such Allowed General Unsecured Claim on the date, or as soon thereafter as is reasonably practicable, that is the later of (i) the Effective Date or (ii) the date such Claim becomes an Allowed Claim or otherwise becomes payable under the Plans.

(c)    *Voting*: Class 3 is Unimpaired by the Plans. Each Holder of a Class 3 General Unsecured Claim is conclusively presumed to have accepted the Plans pursuant to section 1126(f) of the Bankruptcy Code. No Holder of a Class 3 General Unsecured Claim is entitled to vote to accept or reject the Plans.

4.    Class 4 – Equity Interests

(a)    *Classification*: Class 4 consists of all Equity Interests in each of the Debtors.

(b)    *Treatment*: Holders of Equity Interests shall not receive separate consideration for such Equity Interests. Such Equity Interests will be transferred as set forth in Article VI hereof.

(c)    *Voting*: Class 4 is Unimpaired by the Plans. Each Holder of a Class 4 Equity Interest is deemed to have accepted the Plans pursuant to section 1126(f) of the Bankruptcy Code. No Holder of a Class 4 Equity Interest is entitled to vote to accept or reject the Plans.

C.    *Special Provision Governing Unimpaired Claims and Equity Interests*

Except as otherwise provided in the Plans, nothing under the Plans shall affect the rights of the Debtors, JD Holdings, and any other party in interest in respect of any Unimpaired Claims or Equity Interests, including all rights in respect of legal and equitable defenses to all claims for relief and causes of action against the Holder of such claims and interests, or setoffs or recoupments against, any such Unimpaired Claims or Equity Interests. For the avoidance of doubt, JD Holdings may interpose an objection to any Claim at any time up to the Claims Objection Bar Date.

D.    *Acceptance or Rejection of Plan*

1.    Voting Classes Under Plans

Under the Plans, there are no Impaired Classes entitled to vote to accept or reject the Plans.

14

2.     <u>Presumed Acceptance Under Plans</u>

Under the Plans, (a) Classes 1, 2, 3 and 4 are Unimpaired, (b) the Holders of Claims in such Classes are conclusively presumed to have accepted the Plans pursuant to section 1126(f) of the Bankruptcy Code, and (c) such Holders are not entitled to vote to accept or reject the Plans.

E.     *Confirmation Pursuant to Section 1129(b) of Bankruptcy Code*

JD Holdings will request Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that is deemed to reject the Plans or votes to reject the Plans. JD Holdings reserves the right to revoke or withdraw the Plans or any document in the Plans Supplement, subject to and in accordance with the terms of the Plans, at any time prior to Confirmation. JD Holdings also reserves the right to alter, amend, or modify the Plans, including amending or modifying it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary, subject to and in accordance with the terms of the Plans, at any time prior to Confirmation.

Notwithstanding that voting on the Plans is not required, any party in interest may object to Confirmation.

**ARTICLE V.**
**CHARITABLE CONTRIBUTION**

On the Effective Date, JD Holdings shall establish the Charitable Trust to honor Mr. Hammons' charitable intent, which shall be named the "John Q. Hammons Charitable Trust". JD Holdings will contribute to the Charitable Trust (a) $2.0 million in Cash[5] and (b) one or more Non-Hotel Assets designated by JD Holdings on or before the Effective Date having a value totaling not less than $3.0 million[6] free and clear of all Liens and Claims.

In addition, JD Holdings would contribute to the Charitable Trust additional Non-Hotel Assets as designated by JD Holdings, of no less than $15 million in value[7] free and clear of all Liens and Claims, if Debtors and their Affiliates, the JQH Non-Debtor Entities (other than such JQH Non-Debtor Entities in which the Debtors do not own a controlling interest), and the estate of John Q. Hammons, and their respective principals, trustees, beneficiaries, shareholders, partners, members, directors, officers, employees and other persons or entities under their control (collectively, the "<u>Debtor Parties</u>"), voluntarily cooperate in obtaining the Confirmation Order, closing the Sale and other Plans Transactions, and implementing the Plans, as follows:

---

[5] JD Holdings shall pay the JQH Trust sufficient funds to wind up the administration and operations of the JQH Trust and the state court probate of the Estate of John Q. Hammons, which is estimated to be $615,000. To the extent these expenses exceed $615,000, the amount of Cash and the Non-Hotel Assets to be contributed to the Charitable Trust shall be decreased on a pro rata basis by an amount equal to such excess.

[6] The value of such additional Non-Hotel Assets shall be based on Debtors' valuations as set forth in the appraisals of the Non-Hotel Assets prepared by Alvarez and Marsal Valuation Services, with an effective date of June 26, 2016.

[7] The value of such additional Non-Hotel Assets shall be based on Debtors' valuations as set forth in the appraisals of the Non-Hotel Assets prepared by Alvarez and Marsal Valuation Services, with an effective date of June 26, 2016.

(i) None of the Debtor Parties Files an objection to the Disclosure Statement or Plans, or opposes Confirmation, or in any manner, directly or indirectly, takes or fails to take any actions, or otherwise work with, consult, encourage or otherwise assist any other Entity to take or fail to take any action that would or would reasonably be expected to prevent, delay, impede, interfere with, or otherwise could be adverse to, obtaining approval of the Disclosure Statement or Plans, or obtaining the Confirmation Order, as determined by JD Holdings in its reasonable judgment;

(ii) The Debtor Parties take all such actions, or not take such actions, as necessary or appropriate, or as requested by JD Holdings, to obtain the approval of the Disclosure Statement and Plans, and the Confirmation Order, and provide JD Holdings and its representatives access to review all books, records and other information (including all electronic records) with respect to the Debtors and JQH Non-Debtor Entities, as determined by JD Holdings in its reasonable judgment; and

(iii) The Debtors perform all of their obligations under the Plans and Plans Documents and otherwise comply with the terms of the Plans and Plans Documents, until the closing of all Plan Transactions contemplated by the APA, as determined by JD Holdings in its reasonable judgment.

The Plans Supplement will disclose the mechanism for how the contributions to the Charitable Trust will take into account certain administrative costs and other Claims.

Notwithstanding JD Holdings' right to designate which Non-Hotel Assets to contribute to the Charitable Trust, the land and building that houses, and the Debtors' interest in, the Missouri Sports Hall of Fame shall be one of the Non-Hotel Assets contributed to the Charitable Trust. In addition, in the event that the baseball stadium located in Springfield, Missouri and leased by the JQH Trust (the "Baseball Stadium") is not one of the Non-Hotel Assets contributed to the Charitable Trust, JD Holdings shall continue to keep the name "Hammons Field" on the Baseball Stadium until and unless JD Holdings transfers its interest in and/or rights with respect to the Baseball Stadium to a third party non-Affiliate of JD Holdings.

Greggory Groves and/or Jacqueline Dowdy shall designate the charitable organizations to which each of the Non-Hotel Assets in the Charitable Trust are distributed. Such designations shall be made in writing to JD Holdings within ten (10) days after JD Holdings informs the Debtors of the Non-Hotel Assets to be contributed to the Charitable Trust. Any disputes regarding the designations of such charitable organizations shall be resolved by Judge Dale Somers, as mediator.

## ARTICLE VI.
## EFFECT OF CONFIRMATION

*A.    Actions Required By Confirmation Order*

The Confirmation Order shall be deemed to (i) authorize, among other things, the Sale and other Plans Transactions and the implementation of the Plans, and (ii) require the Debtors to

16

execute the APA and other Plans Documents, and all other documents and instruments, and take all other actions, as required under these Plans or that JD Holdings otherwise determines are necessary or appropriate to consummate the Sale and other Plans Transactions and implement the Plans. On and after the Confirmation Date, JD Holdings may take, or require Debtors to take, all actions as may be necessary or appropriate to effect the Sale and other Plans Transactions and the implementation of the Plans.

Upon execution of the APA pursuant to the Confirmation Order, JD Holdings shall deposit $50 million into escrow (the "Deposit"), to be disbursed to the Debtors in the event that the Effective Date does not occur by the Outside Effective Date; provided, however, the Deposit shall not be forfeited if the Effective Date does not occur by the Outside Effective Date as a result of a breach by the Debtors of their obligations under the APA, Plans, the PSA or the Settlement Agreement, or failure of a closing condition in the APA or other Plans Documents, or an appeal of the Confirmation Order. If the Effective Date does not occur by the Outside Effective Date, then forfeiture of such Deposit shall be the sole remedy for such failure.[8]

B.    *Cooperation by Debtor Parties*

From the Confirmation Date until the Effective Date:

(i)     The Debtor Parties shall continue, and cause their Affiliates, to operate the Assets in the ordinary course consistent with Debtors' past custom and practice and the industry standards for the operation of similar Assets and Debtors' operating budget for 2018 (the "Ordinary Course of Business"), including (i) maintaining the inventories at levels maintained in the Ordinary Course of Business; (ii) performing maintenance and repairs in the Ordinary Course of Business, and commencing or continuing any capital projects scheduled in the capital budget for the Assets; (iii) taking or ceasing such action as is necessary, appropriate or advisable to cure any violation of applicable laws; (iv) renewing all licenses and permits before their expiration; (v) maintaining all existing insurance policies; (vi) not making any alterations or improvements at the Assets, or demolishing any of the Assets, other than in the Ordinary Course of Business or as provided in Debtor's capital expenditures budget for the relevant period; (viii) not removing any property from the Assets, other than in the Ordinary Course of Business; and (ix) not taking, or causing or permitting to be taken, any action that could impair Debtors' title to any of the Assets or create any Lien or encumbrance on the Assets; (x) complying with all leases, convention center agreements, franchise agreements, operating agreements, management agreements, licenses and permits; (xi) amending, extending, renewing or terminating any leases, agreements, licenses or permits, except in the Ordinary Course of Business, without JD Holdings' prior written consent; (xi) not entering into any new leases or agreements with respect to the Assets, without JD Holdings' prior written consent, unless such leases or agreements are terminable by JD Holdings without any termination fee, penalty or other amount upon not more than 30 days' notice; (xii) not entering into any agreement or understanding with Insiders, without JD

_____

[8] In addition, the allowance of JD Holdings' Claims may be reversed as set forth in the PSA.

Holdings' prior written consent; and (xiii) not paying bonuses or other amounts in excess of base salary to any employees of Debtors;

(ii)  The Debtor Parties shall permit JD Holdings to take such actions with respect to the Assets as JD Holdings deems necessary or advisable to facilitate the transition of the operation of the Assets at closing of the Sale pursuant to which the employees, agents and representatives designated by JD Holdings shall have unrestricted access to the Assets and Debtors' offices in Springfield, Missouri, during normal business hours to facilitate the transition of the management and operation of the Assets upon closing of the Sale, including, the right to review all books, records and other information (including all electronic records) with respect to the Assets in Debtors' possession, provided that neither JD Holdings nor the Sale Lender shall be deemed to have assumed any management or operational responsibilities prior to closing of the Sale by virtue of such activities and shall not have the right to direct any of Debtors' employees or otherwise have any right to make any decisions for or on behalf of Debtors with respect to the operation of the Assets;

(iii)  The Debtor Parties shall provide all financial statements and other reports, documents, notices and information to JD Holdings and access to the Assets that Debtors otherwise would be required to provide to any of its lenders under the applicable loan agreements with Debtors for Assets secured by any Liens, or as requested by JD Holdings for such Assets that are not secured by any Liens, and any such documents and information requested by JD Holdings;

(iv)  JD Holdings shall have the right to conduct, or engage a third-party to conduct, a forensic audit of all books and records of Debtors and its Affiliates and the Assets for any time period, and the Debtor Parties shall cooperate fully in such forensic audit;

(v)  The Debtor Parties shall take all such actions, or not take such actions, necessary or appropriate to consummate the Sale and all other Plans Transactions and implement the Plans, including permitting JD Holdings and its lenders, agents and representatives to communicate directly with any ground lessors, franchisors, governmental authorities and other third-parties, obtaining all consents, approvals, estoppel certificates and other documents, materials or information as requested by any lenders, ground lessors, franchisors, governmental authorities or other third parties, or as JD Holdings reasonably determines necessary or appropriate, to consummate the assumption of the Assumed Loans, the Sale and other Plans Transactions; and

(vi)  The Debtor Parties shall not in any manner, directly or indirectly, take or fail to take any actions, or otherwise work with, consult, encourage or otherwise assist any other Entity to take or fail to take any action that would or would reasonably be expected to prevent, delay, impede, interfere with, or otherwise could be adverse to, the consummation of the Sale and any other Plans Transactions or implementation of the Plans, including any appeal relating to the Plans.

18

After the Effective Date, Debtor Parties shall continue to perform their obligations in this Article VI.B to the extent that they have personnel and resources available to perform such obligations. Any disputes regarding Debtor Parties' performance of their obligations in this Article VI.B. shall be resolved by Judge Dale Somers, as mediator.

## ARTICLE VII.
## IMPLEMENTATION OF THE SALE AND OTHER PLANS TRANSACTIONS

*A.    Overview*

The Plans contemplate a sale of all Assets (including Equity Interests) free and clear of all Liens and Claims (except as set forth in these Plans) pursuant to Bankruptcy Code sections 105, 363, 365 and 1129 (among others) to JD Holdings pursuant to the APA. JD Holdings shall file a Plans Supplement no later than seven (7) days before the Confirmation Hearing. This Plans Supplement shall include the schedules to the APA and such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms of the Plans. In consideration, on or shortly after the Effective Date, JD Holdings shall pay all Allowed Claims in full in Cash, except for any Assumed Loans (whether pursuant to the terms of the existing agreements and/or pursuant to new agreements to do so, which shall be paid in accordance with their terms), and contribute certain Cash and Non-Hotel Assets to a new Charitable Trust as set forth in Article V hereof. At or prior to the Effective Date, JD Holdings may elect to leave certain Assets with the JQH Trust either pending subsequent closings as set forth hereafter, may direct certain Assets to be conveyed or transferred directly to the Charitable Trust free and clear of all Liens and Claims, or if JD Holdings determines not to close with respect to such Assets, then such Assets shall remain with the JQH Trust free and clear of all Liens and Claims.

JD Holdings shall be obligated to proceed to closing of the Sale pursuant to the APA following the Confirmation Order becoming a Final Order, except in the event of an appeal of the Confirmation Order, a breach by Debtors of their obligations under the APA, Plans, the PSA, or the Settlement Agreement, and certain other customary sale conditions to be set forth in the APA, as set forth more fully in the Disclosure Statement. The APA contemplates a series of closings, starting on the Effective Date and ending no later than the Outside Closing Date. Notwithstanding the foregoing, if JD Holdings is unable to obtain a required consent for certain Assets, a waiver of a third-party termination right that would be triggered by the sale of certain Assets or consent for the assumption of the Assumed Loans, by such Outside Closing Date (the "Delayed Assets"), but all Allowed Claims existing as of the Outside Closing Date have been paid by the Outside Closing Date, Debtors shall retain such Delayed Assets free and clear of all Liens and Claims until such time that such Delayed Assets are transferrable to JD Holdings. In such case, all economic benefits and interests from such Delayed Assets shall inure to the benefit of JD Holdings pending such closing on the Delayed Assets. The Plans Supplement will disclose additional details regarding the administration and operation of any Delayed Assets after the Outside Closing Date.

As part of the Plans, JD Holdings will subordinate its Claim arising from the ROFR to the payment of all Allowed Claims. JD Holdings has an Allowed Claim of $495,938,161.00 for

19

its Claims against each Debtor jointly and severally arising from the ROFR (the "Allowance Provision"); provided, however, if Debtors (i) do not breach the PSA and (ii) cooperate as set forth in the PSA and in the Settlement Agreement, and the Plans are not confirmed or the Effective Date of the Plans does not occur, then the Allowance Provision shall be of no force and effect unless Debtors, their employees, officers, directors, and/or co-trustees nevertheless receive through some alternative plan, sale, or other transaction the benefits of the Plan modifications in the Settlement Agreement, to include the funding of the Charitable Trust and the benefits of the Settlement Agreement, in which case the Allowance Provision will be effective. Accordingly, a determination of the amount of such Claim, and all litigation relating thereto, will not be needed or affect the Plans Distributions to other Holders of Claims. The subordination of JD Holdings' Claim arising from the ROFR shall become effective upon consummation of the Sale and implementation of the Plans, and shall be subject to Debtors' compliance with these Plans.

JD Holdings will have a limited period of time until the Claims Objection Bar Date in which to determine the Claims, if any, to which an objection would be Filed. All Claims to which an objection is not Filed will be deemed Allowed. If a Claim objection is Filed, the undisputed portion of that Claim will be deemed Allowed, entitled to payment along with all other Allowed Claims upon the Effective Date of the Plans or as soon thereafter as is practicable, and the disputed portion of that Claim will not be paid until such dispute is resolved by settlement or adjudication and determined to be an Allowed Claim. Prior to the Effective Date, JD Holdings will identify what Assets, if any, it will not purchase as part of the Sale or other Plans Transactions, in which case the JQH Trust shall retain any such Assets free and clear of all Liens and Claims.

As set forth more fully in the Disclosure Statement, some of Debtors' debts are assumable by a purchaser of the related Assets. Upon Confirmation, Debtors shall cooperate fully and take all steps necessary to effectuate such assumptions by JD Holdings, and the lenders relating thereto shall be obligated to perform as required by the respective loan agreements. JD Holdings shall work with the lenders of such loans to ensure timely assumption.

B.    *Sources of Consideration for Sale and Other Plans Transactions and Plans Distributions*

JD Holdings shall (i) assume the Assumed Loans, (ii) assume the Assumed Agreements, (iii) assume and pay the Allowed Claims, (iv) establish and contribute assets to the Charitable Trust, (v) pay the JQH Trust sufficient funds to wind up the administration and operations of the JQH Trust and the state court probate of the Estate of John Q. Hammons, and (vi) pay taxes as a result of dispositions (including but not limited to capital gains taxes and other taxes payable under 26 U.S.C. § 1231) resulting from the Sale and Plans Transactions described in the Plans and the APA, all as set forth above. Pursuant to these Plans, JD Holdings is purchasing all Assets, except those Assets, if any, that JD Holdings elects not to purchase as part of the Sale or other Plans Transactions, in which case the JQH Trust shall retain any such Assets free and clear of all Liens and Claims. Funds to consummate the Plans Transactions shall come from JD Holdings and its affiliates and financing from third parties, including the Sale Lender pursuant to the Sale Financing Facility (as discussed in greater detail in the Disclosure Statement).

20

## C.    Provisions Governing Distributions

As of the close of business on the Distribution Record Date, the Claims Register for each of the Classes of Claims and Equity Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Equity Interests. Except as otherwise provided in the Plans, the Debtors and JD Holdings, as applicable, shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date. Except as otherwise provided in the Plans, the Debtors and JD Holdings, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the Claims Register as of the close of business on the Distribution Record Date.

Unless otherwise provided in the Plans, on the Effective Date or as soon thereafter as reasonably practicable (or if a Claim or Equity Interest is not Allowed on the Effective Date, on the date that such a Claim or Equity Interest is Allowed, or as soon thereafter as reasonably practicable), each Holder of an Allowed Claim or Equity Interest shall receive the full amount of the Plans Distribution that such Holder is entitled to pursuant to the Plans.

During the course of the Chapter 11 Cases, the Debtors have stipulated to limited relief from the automatic stay (the "Stay Relief Stipulations") to permit certain potential Holders of Claims arising out of or related to the allegations contained in their respective causes of action (collectively, the "Action"). Pursuant to those Stay Relief Stipulations, the Holders of such Claims were permitted to litigate the issues raised in the Actions to completion, and the parties in the Actions were permitted to pursue any appeals of any decisions to any court with appellate jurisdiction, for the purpose of establishing the amount, if any, of their claims (the "Personal Injury Claim Amount"). The Holders of such Claims were also permitted to settle, enforce and collect the Personal Injury Claim Amount directly from all insurance policies and proceeds without having to seek a further order of the Bankruptcy Court.[9]

All tort Claims subject to litigation and defended by the Debtors' insurers shall be treated as disputed Claims.  Accordingly, any such Claim shall be paid by JD Holdings only to the extent that (i) the claimant prevails in litigation and (ii) the Debtors' insurance policies do not cover the Claim. JD Holdings shall take any actions necessary to continue the coverage for such Claims under the applicable insurance policies.

## D.    Compliance Matters

In connection with the Plans, to the extent applicable, the Debtors and JD Holdings shall comply with all tax withholding and reporting requirements imposed on them by any governmental authority, and all Plans Distributions shall be subject to such withholding and reporting requirements.  Notwithstanding any provision to the contrary in the Plans, the Debtors and JD Holdings shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Plans Distribution generate sufficient funds to pay applicable withholding taxes, withholding Plans Distributions pending receipt of information necessary to facilitate such Plans Distributions, or

---

[9] Such Claims shall be disputed Claims.

21

establishing any other mechanisms they reasonably believe are necessary or appropriate. The Debtors and JD Holdings reserve the right to allocate all Plans Distributions in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

### E. Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from any Debtor to JD Holdings, the Sale Lender or to any other Entity pursuant to, in contemplation of, or in connection with the Plans, including (1) the issuance, distribution, transfer, or exchange of any debt, Equity Interest, or other interest in any Debtor, (2) the creation, amendment, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of any indebtedness by any document or instrument or other means, (3) the making, assignment, or recording of any lease or sublease, or memorandum of such lease or sublease, or (4) the making, delivery, or recording of any deed, bill or sale, assignment or other document or instrument of transfer of any real property or personal property, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles tax, mortgage tax, real estate transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or fee imposed by any governmental authority, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or fee by such governmental authority, and accept for filing and recordation any of the foregoing documents and instruments without the payment of any such tax or fee.

### F. Employment of Debtors' Employees / Severance Matters

With respect to the approximately 4,000 employees (the "Employees") employed by Debtors and Non-Debtors JQH Entities ("Existing Employer"), upon consummation of the Sale and Other Plan Transactions, JD Holdings or its Affiliates ("New Employer") will offer employment to substantially all of the Employees of Debtors and JQH Accounting (subject to standard background and compliance checks), but in any event a sufficient number of Employees that will not trigger the application of the Worker Adjustment and Retraining Notification Act (or similar local or state laws or regulations) (the "WARN Act"). New Employer will (a) pay salaries or wages to the Employees who accept such offer of employment (the "Rehired Employees") at no less than ninety (90%) of the salary or wages of such Rehired Employees existing as of the rehiring date, and (b) recognize the Rehired Employee's prior years of employment with Existing Employer (including any prior employment with Winegardner & Hammons, Inc. and any predecessor-in-interest to the Debtors).

New Employer shall be responsible for all claims and liabilities with respect to (1) application of the WARN Act, (2) salaries, wages, bonuses, profit sharing and other compensation, vacation and sick leave, worker's compensation, employer's contribution under F.I.C.A., unemployment compensation, welfare benefits, deferred compensation, savings, pension, 401(k) and retirement plan and insurance and other benefits of whatever kind which becomes payable to any Employee, and (3) any alleged or actual unfair labor practices, employment discrimination charges and lawsuits, and other similar claims of any Employees regarding employment matters arising out of or alleged acts or omissions of Existing Manager.

New Employer shall defend, indemnify and hold harmless the Trustees Released Parties from and against all loss, cost, express liabilities, causes of action and claims with respect to the application of the WARN Act.

With respect to the Employees identified in Exhibit A to the Settlement Agreement (the "Designated Employees") who are terminated or resign within 180 days after consummation of the Sale or other Plan Transactions, each Designated Employee shall promptly receive from Existing Employer a lump sum severance payment in the amounts set forth in Exhibit A to the Settlement Agreement upon such termination or resignation.

With respect to the Employees at JQH Management's offices in Springfield, Missouri, or its regional offices, or at JQH Accounting Services, LLC, but are not specifically identified in Exhibit A to the Settlement Agreement (the "Non-Designated Employees") who are terminated without cause within 180 days after consummation of the Sale or other Plan Transaction, each Non-Designated Employee shall promptly receive from Existing Employer a lump sum severance payment equal to one week of salary for every full year of employment by such Non-Employee with any Debtors or Non-Debtor JQH Entities (including any prior employment with Winegardner & Hammons, Inc. or a predecessor-in-interest of the Debtors) up to twenty (20) years of employment.[10]

JD Holdings (or its Affiliate) shall provide access to COBRA health insurance coverage to all Employees (both Designated Employees and Non-Designated Employees) who are terminated or resign upon consummation of the Sale or other Plan Transaction.

Prior to the Effective Date, each of Ms. Dowdy and Mr. Groves shall continue to perform their regular duties and the duties set forth in this Plan, the Settlement Agreement, and the Plan Support Agreement and receive their regular compensations and benefits provided to them by Existing Employer. Except as otherwise set forth in the Plans Supplement (as agreed to by the Debtors and JD Holdings) to be filed prior to the Confirmation Hearing (or other agreement), from and after the Effective Date Ms. Dowdy and Mr. Groves: (a) shall resign from their positions with JQH Management and each and every position they hold with any of the other Debtors (with the exception of their role as successor trustees of the JQH Trust) and (b) shall receive no further compensation from the Debtors in connection with their resignations from such management positions, *provided however,* that promptly upon their respective resignations from JQH Management, unless otherwise agreed to between the Debtors and JD Holdings and as set forth in the Plans Supplement, the Existing Employer or JD Holdings (or its Affiliate) shall pay in a lump sum the severance payable to Ms. Dowdy and Mr. Groves as set forth on Exhibit A to the Settlement Agreement.

With respect to all payments to be made by Existing Employer under this paragraph F, JD Holdings (or its Affiliate) shall cause Existing Employer to have sufficient Cash to make such payments.

---

[10] If a Non-Designated employee is offered employment in a location more than 50 miles from his or her current place of employment, the Non-Designated employee may reject such offer of employment without waiving his or her right to severance under this Article VII.F.

23

## ARTICLE VIII.
## EFFECTIVE DATE OF PLANS

### A.  Binding Effect of Plans

Subject to Section IX.B of these Plans, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plans shall be immediately effective and enforceable and binding upon the Debtors, the JQH Non-Debtor Entities, JD Holdings, the Sale Lender and any and all Holders of Claims and Equity Interests (irrespective of whether such Claims and Equity Interests accepted or are deemed to have accepted the Plans), all Entities that are parties, or are subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plans, all Entities acquiring or receiving property under the Plans, and all non-Debtor parties to Executory Contracts or Unexpired Leases with any Debtor, and all Releasing Parties. All Claims and Equity Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plans regardless of whether any Holder of a Claim or Equity Interest has supported the Plans. In addition, the discharges and releases set forth in this Article IX shall become effective and binding on the Effective Date.

### B.  Discharge of Claims

Except as otherwise expressly provided by section 1141 of the Bankruptcy Code or the Plans, and in consideration of the obligation of JD Holdings to make the Plans Distributions, any debt that arose before the Confirmation Date and any debt of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and all Claims of any nature will be released and discharged in full on the Effective Date, including any interest accrued thereon from and after the Petition Date, whether or not (i) a Proof of Claim based on such debt or obligation is Filed or deemed Filed under section 501 of the Bankruptcy Code, (ii) such Claim is Allowed or (iii) the Holder of such Allowed Claim supports the Plans.

### C.  Releases by the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plans, for good and valuable consideration, including the service of the JD Holdings Released Parties and the Trustees Released Parties to facilitate the reorganization of the Debtors, the consummation of the Plans Transactions and the implementation of the Plans, from and after the Effective Date, the Debtors (including the respective estates), for themselves and on behalf of their Affiliates, the JQH Non-Debtor Entities and the estate of John Q. Hammons, and each of the foregoing Entities' respective and current and former shareholders, members (including ex-officio members), partners, directors, principals, managers, officers, trustees, beneficiaries, donees, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, consultants, agents, and representatives, and the predecessors, successors and assigns of each of the foregoing, including, without limitation, Greggory Groves and Jacqueline A. Dowdy, individually and in their respective capacities as co-successor trustees of the JQH Trust, and as officers, directors, and employees of any Debtors and JQH Non-Debtor Entities (in each case, in his, her, or its capacity as such, the "Debtor Releasing Parties"), hereby conclusively, absolutely, unconditionally, irrevocably, fully and forever release

24

and discharge each of the JD Holdings Released Parties and the Trustees Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of any federal state or other laws, or otherwise, that any of the Debtor Releasing Parties have asserted, could have asserted or might be entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Entity, based on relating to, or in any manner arising from, or in connection with, in whole or in part, (i) the Debtors (including their respective estates); (ii) the Chapter 11 Cases; (iii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is the subject of the Plans; (iv) the business or contractual arrangements between the Debtors and any Released Party (including the ROFR); (v) the restructuring of any Debtors or JQH Non-Debtor Entities; (vi) the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases; (vii) the negotiation, formulation, or preparation of the Plans and the Disclosure Statement, Plans Documents or other agreements, instruments or documents relating to the Plans; or (viii) the subject matter of the Delaware Litigation. Notwithstanding anything to the contrary in the Plans, the foregoing release does not release any obligations of any Entity under the Plans or any Plans Documents executed to consummate any Plan Transactions, or other agreement, instrument or documents executed to implement the Plans.

D.    *Releases by JD Holdings*

Except as otherwise specifically provided in the Plans, for good and valuable consideration, including the service of the Debtors Released Parties and the Trustees Released Parties to facilitate the reorganization of the Debtors, the consummation of the Plans Transactions and the implementation of the Plans, from and after the Effective Date, the JD Holdings, for itself and on behalf of its Affiliates, and each of the foregoing Entities' respective and current and former shareholders, members (including ex-officio members), partners, directors, principals, managers, officers, trustees, beneficiaries, donees, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, consultants, agents, and representatives, and the predecessors, successors and assigns of each of the foregoing, including, without limitation, Jonathan D. Eilian and Ronald C. Brown, individually and in their respective capacities as officers, directors, and employees of any JD Holdings or any of its Affiliates (in each case, in his, her, or its capacity as such, the "JD Holdings Releasing Parties"), hereby conclusively, absolutely, unconditionally, irrevocably, fully and forever release and discharge each of the Debtors Released Parties and the Trustees Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of any federal state or other laws, or otherwise, that any of the JD Holdings Releasing Parties have asserted, could have asserted or might be entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Entity, based on relating to, or in any manner arising from, or in connection with, in whole or in part, (i) the Debtors (including their respective estates); (ii) the Chapter 11 Cases; (iii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is the subject of the Plans; (iv) the business or contractual arrangements between the Debtors and any Released Party (including the ROFR); (v) the restructuring of any Debtors or JQH Non-Debtor

25

Entities; (vi) the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases; (vii) the negotiation, formulation, or preparation of the Plans and the Disclosure Statement, Plans Documents or other agreements, instruments or documents relating to the Plans; (viii) the subject matter of the Delaware Litigation; or (ix) the probate estates of John Q. Hammons and Juanita Hammons. Notwithstanding anything to the contrary in the Plans, the foregoing release does not release any obligations of any Entity under the Plans or any Plans Documents executed to consummate any Plan Transactions, or other agreement, instrument or documents executed to implement the Plans.

E.    *Exculpation*

Except as otherwise specifically provided in the Plans, no Exculpated Party shall be responsible or have any liability for, and each Exculpated Party is hereby released and exculpated from, any claim, Cause of Action, duty, obligation, liability, damage, loss, cost or expense for (i) any act taken or not taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Disclosure Statement, Plans, Confirmation, Plans Transactions, the Plans, or any Plan Documents or other agreement, document, instrument or release created or entered into in connection with the Plans; (ii) any act taken or not taken in connection with, or related to, the negotiation of Cure Costs; (iii) any act taken or not taken in connection with, or related to, the amendment, assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases; or (iv) any other prepetition or post-petition act taken or not taken in connection with, or related to, the restructuring of the Debtor, except for (A) willful misconduct (including fraud), (B) the rights of any Entity to enforce the Plans and the Plans Documents, or (C) the rights of any Entity to enforce any Final Order, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties, responsibilities and obligations under the Plans or any Final Order.

F.    *Dismissal of Delaware Litigation*

Upon consummation of the Sale of the 27 hotels being financed by the Sale Lender, Debtors and JD Holdings shall, and shall cause their Affiliates, and Debtors shall cause the estate of John Q. Hammons, to take all such actions necessary to dismiss the Delaware Litigation and all pending appeals in the Chapter 11 Cases, with prejudice to all parties thereto.

G.    *Third Party Releases by Holders of Claims and Equity Interests*

Except as otherwise specifically provided in the Plans, on and after the Effective Date, (1) each present and former Holder of a Claim or Equity Interest (other than JD Holdings and its Affiliates), and each of their respective Affiliates, and each of the foregoing Entities' respective current and former shareholders, members (including ex-officio members), partners, directors, principals, managers, officers, trustees, beneficiaries (including undesignated beneficiaries), donees, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, consultants, agents, and representatives, and the predecessors, successors and assigns of each of the foregoing (in each case, in his, her, or its capacity as such, a "Third-Party Releasing Party") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, fully and forever released and discharged the JD Holdings Released

26

Parties, the Debtors Released Parties, and the Trustees Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, whether for tort, contract, violations of any federal, state or other laws or otherwise, that each Third-Party Releasing Party have asserted, could have asserted or might be entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, or in connection with, in whole or in part, (i) the Debtors; (ii) the Chapter 11 Cases; (iii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is the subject of the Plans; (iv) the business or contractual arrangements between the Debtors and any Released Party; (v) the restructuring of any Debtors or JQH Non-Debtor Entities; (vi) the restructuring of Claims or Equity Interests prior to or in the Chapter 11 Cases; (vii) the negotiation, formulation, or preparation of the Plans and the Disclosure Statement, Plan Documents or other agreements, instruments, or documents relating to the Plans; (viii) any act taken or not taken in connection with, or related to, the negotiation of Cure Costs; (ix) the amendment, assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases; (x) the probate estates of John Q. Hammons and Juanita Hammons; and (xi) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

*H.      Preservation, Transfer, and Waiver of Rights of Action*

All rights to commence and pursue any and all Causes of Action, whether arising before, on or after the Petition Date, including the Debtors' right to commence, prosecute, or settle such Causes of Action, shall be transferred to JD Holdings on the Effective Date, and JD Holdings thereafter shall commence, prosecute, terminate, or settle such Causes of Action in its sole discretion. If any Causes of Action cannot be transferred to JD Holdings under applicable law, such Causes of Action shall be retained by the Debtors notwithstanding the occurrence of the Effective Date, and Debtors shall commence, prosecute, terminate, or settle such Causes of Action solely at JD Holdings' direction, in JD Holdings' sole discretion, and at JD Holdings' expense.

**ARTICLE IX.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

*A.      Assumption of Executory Contracts and Unexpired Leases*

JD Holdings shall have until the Effective Date to identify the Rejected Executory Contracts and Unexpired Leases. Any Assumed Agreements not identified as Rejected Executory Contracts and Unexpired Leases shall be assumed and assigned to JD Holdings as of the Effective Date.

Non-Debtor parties to the Assumed Agreements shall File, within twenty (20) days following the Effective Date, a proposed amount of the Cure Costs, and the assumption and assignment of such Assumed Agreement may be conditioned upon the disposition of all issues with respect to such Cure Costs.

27

*B.     Rejection of Executory Contracts and Unexpired Leases*

All Rejected Executory Contracts and Unexpired Leases shall be deemed rejected on the Effective Date, except for those Executory Contracts and Unexpired Leases that have been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date.

Non-Debtor parties to Rejected Executory Contracts and Unexpired Leases shall have the right to assert a Claim on account of the rejection of such Rejected Executory Contracts and Unexpired Leases, including under section 502(g) of the Bankruptcy Code, which shall be Filed within twenty (20) days after the Effective Date.

**ARTICLE X.**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,**
**AND DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS**

*A.     Allowance of Claims and Equity Interests*

After the Effective Date, JD Holdings shall have and retain all rights, claims and defenses that the Debtors had with respect to any Claim or Equity Interest immediately prior to the Effective Date. Except as expressly provided herein, no Claim or Equity Interest shall become Allowed unless and until such Claim or Equity Interest is deemed Allowed under Section I.A.5 hereof or the Bankruptcy Code.

*B.     Administration of Claims and Equity Interests*

Except as otherwise provided in the Plans, after the Effective Date, JD Holdings shall have the sole and exclusive right and authority to (1) File, withdraw, or litigate to judgment, objections to Claims and Equity Interests, (2) settle or compromise any disputed Claim or Equity Interest without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.

*C.     Interest*

Unless otherwise (1) specifically provided for in the Plans or the Confirmation Order, (2) agreed to in writing by JD Holdings, or (3) allowed pursuant to Court order, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Additionally, and without limiting the foregoing, and except as otherwise set forth in the Plans or the Confirmation Order, if any Disputed Claim becomes an Allowed Claim, interest shall not accrue or be paid on such disputed portion of such Disputed Claim with respect to the period from the Effective Date to the date a final Plans Distribution is made on account of such Disputed Claim unless otherwise (1) specifically provided for in the Plans or the Confirmation Order, (2) agreed to in writing by JD Holdings, or (3) allowed pursuant to Court order.

*D.*   *Deadline to File Objections to Claims*

Any objections to any Claims shall be Filed no later than the Claims Objection Bar Date.

*E.*   *New Claims and Amendments to Claims*

A Claim may not be Filed or amended after the Confirmation Hearing commences without the prior authorization of the Bankruptcy Court or JD Holdings, and any such new or amended Claim Filed without such authorization shall be deemed Disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.

## ARTICLE XI.
## MODIFICATION, AMENDMENT, REVOCATION OR WITHDRAWAL OF PLANS

*A.*   *Modification and Amendments*

Except as otherwise specifically provided in the Plans, JD Holdings reserves the right to modify or amend the Plans prior to the Confirmation Date as to material terms and to seek Confirmation as modified or amended consistent with the Bankruptcy Code, provided, however, that such modifications or amendments shall not be inconsistent with the terms and conditions of the PSA and Settlement Agreement.

*B.*   *Effect of Confirmation on Modifications and Amendments*

The entry of a Confirmation Order shall mean that all modifications or amendments to the Plans since the solicitation of approval for such Plans are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

*C.*   *Revocation or Withdrawal of Plans*

JD Holdings reserves the right to revoke or withdraw the Plans prior to the Confirmation Date and to File subsequent chapter 11 plans, provided that such plans shall not be inconsistent with the terms and conditions of the PSA and Settlement Agreement.

## ARTICLE XII.
## RETENTION OF JURISDICTION

The Bankruptcy Court would retain any jurisdiction it has to the maximum extent possible to interpret the Plans, its Confirmation Order, the PSA, and the Settlement Agreement, and all matters relating thereto.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

*A.*    *Additional Documents*

JD Holdings shall File the Plans Supplement no later than seven (7) days before the Confirmation Hearing. The Plans Supplement shall include such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms of the Plans.

*B.*    *Reservation of Rights*

Except as expressly set forth in the Plans, the Plans shall have no force or effect unless the Bankruptcy Court shall have entered the Confirmation Order. None of the Filing of the Plans, any statement or provision in the Plans, or the taking of any action by the Debtors or JD Holdings with respect to the Plans or the Disclosure Statement, shall be or shall be deemed to be an admission or waiver of any rights of JD Holdings or the Debtors with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

If any objections to Confirmation are Filed, JD Holdings may choose to pursue Confirmation and proceed with the Confirmation Hearing as to some Debtors, but not others upon notice in writing to the Entity making such objection.

*C.*    *Successors and Assigns*

Except as expressly set forth in the Plans, the rights, benefits, and obligations of any Entity named or referred to in the Plans shall be binding on, and shall inure to the benefit of, (i) any heir, devisee, donee, executor, administrator, guardian of any such individual, and (ii) any Affiliate of such Entity, and each of the foregoing Entities' respective shareholders, members, partners, directors, principals, managers, officers, trustees, beneficiaries, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, consultants, agents, and representatives, and (iii) the predecessors, successors and assigns or each of the foregoing Entities in clauses (i) and (ii).

*D.*    *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plans to be served on or delivered to:

JD Holdings, shall be served on:

JD Holdings, L.L.C.
1114 Avenue of the Americas, 39th
Floor
New York, New York 10036
Attn: General Counsel
Tel: (212) 730-7211
bcameron@atriumllc.com

30

With a copy to:

Jonathan Margolies (MO 30770)
McDowell, Rice, Smith & Buchanan
Skelly Building, Suite 350 (KS Fed
70693)
605 West 47th Street
Kansas City, Missouri 64112
Tel: (816) 753-5400
Fax: (816) 753-9996
jmargolies@mcdowellrice.com

Scott A. Edelman
Jed M. Schwartz
MILBANK, TWEED, HADLEY &
McCLOY LLP
28 Liberty Street
New York, NY 10005-1413
Tel: (212) 530-5000
Fax: (212) 530-5219
sedelman@milbank.com
jschwartz@milbank.com

Mark Shinderman
MILBANK, TWEED, HADLEY &
McCLOY LLP
2029 Century Park East
33rd Floor
Los Angeles, CA 90067-3019
Tel: (424) 386-4000
Fax: (213) 629-5063
mshinderman@milbank.com

The Debtors shall be served on:

Nicholas Zluticky
STINSON LEONARD STREET LLP
1201 Walnut Street
Suite 2900
Kansas City, Missouri 64106
Tel: (816) 691-3278
Fax: (816) 691-3495
nicholas.zluticky@stinson.com

31

After the Effective Date, JD Holdings shall have the right to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that have Filed a renewed request to receive documents pursuant to Bankruptcy Rule 2002.

E.    *Entire Agreement*

Except as otherwise indicated, the Plans supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on subjects and matters addressed in the Plans, all of which have become merged and integrated into the Plans.

F.    *Non-severability of Plans Provisions*

If, prior to Confirmation, any term or provision of the Plans is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose and intent of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plans shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall be deemed to provide that each term and provision of the Plans, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plans and may not be deleted or modified without the consent of JD Holdings, and (3) non-severable and mutually dependent.

G.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, JD Holdings shall be deemed to have solicited acceptance of the Plans in good faith and in compliance with the Bankruptcy Code.

H.    *Waiver or Estoppel*

**Each Holder of a Claim or Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, if such agreement was not disclosed in the Plans, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.**

I.    *Conflicts*

Except as set forth in the Plans, to the extent that any provision of the Disclosure Statement, the Plans Supplement, or any other order (other than the Confirmation Order) referenced in the Plans (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the

32

Plans, unless otherwise ordered by the Bankruptcy Court, the portion of the Plans shall govern and control.

*[Remainder of page intentionally left blank]*

Date: March 30, 2018

**JD HOLDINGS, L.L.C.**

By: _____

Name: <u>Ronald C. Brown</u>

Title: <u>President</u>

34

**SCHEDULE 1**
**List of Debtors**

1.  ACLOST, LLC

2.  Bricktown Residence Catering Co. Inc.

3.  Chateau Catering Co. Inc.

4.  Chateau Lake, LLC

5.  City Centre Hotel Corporation

6.  Civic Center Redevelopment Corp

7.  Concord Golf Catering Co. Inc.

8.  Concord Hotel Catering Co. Inc.

9.  East Peoria Catering Co. Inc.

10. Fort Smith Catering Co. Inc.

11. Franklin/Crescent Catering Co. Inc.

12. Glendale Coyotes Catering Co. Inc.

13. Glendale Coyotes Hotel Catering Co. Inc.

14. Hammons of Arkansas, LLC

15. Hammons of Colorado LLC

16. Hammons of Franklin, LLC

17. Hammons of Frisco, LLC

18. Hammons of Huntsville, LLC

19. Hammons of Lincoln, LLC

20. Hammons of New Mexico, LLC

21. Hammons of Oklahoma City, LLC

35

22. Hammons of Richardson, LLC

23. Hammons of Rogers, Inc.

24. Hammons of Sioux Falls, LLC

25. Hammons of South Carolina, LLC

26. Hammons of Tulsa, LLC

27. Hammons, Inc.

28. Hampton Catering Co. Inc.

29. Hot Springs Catering Co. Inc.

30. Huntsville Catering, LLC

31. International Catering Co. Inc.

32. John Q. Hammons 2015 Loan Holdings, LLC

33. John Q. Hammons Center, LLC

34. John Q. Hammons Fall 2006, LLC

35. John Q. Hammons Hotels Development, LLC

36. John Q. Hammons Hotels Management I Corporation

37. John Q. Hammons Hotels Management II, L.P.

38. John Q. Hammons Hotels Management, LLC

39. Joplin Residence Catering Co. Inc.

40. JQH - Allen Development, LLC

41. JQH - Concord Development LLC

42. JQH - East Peoria Development, LLC

43. JQH - Ft. Smith Development, LLC

44. JQH - Glendale, AZ Development, LLC

36

45. JQH - Kansas City Development, LLC

46. JQH - La Vista Conference Center Development, LLC

47. JQH - La Vista CY Development, LLC

48. JQH - La Vista III Development, LLC

49. JQH - Lake of the Ozarks Development LLC

50. JQH - Murfreesboro Development, LLC

51. JQH - Normal Development, LLC

52. JQH - Norman Development, LLC

53. JQH - Oklahoma City Bricktown Development, LLC

54. JQH - Olathe Development, LLC

55. JQH - Pleasant Grove Development LLC

56. JQH - Rogers Convention Center Development, LLC

57. JQH - San Marcos Development, LLC

58. Junction City Catering Co., Inc.

59. KC Residence Catering Co., Inc.

60. La Vista CY Catering Co., Inc.

61. La Vista ES Catering Co., Inc.

62. Lincoln P Street Catering Co., Inc

63. Loveland Catering Co., Inc.

64. Manzano Catering Co., Inc.

65. Murfreesboro Catering Co., Inc.

66. Normal Catering Co., Inc.

67. OKC Courtyard Catering Co., Inc.

37

68.    R-2 Operating Co., Inc.

69.    Richardson Renaissance Catering Co., Inc.

70.    Rogers ES Catering Co., Inc.

71.    SGF-Courtyard Catering Co., Inc.

72.    Sioux Falls Convention/Arena Catering Co., Inc.

73.    St. Charles Catering Co., Inc.

74.    The Revocable Trust of John Q. Hammons dated December

75.    Tulsa/169 Catering Co., Inc.

76.    U.P. Catering Co., Inc.

## SCHEDULE 2
## List of JQH Non-Debtor Entities

1. Allen CY Catering Co., Inc.

2. Arkansas Pinnacle Catering Co., Inc.

3. Baker Smith Jones Inc.

4. Blue Hill Company

5. Burger Station, LLC (successor in interest to Burger Station, Inc.)

6. Des Plaines Development Holdings, LLC (successor in interest to Des Plaines Development Corporation)

7. Des Plaines Development Limited Partnership

8. Eisemann Renaissance Club Company

9. Frisco Catering Co., Inc.

10. Harrah's Joliet Landco LLC

11. Highland Springs, LLC (successor in interest to Highland Springs Corporation)

12. Highland Springs Country Club, Inc.

13. Highland Springs Realty, Inc.

14. John Q. Hammons Accounting Services, LLC

15. John Q. Hammons Film Entertainment, LLC (successor in interest to John Q. Hammons Film Entertainment, Inc.)

16. John Q. Hammons Industries, Inc.

17. JQH - Springfield Courthouse, LLC

18. JQH Industries, LLC (successor in interest to JQH Industries, Inc.)

19. JQH Springfield Tower, LLC

20. Plaza Associates Partnership

39

21. Plaza Realty and Management Services, Inc.

22. REW/JQH Holdings, Inc. (merged into W&H Realty, LLC)

23. Richardson Renaissance Catering Co., Inc.

24. San Marcos ES Catering Co., Inc.

25. SGF/Residence Catering Co., Inc.

26. The Tower Club of Springfield, Inc.

27. Tiffany Greens, LLC (successor in interest to Tiffany Greens, Inc.)

28. T-K Enterprises, Inc.

29. University Plaza Redevelopment Corporation

30. W&H Realty, LLC (successor in interest to W&H Realty Inc.)

31. Winegardner & Hammons Inc. (merged into W&H Realty, LLC)

32. Any other Entity in which JQH Trust or any Debtors holds any Equity Interests in such Entity, but which Entity is not a Debtor

40