# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| In re: | ) |
| | ) |
| JOHN Q. HAMMONS FALL 2006, LLC, *et al.* | ) Case No. 16-21142 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## CMBS LENDERS' OBJECTION TO CONFIRMATION OF MODIFIED AMENDED JOINT AND CONSOLIDATED CHAPTER 11 PLANS OF REORGANIZATION FOR ALL DEBTORS FILED BY JD CREDITOR HOLDINGS, L.L.C.

The CMBS Lenders[1] respectfully submit this objection (the "Objection") to confirmation of the Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors [Doc. 1946] (the "Plan") filed by creditor JD Holdings, L.L.C. ("JDH"), in the jointly-administered chapter 11 bankruptcy cases (the "Bankruptcy Cases") of the above-captioned debtors (the "Debtors"). In support of the Objection, the CMBS Lenders respectfully state as follows:

---

[1] The CMBS Lenders include the following secured creditors: (a) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP7, by and through LNR Partners, LLC, solely in its capacity as Special Servicer (holder of the loan known as the "Nomura Portfolio Loan"); (b) Wilmington Trust, National Association, as Trustee for the registered holders of Wells Fargo Commercial Mortgage Trust 2015-C26, Commercial Mortgage Pass-Through Certificates, Series 2015-C26 by and through Midland Loan Services, a division of PNC Bank, National Association, solely in its capacity as Special Servicer (holder of the loan known as the "Chateau Lake Loan"); (c) Deutsche Bank Trust Company Americas, as Trustee, on behalf of the Registered Holders of Citigroup Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2015-GC33, by and through LNR Partners, LLC, solely in its capacity as Special Servicer (holder of the loan known as the "Goldman Portfolio Loan"); (d) U.S. Bank National Association, as Trustee for the Registered Holders of Banc of America Commercial Mortgage, Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-3, by and through C-III Asset Management LLC, solely in its capacity as Special Servicer (holder of the loan known as the "Euro-Hypo Portfolio Loan"); and (e) Wells Fargo Bank, N.A., as successor to LaSalle Bank National Association, as Trustee for the registered holders of COMM 2006-C8 Commercial Mortgage Pass-Through Certificates, by and through LNR Partners, LLC, solely in its capacity as Special Servicer (holder of the loan known as the "Barclays Portfolio Loan") (collectively, the "CMBS Lenders").

## PRELIMINARY STATEMENT[2]

The Plan cannot be confirmed because it improperly effects a substantive consolidation of the seventy-six Debtors' estates without meeting the requirements for substantive consolidation. The Plan also cannot be confirmed because it does not pay all of the CMBS Lenders' claims in full on the Plan's effective date, leaving the CMBS Lenders impaired, but without voting rights. If JDH does not pay all of the CMBS Lenders claims in full on the effective date, it must set aside and escrow all contested claim amounts in available funds so that payment can be made from those funds immediately upon resolution of such disputes and without any risk of availability of funds or non-payment. Absent remedying these defects by amending the Plan, the CMBS Lenders are impaired under 1124 of the Bankruptcy Code and must be permitted, as set forth in 1129 of the Code, to vote on a plan or plans on a Debtor-by-Debtor, estate-by-estate basis, without the vote of JDH, whose claim would be subordinated under the plan support agreement and settlement it reached with the Debtors.

Regarding JDH's proposed reinstatement of the Unmatured Loans, JDH must pay all amounts due and owing under the applicable loan documents, including interest, default interest, fees, costs, and other amounts, including postpetition amounts, to satisfy the requirements for reinstatement under 1124(2) of the Bankruptcy Code. Alternatively, JDH must comply with the exact terms of the loan documents if it proposes to assume rather than reinstate the Unmatured Loans, disputes about which are outside the jurisdiction of the Bankruptcy Court because they are related only to a loan from a non-debtor party that would be assumed by another non-debtor party, and the Debtors would not be involved in the assumption.

---

[2] Capitalized terms used but not defined in the Preliminary Statement have the same definitions set forth below.

- 2 -
20370225-v4

**BACKGROUND**

**I.    The Bankruptcy Filings**

On June 26 and July 5, 2016 (the "Petition Date"), the 76 Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") initiating the Bankruptcy Cases. The Bankruptcy Court entered orders jointly administering the Debtors' bankruptcy estates on June 29, 2016, July 12, 2016, and July 18, 2016 [Docs. 40, 52, 53, 123, and 197].

**II.   The CMBS Lenders' Claims**

The CMBS Lenders collectively hold prepetition claims against certain of the Debtors (the "Borrowers") totaling at least $772,452,770.74 secured by, among other things, valid and perfected first priority liens and security interests against 24 of the Debtors' 35 hotels (the "Hotels").[3] The Revocable Trust of John Q. Hammons, dated December 29, 1989, as amended and restated (the "JQH Trust") unconditionally, irrevocably, and absolutely guaranteed the payment and performance of the Borrowers on all of the loans held by the CMBS Lenders (collectively, the "Guarantee Claims" and, together with the Secured Claims, the "CMBS Claims").

The CMBS Lenders timely filed proofs of claim numbered 614-616 and 624-630 (the "Proofs of Claim") against (i) their respective Borrowers, and (ii) the JQH Trust, as guarantor. The amounts owed, as of the Petition Date, and the legal bases for the CMBS Claims are more fully set forth in the respective Proofs of Claim which are hereby incorporated by reference.

As noted in the Proofs of Claim, interest, default interest, attorneys' fees and costs, and other amounts continue to accrue pursuant to the CMBS loan documents and applicable law. As

---
[3]    The CMBS Lenders intend to file a motion to value the CMBS Claims and the Hotel collateral. Based on the valuation motion, and the statements of JDH and the Debtors in these Bankruptcy Cases, the Secured Claims are oversecured.

- 3 -

of the Confirmation Hearing, the CMBS Lenders anticipate that the following amounts will be due and owing on each of the following CMBS loans:

| Loans | POC No. | POC Amount | As of April/May 2018 |
|---|---|---|---|
| Chateau Lake Loan[4] | 614 | $58,650,230.06 | $53,900,733.30 (as of 5/1/18) |
| Goldman Portfolio Loan[5] | 629 | $315,539,401.64 | $296,060,068.03 (as of 5/6/18) |
| Euro-Hypo Portfolio Loan[6] | 626 | $156,583,829.63 | $164,907,767.19 (as of 4/30/18) |
| Barclays Portfolio Loan[7] | 627 | $112,703,918.15 | $116,456,399.05 (as of 5/1/18) |
| Nomura Portfolio Loan[8] | 624 | $140,174,148.41 | $141,127,803.17 (as of 5/11/18) |
| Total | | | $722,452.770.74 |

Three of the CMBS loans are in maturity default. The Nomura Portfolio Loan defaulted upon its pre-bankruptcy maturity on April 11, 2016. The Barclays Portfolio Loan went into maturity default on November 1, 2016 and Euro-Hypo Portfolio Loan on May 6, 2017. The Chateau Lake Loan and the Goldman Portfolio Loan (collectively, the "<u>Unmatured Loans</u>"), have not yet matured, with maturity dates of January 1, 2025 and September 6, 2025, respectively.

All of the CMBS loans were in default on or before the Petition Date due to other defaults unrelated to loan maturity. The four loans that had not matured as of the Petition Date

---

[4] The Borrower liable on the Chateau Lake Loan is Chateau Lake, LLC.

[5] The Borrowers liable on the Goldman Portfolio Loan are: (i) Hammons of Hunstville, LLC; (ii) JQH - Allen Development, LLC; (iii) JQH -- Concord Development, LLC; (iv) JQH - Glendale AZ Development, LLC; (v) JQH - Kansas City Development, LLC; (vi) JQH - Murfreesboro Development, LLC; JQH – (vii) JQH -Norman Development, LLC

[6] The Borrowers liable on the Nomura Portfolio Loan are (i) Hammons of Lincoln, LLC; (ii) Hammons of New Mexico, LLC; (iii) Hammons of Oklahoma, LLC; (iv) Hammons of Sioux Falls, LLC (v) Hammons of South Carolina, LLC; and (iv) Hammons of Tulsa, LLC.

[7] The Borrower liable on the Barclays Portfolio Loan is John Q. Hammons Fall 2006, LLC.

[8] The Borrower liable on the Euro-Hypo Portfolio Loan is Richardson Hammons, LP.

20370225-v4

went into default as a result of the Borrowers' bankruptcy filings and the bankruptcy filing of the JQH Trust guarantor.

Further, in extending credit, each of the CMBS Lenders expressly bargained for and received in their loan documents a commitment that each Borrower would be a special purpose entity ("SPE"). Each of the SPE Borrowers covenanted—for the duration of the loan—to maintain its assets and liabilities separate from those of any other entity. Each of the SPE Borrowers is required to be a bankruptcy remote entity, contractually obligated, among other things, not to (i) commingle its assets, (ii) incur liabilities beyond the mortgage debt and ordinary course operating expenses and taxes, or (iii) engage in business beyond the use of its hotel collateral for its intended purpose. The SPE Borrowers' use of a prepetition consolidated cash management system without lender consent, agreement to joint and several liability with respect to the right of first refusal (the "ROFR") claim and proposing confirmation of the Plan on a joint and several basis were defaults under the CMBS loan documents.

### III. The JDH Disclosure Statement and Plan

The JDH Plan—a single plan for all seventy-six Debtors' bankruptcy cases, treating the multiple Debtors as a single entity—provides for just four classes of claims, purportedly for "each of the Debtors for all purposes, including Confirmation and Plans Distributions":

- Class 1 – Other Priority Claims
- Class 2 – Secured Claims
- Class 3 – General Unsecured Claims
- Class 4 – Equity Interests

*See* Plan § IV.B.

The Plan purports to pay all claims, including the CMBS Claims, in full, assertedly making all claims unimpaired and all creditors presumed to have accepted the plan under the Bankruptcy Code. *See* Plan §§ IV.B.1(c), 2(c), 3(c), 4(c) at 12-14. Indeed, the Modified Amended Disclosure Statement with Respect to Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C. (the "<u>Disclosure Statement</u>") [Doc. 1948] provides as a condition to confirmation that "each Class of Claims either are deemed to have accepted the Plans or are Unimpaired under the Plans." *See id.*, § XVI(v) at 34. Despite the promise of "full payment," the Plan provides that creditors are not entitled to postpetition interest unless specifically provided by the Plan, Court order, or agreement by JDH. *See id.*, § X.C. at 28.

The Secured Claims are treated as Class 2 – Secured Claims under the Plan. *See id.*, IV.B.2. at 13. Class 2 Secured Claims are entitled to "Cash in an amount equal to the unpaid amount of such Allowed Secured Claim" on the later of the Plan's effective date (the "Effective Date") or allowance of the Secured Claim. *Id.* The Plan provides alternatively that "a loan may be reinstated and/or assumed," in which case "such loan shall be treated as a Secured Claim" only to the extent "it is neither reinstated nor assumed." *Id.* at n. 4. Under the Plan, JDH proposes to identify all "Assumed Loans" in a plan supplement and proposes that each Assumed Loan will "be reinstated, as necessary, and assumed by JD Holdings pursuant to the terms of the underlying loan agreement(s) and/or agreement between JD Holdings and the applicable lender." *Id.*, ¶ 11 at 2.

## ARGUMENT

**I. The Plan Impermissibly Would Effect a Substantive Consolidation of all of the Debtors without Meeting the Requirements for Substantive Consolidation or Allowing Creditors to Vote**

The CMBS Lenders filed their CMBS Lenders' Objection to Substantive Consolidation (the "<u>Substantive Consolidation Objection</u>") on February 22, 2018 [Doc. 1833] objecting to JDH's plan on file at that time. The Substantive Consolidation Objection is incorporated by reference as if fully set forth herein and is applicable to JDH's current Plan. As more fully set forth in the Substantive Consolidation Objection, creditors must be given the opportunity to vote on the JDH Plan because it effectively consolidates the seventy-six Debtors into a single entity without any voting and based solely on the say-so of a single creditor, JDH, under a single plan of reorganization (*see JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props., Inc. (In re Transwest Resort Props., Inc.*, 881 F.3d 724 (9th Cir. 2018)), in contravention of the separateness and other covenants in the CMBS Lenders' loan documents and without satisfying the high legal standards set forth in *In re Auto-Train Corp., Inc.*, 810 F.2d 270 (D.C. Cir. 1987), *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515 (2d Cir. 1988), and their progeny. Despite the requirements of those cases, no substantial identity exists here among the Debtors, consolidation is not necessary to avoid a harm or achieve some benefit, and to the extent that there are benefits from substantive consolidation, they do not heavily outweigh the harms. *See Auto-Train*, 810 F.2d at 276. Similarly, the Debtors' creditors did not deal with the Debtors as a single, consolidated economic unit, nor are the affairs of the Debtors so entangled that consolidation will benefit all creditors. *See Augie/Restivo*, 860 F.2d at 518.

There is no factual or legal basis to support substantive consolidation of the Debtors. Therefore, as more fully set forth in the Substantive Consolidation Objection, the CMBS Lenders, as impaired creditors, are entitled to vote on the JDH Plan on a Debtor-by-Debtor,

estate-by-estate basis, with the confirmation requirements of Bankruptcy Code § 1129 imposed on each of the seventy-six Debtors.

**II. The Plan Must Provide for Payment of the CMBS Lenders' Claims in Full**

The Plan provides that all classes of creditors, including the CMBS Lenders, who are part of Class 2, are unimpaired and entitled to full payment on account of their allowed claims. *See* Plan § IV.B.2.c at 13 (providing that "Classes 2 is Unimpaired"). However, that provision is incorrect to the extent JDH does not provide for all postpetition amounts, including default interest and other postpetition amounts, on account of the CMBS Claims and, as such, impermissibly denies the CMBS Lenders the right to vote on the Plan.

The Bankruptcy Code provides that only *unimpaired* creditors can be denied the right to vote on a plan: "a class that is not impaired under a plan, and each older of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptance with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f). Section 1124 states that a claim or interest is impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitled the holder of such claim or interest" or cure and reinstatement of that claim, which is discussed below. 11 U.S.C. § 1124(1), (2). As applicable to the Debtors' cases, for a creditor to be unimpaired, its claim must never have been in default and must continue to be treated, without any alternation, according to the creditor's "legal, equitable, and contractual rights," which is not the case for the CMBS Claims, or the claim must be cured and reinstated pursuant to § 1124(2), which still may "not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(2). Absent unimpairment under the terms of § 1124, the CMBS Lenders are entitled to vote pursuant to at least 1129(a)(7), (8), and (10), which require voting and acceptance by impaired creditors.

As set forth herein, the CMBS Lenders have a right to vote on confirmation of the JDH Plan because the CMBS Lenders are owed postpetition amounts that must be paid on their oversecured claims, yet JDH is challenging payment of those amounts. The CMBS Lenders are entitled to postpetition interest, including default interest, fees, and expenses, on account of the CMBS Claims, matured and unmatured. As will be set forth in its claim valuation motion, the CMBS Lenders are oversecured and entitled to postpetition interest on their oversecured claims. Indeed, in the Court's Order Nunc Pro Tunc Denying Approval of Debtors' Disclosure Statement ("Order Denying Debtors' Disclosure Statement") [Doc. 1738], the Court wrote that "[t]he [Debtors'] Plan also impairs the claims of SFI Belmont and all CMBS Lenders under section 1124 by omitting any provision for payment of costs, fees, and default interest due under the relevant loan documents, which—again—alters the contractual rights to which the holders of those claims are entitled." Order Denying Debtors' Disclosure Statement at 6. Thus, in order for the Plan to be confirmed without voting, there cannot be any limitation on the payment of postpetition interest, default interest, or other amounts. Any "full pay" plan must provide that the CMBS Claims are entitled to postpetition interest and other amounts.

Furthermore, to the extent that JDH questions whether the value of any property that serves as collateral for any CMBS loan is insufficient to support payment in full of any allowed claim of any CMBS Lender, JDH must state so now, prior to the confirmation hearing on the Plan (and should have stated so in its Disclosure Statement). JDH has repeatedly said that its Plan is a "full pay" plan—that it will pay the full amount of all allowed claims. JDH must reaffirm now that it will pay 100% of all of the CMBS Claims. Absent correcting these deficiencies and the substantive consolidation deficiencies in the Plan, the CMBS Lenders are impaired and must be given the right to vote to accept or reject the Plan.

- 9 -
20370225-v4
Case 16-21142   Doc# 2022   Filed 04/13/18   Page 9 of 19

### III. JDH Cannot Indefinitely Delay Payment on Uncontested Portions of the CMBS Lenders' Secured Claims

The Plan allows JDH to delay payment on the entirety of the nearly $800 million in outstanding CMBS Claims, even if JDH disputes only a portion of such claims. Under the Plan, Class 2 Secured Creditors are to receive payment on the later of the Effective Date and entry of an order allowing such secured claim. *See* Plan, IV.B.2. at 13. Yet, JDH does not have to file an objection to any claim until the Effective Date or perhaps even later. *See Plan* § X.D. at 29. The definition of Claims Objection Bar Date is the later of the Effective Date and "such later period of limitation as may be specifically fixed or extended by a Final Order of the Bankruptcy Court." *Plan* § I.A.24 at 8. Under this approach, JDH could delay filing objections to claims for a nearly unlimited period of time by extending the claims bar date or could delay payment on hundreds of millions of dollars of uncontested amounts of the CMBS Claims by objecting to smaller portions of such claims. Any delay in payment of uncontested secured claims impairs creditors. *See, e.g.*, *In re Haart*, 65 B.R. 697, 701 (Bankr. E.D. Pa. 1986) (finding impairment where plan proposed paying claims in full, in cash 120 days after the confirmation date). *See also In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 32 (Bankr. D. Kan. 2001) (noting that the 1994 Bankruptcy Reform Act amendments to § 1124 of the Bankruptcy Code suggest "that even claims that are cashed out on the effective date of the plan can nevertheless be impaired within the meaning of § 1124).

Even if the Plan were amended to provide for payment in full of uncontested amounts of the CMBS Claims, the Plan additionally would have to be amended to provide for the escrowing of actual collected funds in an amount to pay disputed amounts of the CMBS Claims in full immediately upon resolution of any disputes. *See, e.g., In re Grand Centreville, LLC*, Case No. 13-13590-RGM (Bankr. E.D. Va. June 3, 2015) (Order Confirming Kang Trustee's First

- 10 -
20370225-v4

Case 16-21142    Doc# 2022    Filed 04/13/18    Page 10 of 19

Amended Plan of Reorganization [Doc. 335] at 29-30, providing not only for cash reserve in the full amount of default interest in dispute, but giving the prepetition secured creditor a lien on that cash reserve).

Absent such funds being placed in the Court registry or an escrow account subject to the Court's jurisdiction and direction, the CMBS Lenders would be impermissibly forced to accept a new borrower on their loans and take on a non-payment credit risk that is directly contrary to the Plan and JDH's statements that the Plan will unquestionably pay all allowed claims in full. *See, e.g., In re NNN Maple 26, LLC*, 2014 WL 1407320 *8 (Bankr. N.D. Tex. 2014) (finding that proposed plans to cure and reinstate loan did not meet the burden established by § 1124(2) because substitution of a new and different borrower for original borrower or change of control violated loan documents and impaired creditor, and therefore creditor was entitled to vote). Any such imposition of a new borrower to pay the CMBS Claims would constitute an impairment that is impermissible under a non-impairment plan.

Because JDH has proposed a full pay plan, this situation also is comparable to one involving administrative claims, which must be paid in full. *See* 11 U.S.C. 1129(a)(9). If an administrative claim has not yet been allowed or is disputed as of a plan's effective date, a debtor would try to satisfy § 1129(a)(9) by establishing a disputed claims reserve for the full amount of the disputed claims. *See, e.g., In re ADnational Corp.*, No. 03-81614, 2006 WL 5003849, at *2 (Bankr. D. Md., March 7, 2006). The debtor then holds that funds in reserve until the claim is finally allowed or disallowed, just as should be done here. JDH must pay all unpaid principal, regular contract interest, fees, and expenses on the effective date of the Plan, and escrow all

- 11 -

20370225-v4

Case 16-21142   Doc# 2022   Filed 04/13/18   Page 11 of 19

disputed amounts, subject to further court order and payment from such escrow fund.[9] Otherwise, the CMBS Lenders are impaired and entitled to vote on the Plan.

## IV. Reinstatement of the Unmatured Loans Requires Complete Cure of All Outstanding Defaults, Including Payment of Default Interest

The Plan is unclear regarding whether JDH proposes to effect assumption of the Unmatured Loans (i) through assumption alone under the CMBS Loan documents or (ii) by first reinstating the CMBS Loans under the Bankruptcy Code and then through assumption under the CMBS Loan documents.[10] The Plan does not definitively state whether reinstatement will play a role in this process, making only the following two statements, one a definition and the other a footnote:

> "Assumed Loans" means those loans to be identified in the Plans Supplement to be reinstated, as necessary, and assumed by JD Holdings pursuant to the terms of the underlying loan agreement(s) and/or an agreement between JD Holdings and the applicable lender or its authorized representative" (Plan § I.A.10 at 2);

> For the avoidance of doubt, a loan may be reinstated and/or assumed. To the extent that any loan is neither reinstated nor assumed, then such loan shall be treated as a Secured Claim (Plan § .IV.B.2.b n.4 at 13).

Since the Plan appears to provide that JDH *may* reinstate the Unmatured Loans, JDH must comply with the requirements for reinstatement under the Bankruptcy Code, including curing all defaults and paying all amounts owed under the Unmatured Loans loan documents. In

---

[9] While the CMBS Lenders believe that there should be no disputes about any principal or interest owed on the CMBS Loans, to the extent that there is any dispute, it should only be a mathematical exercise to determine the correct amounts. If there is such a dispute, the CMBS Lenders ask the Court to set aside a hearing date and time on the Court's calendar to resolve the dispute prior to the effective date of the Plan so that no delay results from a dispute about what should be a straightforward computation.

[10] While the Plan should be clearer about this too, it appears that JDH might also seek to reinstate the Unmatured Loans and then become the ultimate Borrower by transfer of the Borrower's equity interests to JDH. If JDH were to reinstate the Unmatured Loans and then try to become the owner of the Unmatured Loans Borrower, JDH would have to satisfy the change-in-control or alienation requirements in the applicable loan documents. See Goldman Loan Agreement § 6.3 (Transfer; Prohibited Change of Control) and related provisions; Chateau Lake Loan Agreement § 2.14 (Alienation and Further Encumbrances) and related provisions. As with assumption of the Unmatured Loans, any change in control would have to satisfy the requirements in the Unmatured Loans loan documents and would be outside of the purview of the Court because it would involve a transaction solely between two non-debtor parties under a contract that is not otherwise subject to the jurisdiction of the Court.

order to reinstate the Unmatured Loans or take ownership of the SPE Debtors after those Debtors reinstate the Unmatured Loans, and JDH must provide a full cure of the outstanding defaults including note interest, default interest, fees, and costs.

Section 1124 of the Bankruptcy Code permits the Debtors to reinstate the maturity of the Unmatured Loans, without altering the legal, equitable or contractual rights of the CMBS Lenders *only* if the Debtors completely cure all outstanding defaults under the Unmatured Loans. *See* 11 U.S.C. § 1124(2). Section 1124(2) provides that a claim is impaired under a plan unless the plan's treatment of the claim reinstates the debt as follows:

> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payments of such claim or interest after the occurrence of a default—
>
> (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;
>
> (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
>
> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;
>
> (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and
>
> (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11 U.S.C. § 1124(2). *See also* 11 U.S.C. § 1123(a)(5)(G) (requiring a plan to provide adequate means for the plan's implementation, including curing or waiving of defaults).

Older cases questioned whether reinstatement of a loan "erased" all aspects of a default, including the right to default interest. *See In re General Growth Props.*, 451 B.R. 323, 327 (Bankr. S.D.N.Y. 2011) (discussing and distinguishing *Great Western Bank & Trust v. Entz–White Lumber and Supply, Inc. (Entz–White Lumber and Supply, Inc.)*, 850 F.2d 1338 (9th Cir. 1988)). However, a majority of recent decisions, including in the Tenth Circuit, have now recognized that the addition of § 1123(d) to the Bankruptcy Code resolved this ambiguity. Section 1123(d) states that "[n]otwithstanding section (a) of this section and sections 506(b), 1129(a)(7), and 1129(b) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d).

For example, *Pacifica L 51 LLC v. New Invs., Inc. (In re New Invs., Inc.)*, 840 F.3d 1137 (9th Cir. 2016), involved a $3 million commercial loan used to purchase a hotel, with the loan having an interest rate of 8% and a default interest rate that increased by 5%. The Ninth Circuit found that the addition of § 1123(d) to the Bankruptcy Code in 1994 invalidated the Ninth Circuit's 1988 ruling in *Great W. Bank & Tr. V. Entz-White Lumber & Supply, Inc. (In re Entz-White Lumber & Supply, Inc.)*, 850 F.2d 1338 (9th Cir. 1988), that a debtor who proposed to cure a default could avoid a contractual higher post-default interest rate in bankruptcy. Following the addition of § 1123(d), a debtor cannot nullify a default interest provision through reinstatement of a loan. A debtor can no longer comply merely with the pre-default interest provisions of its loan agreement, but is required to fulfill all of the obligations of its underlying loan documents, including payment of default interest. *Id.* at 1142. *See also In re Moody Nat'l SHS Houston H, LLC*, 426 B.R. 667, 672 (Bankr. S.D. Tex. 2010) ("to the extent that there was ambiguity as to how to cure a default when *Entz–White* was written, that ambiguity evaporated in 1994 when

§ 1123(d) was added" to the Bankruptcy Code); *In re 1 Ashbury Ct. Partners, L.L.C.*, No. 11-10131, 2011 WL 4712010, at *4 (Bankr. D. Kan. Oct. 5, 2011) ("That section was enacted in 1994 for the specific purpose of clarifying (unfortunately in a not very clear way) that cure and reinstatement required more than simply rolling back the clock as some courts had held"); *Gen. Growth Props.*, 451 B.R. at 331 (payment of default rate interest required to effect a sufficient cure for reinstatement of loan following a bankruptcy filing default); *K & J Props., Inc.*, 338 B.R. 450, 461 (Bankr. D. Colo. 2005) (noting that "Section 1123(a)(5)(G) and section 1124(2) provide no basis to nullify the postpetition default interest claimed by [creditor] to the extent it is otherwise allowable under [creditor]'s loan documents and applicable nonbankruptcy law"); *In re Sweet*, 369 B.R. 644, 650-51 (Bankr. D. Colo. 2007) (requiring payment of interest at the contract default rate to effect cure under § 1124(2)); *accord Consol. Operating Partners L.P.*, 91 B.R. 113, 117 (Bankr. D. Colo. 1988); *In re 1 Ashbury Ct. Partners, L.L.C.*, No. 11-10131, 2011 WL 4712010, at *5-*6 (Bankr. D. Kan. Oct. 5, 2011) (requiring payment of default interest, fees, and expenses as a precondition to reinstatement).

Therefore, JDH (or the Debtors, as the case may be) must comply with the default provisions of the underlying CMBS loan documents in order to cure outstanding defaults and reinstate the Unmatured Loans, all of which require payment of all default interest for reinstatement. Otherwise, JDH will fail to satisfy the § 1124(2) reinstatement requirements. The Unmatured Loans immediately imposed a contractual requirement that the Debtors pay default interest and certain other amounts, which began to accrue automatically upon the first event of default under the Unmatured Loans, as well as subsequent defaults. *See* Chateau Lake Loan Agreement, § 1.4 at 10; Goldman Portfolio Loan Agreement, § 1.2(a) at 37. Events of default were triggered prepetition under both Unmatured Loans as a result of the Debtors' commingling

cash management system and the Debtors' entry into the ROFR. *See* Chateau Lake Loan, Art. III.F. at 85, § 2.14.A. at 51. *See also id.*, Art. III.D. at 84, § 2.28.A.16 at 71, 73-74; Goldman Portfolio Loan, § 7.1(h) at 97, § 6.4 at 89; § 6.15 at 94. Furthermore, the bankruptcy filings of the Unmatured Loan Borrowers, as well as independently the JQH Trust, were defaults under the Unmatured Loans. *See* Chateau Lake Loan, Art. III.H. at 85; Goldman Portfolio Loan, §7.1(d)A. at 95.

As such, any reinstatement of the Unmatured Loans proposed under the Plan must provide for cure and payment of all default interest and other postpetition amounts under the loan documents. Absent curing and paying all default interest and other postpetition amounts due under the loan documents and remedying all other impairments, by amending the Plan, the CMBS Lenders are impaired under § 1124 of the Bankruptcy Code and must be permitted, as set forth in § 1129 of the Code, to vote on a plan or plans on a Debtor by Debtor, estate-by-estate, basis, without the vote of JDH, whose claim would be subordinated under the plan support agreement and settlement it reached with the Debtors.

## V. The Contract Terms of the Unmatured Loans Require JDH to Cure and Pay Accrued Default Interest and other Fees and Costs as a Precondition to Assumption, and the Bankruptcy Court Does Not Have Jurisdiction to Decide Otherwise

To the extent that JDH seeks to assume the Unmatured Loans, JDH must assume them pursuant to the terms of the loan documents, without any deviation from those terms. Because JDH is a non-debtor, any dispute about the provisions or terms of such an assumption will be a dispute between two non-debtors, and the Bankruptcy Court therefore has no jurisdiction to hear or rule on such dispute. This is consistent with the Plan's definition of Assumed Loans, which recognizes that the loans will have to be assumed pursuant to the terms of their underlying loan agreements: Assumed Loans are certain loans to be assumed by JDH "*pursuant to the terms of*

- 16 -

*the underlying loan agreement(s)* and/or an agreement between JD Holdings and the applicable lender or its authorized representative." Plan § I.A.10 at 2 (emphasis added).

The requirements and provisions related to assumption of the Unmatured Loans are enforceable against any assignee of the loan documents. *See* Chateau Lake Loan Agreement, § 2.1.D at 15 ("All of the Loan Documents . . . constitute valid, legal and binding obligations of Borrower . . . and are fully enforceable against Borrower . . . and its successors, transferees and assigns . . ."); Goldman Portfolio Loan Agreement, § 2.2 at 44 (same). Additionally, the CMBS Lenders are entitled to accelerate the Unmatured Loans upon an assignment made without the CMBS Lenders' prior consent. *See* Chateau Lake Loan, § 2.14.A. at 51 (providing that assignment without CMBS Lender's prior consent constitutes an event of default); Goldman Portfolio Loan, § 6.3 at 89 (same).

Any alteration of the rights under the Unmatured Loans would be more than just an impairment under the Plan, it would be beyond of the Court's jurisdiction. The Court does not have jurisdiction to determine the rights of the CMBS Lenders and JDH under the assumption provisions of the relevant loan documents. The Tenth Circuit is clear that "[a]ctions . . . which could proceed in another court are not core proceedings." *Gardner v. U.S. (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990). As such, disputes between non-debtor parties concerning non-debtor interests in property are non-core and not properly subject to the jurisdiction of a bankruptcy court. *See id.* at 1517-19 (bankruptcy court had no jurisdiction over the third-party dispute between the non-debtor spouse and the IRS once it determined the debtor had no interest in the property). Additionally, such a dispute would not be "related to" these Bankruptcy Cases because the enforceability of obligations requiring JDH to cure the Debtors' defaults could not have any conceivable impact on the Bankruptcy Cases. *See id.* at 1518 (quoting *Pacor, Inc. v.*

*Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 134–35 (1995)); *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) ("The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no farther than its purpose. That two creditors have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property have been resolved"). *See also Maximillian & Co. v. Catalyst Inv. Grp. Ltd. (In re Eneco, Inc.)*, 431 B.R. 308 (Table), 2010 WL 744351 (B.A.P. 10th Cir. Mar. 2, 2010) (following sale of patent from bankruptcy estate, bankruptcy court lacked jurisdiction to consider subsequent dispute related to patent ownership between estate creditor and assignee).

Therefore, regardless of what JDH proposes to do regarding loan assumption in its Plan, JDH must, as it recognized in the definition of Assumed Loans, assume the loans pursuant to the terms of the applicable loan agreements, and the Court does not have jurisdiction to make any finding or ruling about the assumption process or disputes in connection therewith in these Bankruptcy Cases.

## CONCLUSION

WHEREFORE, for the foregoing reasons and based upon the entire record before the Court in this Bankruptcy Case, the CMBS Lenders respectfully request that the Court (i) deny confirmation of the Plan or, in the alternative, only confirm the Plan subject to the modifications and limitations as set forth herein and (ii) and grant the CMBS Lenders such other and further relief as is just and appropriate under the circumstances of these Bankruptcy Cases.

Dated: Kansas City, Kansas
April 13, 2018

Respectfully Submitted,

/s/ Darek S. Bushnaq
Gregory A. Cross (pro hac vice)
Darek S. Bushnaq (pro hac vice)
Frederick W. H. Carter (pro hac vice)
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: 410-244-7400
Facsimile: 410-244-7742
dsbushnaq@venable.com
fwhcarter@venable.com

and

Stephen B. Sutton  (Fed. Dist. 70009)
Lathrop & Gage LLP
2345 Grand Blvd., Suite 2200
Kansas City, Missouri 64108
Telephone: 816-460-5525
Facsimile: 816-292-2001
ssutton@lathropgage.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served through the Court's CM/ECF system on the parties receiving electronic notice in these proceedings on April 13, 2018.

*/s/ Stephen B. Sutton*
Stephen B. Sutton

- 19 -
20370225-v4

Case 16-21142   Doc# 2022   Filed 04/13/18   Page 19 of 19