**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 11th day of May, 2018.**






Robert D. Berger
United States Bankruptcy Judge

---

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **In re:** | ) | |
| **JOHN Q. HAMMONS FALL 2006, LLC, et al.,** | ) | **Case No. 16-21142 (Lead Case)** |
| **Debtors.** | ) | **Chapter 11** |

**CORRECTED ORDER CONFIRMING MODIFIED AMENDED JOINT AND CONSOLIDATED CHAPTER 11 PLANS OF REORGANIZATION FOR ALL DEBTORS FILED BY CREDITOR JD HOLDINGS, L.L.C.**

JD Holdings, L.L.C. ("JD Holdings")[1] having proposed and Filed:

a. the *Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.*, dated March 30, 2018 [Docket No. 1946] (as amended, supplemented, or modified from time to time, the "Plans");

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plans or the Disclosure Statement Order (each, as defined below), as applicable.

b. the *Modified Amended Disclosure Statement with Respect to Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.*, dated March 30, 2018 (the "Disclosure Statement"); and

c. the *Notice of Filing of Plans Supplement in Connection with the Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.*, dated April 20, 2018 [Docket No. 2050], as amended by the *Notice of Filing of Amendments to Plans Supplement in Connection with the Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.*, dated April 26, 2018 [Docket No. 2091] (collectively, and as further amended, supplemented, and/or modified from time to time, the "Plans Supplement");

this Court having:

d. entered the *Order Approving Amended Disclosure Statement Filed by Creditor JD Holdings, L.L.C. and Setting Confirmation Hearing*, dated March 28, 2018 [Docket No. 1940] (the "Disclosure Statement Order");

JD Holdings having:

e. provided proper notice of the hearing before this Court to consider the confirmation of the Plans (the "Confirmation Hearing") to Holders of Claims against, or Equity Interests in, the Debtors, as indicated by the *Certificate of Service* of the Plans, Disclosure Statement, and Notice of Confirmation Hearing, Hearing Regarding Assumption and Assignment of Executory Contracts and Unexpired Leases, Deadline to Amend Claims, Deadline to File Plans Supplement, and Deadline to Object to Confirmation, dated April 2, 2018 [Docket No. 1958];

this Court:

f. having found that the notice provided regarding the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate under the circumstances and no further notice is required;

g. being fully familiar with the Plans and other relevant factors affecting the Chapter 11 Cases;

h. being fully familiar with, and having taken judicial notice of, the entire record of the Chapter 11 Cases;

i. having held the Confirmation Hearing, which hearing included further arguments and evidence regarding confirmation of and other relief sought in the Plans;

j. having considered the entire record of the Confirmation Hearing, including, but not limited to:

i. the Plans (including the Plans Supplement), the Disclosure Statement, and the Disclosure Statement Order;

ii. the objections, reservation of rights, and other responses Filed with respect to the Plans (collectively, the "Objections"), including the following:

1. *The City of Glendale, Arizona's Reservation of Rights of Its Objections to the Confirmation of JD Holdings LLC's Plans* [Docket No. 2002];

2. *The City of Huntsville's Objection to Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.* [Docket No. 2004];

3. *HLT Existing Franchise Holding LLC's Limited Objection to Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.* [Docket No. 2006];

4. *Oracle's Rights Reservation Regarding Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C. ("Rights Reservation")* [Docket No. 2009];

5. *Objection of UBS Securities LLC to the Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.* [Docket No. 2010];

6. *Objection of Missouri State University and the Missouri State University Foundation to Confirmation of the Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JK Holdings, L.L.C.* [Docket No. 2014];

7. *Objection of AJJ Hotel Holdings, Inc. to Modified Amended Joint and Consolidated Plans of Reorganizations for All Debtors (ECF No. 1946)* [Docket No. 2015];

8. *Holiday Hospitality Franchising, LLC's Limited Objection to Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.* [Docket No. 2020]

9. *CMBS Lenders' Objection to Confirmation of Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All*

*Debtors Filed by JD Creditor Holdings, L.L.C.* [Docket No. 2022][2];

10. *City of Springfield's Reservation of Rights of its Objections with Regard to Confirmation of JD Holdings LLC's Plan* [Docket No. 2023];

11. *Objection to Notice of Confirmation Hearing, Hearing Regarding Assumption and Assignment of Executory Contracts and Unexpired Leases, Deadline to Amend Claims, Deadline to File Plans Supplement, and Deadline to Object to Confirmation* Filed by Ruby E. Lockhart [Docket No. 2034];

12. *City of East Peoria, Illinois, Limited Objection to Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.* [Docket No. 2057];

13. *Exhibit List Filed by Creditor City of Huntsville, Alabama* [Docket No. 2070];

14. *City of Springfield's Supplemental Objection to JD Holdings, L.L.C.'s Amended Plan* [Docket No. 2071]

15. *Supplement to CMBS Lenders' Objection to Plan Confirmation* [Docket No. 2072];

16. *Response of AJJ Hotel Holdings, LLC (n/k/a JWJ Hotel Holdings, Inc.) to Memorandum of JD Holdings, L.L.C. and Omnibus Response* [Docket No. 2073]

17. *Objection of Michael Kammerer Co-Manager of the REW Interests in Blue Hills Co., LLC to the Modified Amended Joint and Consolidated Plans of Reorganizations for All Debtors (ECF Nos. 1900, 1946 and 2050)* [Docket No. 2076]; and

18. *Supplement to CMBS Lenders' Objection to Plan Confirmation* [Docket No. 2079];

iii. the statements Filed in support of the Plans:

1. *Notice of Support for the Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by*

---

2 Docket No. 2022 incorporates by reference the *CMBS Lenders' Objection to Substantive Consolidation* filed on February 22, 2018 [Docket No. 1833].

*Creditor JD Holdings, L.L.C.* Filed by Hawthorn Bank [Docket No. 2021];

2. *Morton Community Bank's Notice of Support of Confirmation of the Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.* [Docket No. 2026];

3. *Bank of Blue Valley's Notice of Support for Confirmation of Modified Amended Joint and Consolidated Chapter 11 Plan Filed by JD Holdings, Inc.* [Docket No. 2042];

4. *Notice of Support for Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.* Filed by Simmons Bank [Docket No. 2048];

5. *Notice of Support for Confirmation of Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.* Filed by Great Southern Bank [Docket No. 2069]; and

6. comments of various parties in Court supporting the Plans and/or withdrawing their Objections;

iv. the replies and declarations Filed in response to the objections, reservation of rights, and other responses Filed with respect to the Plans (collectively, the "Replies"), including the following:

1. *JD Holdings' (I) Memorandum of Law in Support of Confirmation of Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C. and (II) Omnibus Response to Objections to Confirmation of Plans* [Docket No. 2063]; and

2. JD Holdings' *Reply to Objection of UBS Securities LLC to the Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for All Debtors Filed by Creditor JD Holdings, L.L.C.* [Docket No. 2065];

v. the Declaration of Ronald C. Brown in Support of Plan Confirmation [Docket No. 2034]; and

vi. arguments of counsel;

k. having overruled any and all Objections to the Plans and to Confirmation not consensually resolved or withdrawn, unless otherwise indicated herein;

l. having found the legal and factual bases set forth in the documents Filed in support of confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and

after due deliberation and good and sufficient cause appearing therefor, and based on the decision set forth on the record, it is hereby **FOUND, ORDERED, and ADJUDGED that:**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A. Jurisdiction and Venue. This Court has jurisdiction over the Chapter 11 Cases and confirmation of the Plans pursuant to 28 U.S.C. § 1334. Confirmation of the Plans is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O), and this Court has jurisdiction to enter an order confirming the Plans. Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Commencement and Joint Administration of Chapter 11 Cases. On June 26, 2016 and July 5, 2016 (collectively, the "Commencement Dates"), the Debtors commenced the Chapter 11 Cases by Filing their bankruptcy petitions. By order of this Court [Docket No. 40], the Chapter 11 Cases are being jointly administered for procedural purposes. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C. Judicial Notice. This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, but not limited to, all pleadings and other documents Filed, all orders entered, and all evidence and arguments made, proffered, adduced, and/or presented at the various hearings held before this Court during the pendency of the Chapter 11 Cases.

D. Plans Supplement. The Filing and notice of the Plans Supplement, as subsequently amended, supplemented, and/or modified by Filings with this Court (including by the Filing of the Loan Commitment, as defined in the Plans Supplement), were proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Kansas (the "Local Rules"), and the Disclosure Statement Order, and no other or further notice is or shall be required.

E. Burden of Proof. JD Holdings has met its burden of proving the elements of section 1129 of the Bankruptcy Code.

F. Bankruptcy Rule 3016. The Plans are dated March 30, 2018 and identify JD Holdings as Plan proponent, thereby satisfying Bankruptcy Rule 3016(a). The Filing of the Disclosure Statement satisfies Bankruptcy Rule 3016(b).

**COMPLIANCE WITH SECTION 1129 OF BANKRUPTCY CODE**

G. Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). As further detailed below, the Plans comply with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

1. *Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).* Article II of the Plans designates four (4) Classes of Claims or Equity Interests. Each of the Claims or Equity Interests in each Class is substantially similar to each of the other Claims or Equity Interests in each such Class. Valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Equity Interests under the Plans, thereby satisfying sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2. *Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).* The Plans specify that Classes 1, 2, 3, and 4 are Unimpaired under the Plans, within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

3. *Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).* The Plans specify that Classes 1, 2, 3, and 4 are Unimpaired under the Plans, within the meaning of section 1124 of the Bankruptcy Code. Accordingly, section 1123(a)(3) of the Bankruptcy Code is not applicable.

4. *No Discrimination (11 U.S.C. § 1123(a)(4)).* The Plans provide for the same treatment for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to less favorable treatment on account of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

5. *Implementation of Plan (11 U.S.C. § 1123(a)(5)).* Article VII and other provisions of the Plans, the various documents included in the Plans Supplement, and the terms of this Order provide adequate and proper means for the implementation of the Plans, including, but not limited to, the following:

(a) *Asset Sale*. The Plans contemplate a Sale of all Assets (including Equity Interests) free and clear of all Liens and Claims (except as set forth in these Plans) pursuant to sections 105, 363, 365 and 1129 of the Bankruptcy Code (among others) to JD Holdings or its Affiliates pursuant to the revised APA, which is attached as Exhibit A to the Plans Supplement. In consideration, on or shortly after the Effective Date, JD Holdings shall pay all Allowed Claims in full, except for any Assumed Loans (which shall be paid in accordance of the existing agreements or pursuant to new agreements, as applicable), and contribute Cash and certain Non-Hotel Assets to a new Charitable Trust as set forth in Article V of the Plans.

(b) *Subordination of JD Holdings' ROFR Claim*. As part of the Plans, JD Holdings will subordinate its Claim arising from the ROFR to the payment of all Allowed Claims. JD Holdings has an Allowed Claim of $495,938,161.00 for its Claims against each Debtor jointly and severally arising from the ROFR, subject to the terms and conditions set forth in the Plans, the PSA, and the Settlement Agreement.

(c) *Assumption and Assignment*. JD Holdings shall have until the Effective Date to identify the Rejected Executory Contracts and

Unexpired Leases. Any Executory Contracts and Unexpired Leases not identified as Rejected Executory Contracts and Unexpired Leases shall constitute Assumed Agreements, and be assumed by the applicable Debtor and assigned to JD Holdings or its Affiliates as of the Effective Date, unless set forth otherwise in the Plans or this Order. The Assumed Agreements to be assumed by the applicable Debtor and assigned to JD Holdings or its Affiliates shall be deemed assigned to JD Holdings or its Affiliates pursuant to section 365(f) of the Bankruptcy Code as of the Effective Date of the Plans, *provided however*, that in some instances, the assignment of the Assumed Agreement will be delayed, with the actual assignment occurring sometime after the Effective Date, and this Order approves such delayed assignment. In such instance, the date of assignment for such delayed Assumed Agreements shall be the actual date of the assignment. The non-Debtor counterparty to the Assumed Agreements shall be entitled to the Cure Costs of any default under such Assumed Agreement to be paid by JD Holdings to the extent that such Cure Costs are Allowed Claims. The applicable assignee to each of the Assumed Agreements has provided adequate assurance of future performance.

(d) *Funding for Plans Transactions*. Funds to consummate the Sale and other Plans Transactions shall come from JD Holdings and its Affiliates and financing from third parties, including from the Sale Lender pursuant to the Sale Financing Facility.

The Plans, therefore, satisfy section 1123(a)(5) of the Bankruptcy Code.

6. *Charter Provisions (11 U.S.C. § 1123(a)(6)).* Pursuant to the Plans, JD Holdings or its Affiliates will purchase the Debtors' Assets (including Equity Interests). Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are not applicable.

7. *Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).* Pursuant to the Plans, all Allowed Claims will be paid in full, and JD Holdings or its Affiliates will purchase the Debtors' Assets (including Equity Interests). Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code are not applicable, but, to the extent it is applicable, JD Holdings has disclosed the management of the purchaser.

8.    *Additional Plan Provisions (11 U.S.C. § 1123(b)).*  As set forth below, the discretionary provisions of the Plans comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

(a)    *Impairment/Unimpairment of Classes (11 U.S.C. § 1123(b)(1)).*  In accordance with section 1123(b)(1) of the Bankruptcy Code, Article IV.B. of the Plans provides that Classes 1, 2, 3, and 4 are Unimpaired.

(b)    *Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).*  In accordance with section 1123(b)(2) of the Bankruptcy Code, Article IX of the Plans provides for the assumption of each Executory Contract and Unexpired Lease, unless any such Executory Contract or Unexpired Lease is identified as a Rejected Executory Contract or Lease by JD holdings on or before the Effective Date.

(c)    *Retention of Claims (11 U.S.C. § 1123(b)(3)).*  In accordance with section 1123(b)(3) of the Bankruptcy Code, Article VIII.H. of the Plans provides that all rights to commence and pursue any and all Causes of Action, whether arising before, on, or after the Petition Date, including the Debtors' right to commence, prosecute, or settle such Causes of Action, shall be transferred to JD Holdings on the Effective Date, and JD Holdings thereafter shall commence, prosecute, terminate, or settle such Causes of Action in its sole discretion.  If any Causes of Action cannot be transferred to JD Holdings under applicable law, such Causes of Action shall be retained by the Debtors notwithstanding the occurrence of the Effective Date, and Debtors shall commence, prosecute, terminate, or settle such Causes of Action solely at JD Holdings' direction, in JD Holdings' sole discretion, and at JD Holdings' expense.

(d)    *Sale of All or Substantially All Assets (11 U.S.C. § 1123(b)(4)).*  Article VII of the Plans calls for the sale of all Assets (including Equity Interests) pursuant to sections 105, 363, 365 and 1129 of the Bankruptcy Code (among others) to JD Holdings pursuant to the APA.

(e)    *Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).*  The Plans' other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, but not limited to, provisions for (i) Allowance of certain Claims and Equity Interests, (ii) consummation of the documents that comprise the Sale

> Financing Facility (all such documents the "Sale Financing Facility Documents"), (iii) releases by the Debtors of certain parties, (iv) releases by JD Holdings, (v) releases by certain third parties, (vi) exculpations of certain parties, and (vii) retention of this Court's jurisdiction.

9. *Cure of Defaults (11 U.S.C. 1123(d))*. Article III of the Plans provides for payment in full of all Allowed Claims, including Cure Costs for each of the Assumed Agreements. Any disputed Cure Costs shall be determined in accordance with the procedures set forth in Article IX of the Plans, this Order, and applicable bankruptcy and non-bankruptcy law. As such, the Plans provide that JD Holdings shall cure, or provide adequate assurance that JD Holdings shall promptly cure, all defaults under such Assumed Agreements in compliance with section 365(b)(1) of the Bankruptcy Code, thereby satisfying section 1123(d) of the Bankruptcy Code.

H. JD Holdings' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). As further detailed below, JD Holdings has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

1. JD Holdings has complied with all applicable provisions of the Bankruptcy Code, including, but not limited to, sections 1125 and 1126(b) of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court.

2. Following the entry of the Disclosure Statement Order, the Claims and Solicitation Agent served copies of the Disclosure Statement, Plans, and the "Notice of Confirmation Hearing, Hearing Regarding Assumption and Assignment of Executory Contracts and Unexpired Leases, Deadline to Amend Claims, Deadline to File Plans Supplement, and Deadline to Object to Confirmation" on the appropriate parties, as indicated by the Claims and Solicitation Agent's *Certificate of Service* [Docket No. 1958]. Under section 1126 of the Bankruptcy Code, only holders of allowed claims and allowed equity interests in impaired

classes of claims or equity interests that will retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan, but under the Plans, all Classes are Unimpaired and thus are not entitled to vote.  Accordingly, JD Holdings has complied with the applicable provisions of the Bankruptcy Code.

I.       Plans Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plans reflect extensive, good faith, arm's length negotiations among JD Holdings, the Debtors, and other parties in interest.  The Plans and the process leading to their formulation provide independent evidence of the JD Holdings' good faith, and the Plans both serve the public interest and assure fair treatment of the Holders of Claims and Equity Interests.  The Plans were proposed with honesty and good intentions, and will treat all of the Debtors' stakeholders fairly.  The Plans not only achieve a reorganization/sale of the Debtors, but they also comport with one of the primary objectives underlying a chapter 11 bankruptcy—the equitable distribution of value to creditors. The Plans accomplish these goals through the implementation of various Plans Transactions, all of which provide the means through which the distributions may be made to stakeholders.  The Plans (including the Plans Supplement and all other documents necessary to implement the Plans) reflect the culmination of the combined efforts of JD Holdings, the Debtors, the Debtors' key constituencies, and their respective professionals.  The Plans maximize the value of the Debtor's Assets (against the backdrop of expensive and time-consuming litigation) and properly distribute such value to the Debtors' stakeholders based upon their respective priorities, allowing the Debtors' stakeholders to be paid their Allowed Claims in full.  Accordingly, the Plans are fair, reasonable, and consistent with sections 1122, 1123, and 1129 of the Bankruptcy Code. Based on the foregoing, the facts and record of the Chapter 11 Cases, the Plans have been

proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

J.      Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4)). Article III.B.1. of the Plans provides that all final requests for payment of Claims of a Professional shall be Filed no later than forty-five (45) days after the Effective Date for determination by the Bankruptcy Court, after notice and hearing in accordance with the procedures established by the Bankruptcy Code and prior order of this Court.  Because this Court will determine the Allowed amounts of such Accrued Professional Compensation Claims, the Plans fully comply with the requirements of section 1129(a)(4) of the Bankruptcy Code.

K.      Service of Certain Individuals (11 U.S.C. § 1129(a)(5)).  Section 1129(a)(5) of the Bankruptcy Code requires that (a) the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors, (b) the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy, and (c) the disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtors.  Pursuant to the Plans, JD Holdings will purchase the Debtors Assets (including Equity Interests).  Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are not applicable.

L.      Rate Changes (11 U.S.C. § 1129(a)(6)).  The Plans do not provide for any rate changes over which a governmental regulatory commission has jurisdiction, thereby satisfying Section 1129(a)(6) of the Bankruptcy Code.

M.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).  Each Holder of a Claim or Equity Interest is Unimpaired and deemed to have accepted the Plans, thereby satisfying section 1129(a)(7) of the Bankruptcy Code.

N. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Under the Plans, all classes are Unimpaired and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have voted to accept the Plans, thereby satisfying the requirements of section 1129(a)(8) of the Bankruptcy Code.

O. Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims pursuant to Article III of the Plans satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

P. Acceptance by Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). Under the Plans, all Classes are Unimpaired, so section 1129(a)(10) of the Bankruptcy Code is not applicable.

Q. Feasibility (11 U.S.C. § 1129(a)(11)). The Plans are feasible, including as a result of the consummation of the Sale and proceeds made available pursuant to the Sale Financing Facility Documents as expressly contemplated by the Plans, and the confirmation of the Plans is not likely to be followed by a liquidation or the need for further financial reorganization of the Debtors. All Allowed Claims shall be paid in full in accordance with the terms of the Plans. Moreover, financial projections indicate that sufficient funding and assets exist to pay disputed Claims that are later determined to be Allowed Claims. In addition, JD Holdings has demonstrated its ability to provide adequate assurance of future performance regarding the Assumed Agreements, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

R. Payment of Fees (11 U.S.C. § 1129(a)(12)). Article III.D. of the Plans provides that (i) on the Effective Date or as soon thereafter as reasonably practicable, JD Holdings will

pay all U.S. Trustee Fees that are due and owing on the Effective Date and (ii) following the Effective Date, JD Holdings will pay the U.S. Trustee Fees for each quarter (including any fraction thereof) until the first to occur of the Chapter 11 Cases being converted, dismissed, or closed, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

S. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Article VII.F. of the Plans provides that, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid to the extent required by applicable law, thereby satisfying the requirements of section 1129(a)(13) of the Bankruptcy Code.

T. Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation and, accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Plans.

U. Plan of an Individual Debtor (11 U.S.C. § 1129(a)(15)). None of the Debtors is an individual and, accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Plans.

V. Transfers in Accordance with Non-Bankruptcy Law (11 U.S.C. § 1129(a)(16)). Section 1129(a)(16) of the Bankruptcy Code requires that "[a]ll transfers of property under the plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16). This Court has ruled that the JQH Trust is a business trust. Accordingly, the Plans satisfy the requirements of section 1129(a)(16) of the Bankruptcy Code.

W.   No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Because the

Plans satisfy all of the requirements of section 1129(a) of the Bankruptcy Code, a determination

regarding whether the Plans are confirmable pursuant to section 1129(b) is not necessary.

X.   Only One Plan per Debtor (11 U.S.C. § 1129(c)).  Notwithstanding the other

chapter 11 plans proposed in the Chapter 11 Cases, the Plans are the only plans confirmed by this

Court in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code does

not apply to the Plans.

Y.   Principal Purpose of Plan (11 U.S.C. § 1129(d)).  The principal purpose of the

Plans is not the avoidance of taxes or the avoidance of the application of section 5 of the

Securities Act, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

Z.   Not Small Business Cases (11 U.S.C. § 1129(e)).  The Chapter 11 Cases are not

small business cases and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to

the Chapter 11 Cases.

AA.   Satisfaction of Confirmation Requirements.  Based upon the foregoing, all other

pleadings, documents, and exhibits Filed in connection with confirmation of the Plans, and all

arguments made, proffered, or adduced at the Confirmation Hearing, the Plans satisfy the

requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**ADDITIONAL FINDINGS REGARDING CHAPTER 11 CASES AND PLAN**

BB. Amendment to the Plans. Article V of the Plans is hereby amended as follows: "Greggory Groves and/or Jacqueline Dowdy shall designate the charitable organizations to which each of the ~~Non-Hotel Assets~~ assets in the Charitable Trust are distributed."

CC. Lack of Substantive Consolidation. This Court finds that the Debtors have not been substantively consolidated and that the Plans do not substantively consolidate the Debtors.

DD. Implementation. All Plans Documents necessary to implement the Plans, including, but not limited to, those in the Plans Supplement, are essential elements of the Plans and have been negotiated in good faith and at arm's length, and the entry into and consummation of the transactions contemplated by each such Plans Document is in the best interests of the Debtors and the Holders of Claims or Equity Interests and shall, upon completion of documentation and execution, be legal, valid, binding, and enforceable Plans Documents, and shall not be in conflict with any federal, state, or local law. JD Holdings and the Debtors have exercised reasonable business judgment in determining which Plans Documents to enter into and have provided sufficient and adequate notice of such Plans Documents. JD Holdings and the Debtors are authorized, without any further notice to, or action, order, or approval of, this Court, to finalize, execute, and deliver, and to perform its obligations under, all Plans Documents relating to the Sale and other Plans Transactions and the implementation of the Plans, including, without limitation, the Sale Financing Facility Documents.

EE. Transfers by the Debtors. All transfers of property of the Debtors shall be free and clear of all Liens, Claims, charges, interests, and other encumbrances, in accordance with applicable law, except as expressly provided in the Plans or this Order.

FF.    Exemption from Taxation.  The making and delivery of an instrument of transfer under the Plans is exempt from taxation under any law imposing a recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in accordance with section 1146(a) of the Bankruptcy Code.

GG.    Sale.  The Sale is an essential element of the Plans, and the entry into and consummation of the transactions contemplated by the Plans Documents that comprise the Sale, including the Sale Financing Facility Documents, is in the best interest of the Debtors and the Holders of Claims and Equity Interests.  JD Holdings has provided fair value for the Sale contemplated in the Plans.

HH.    Consumer Privacy Ombudsman's Report.  Having reviewed the *Report of Consumer Privacy Ombudsman* (the "Consumer Privacy Ombudsman's Report") [Docket No. 2056] and given due consideration to the facts, circumstances, and conditions of the Sale, this Court finds that JD Holdings is a Qualified Buyer, as defined in the Consumer Privacy Ombudsman's Report, and the Sale is approved subject to the recommendations in the Consumer Privacy Ombudsman's Report.


II.    Injunction, Exculpation, and Releases.

1.    This Court has jurisdiction under sections 157 and 1334(a) and (b) of title 28 of the United States Code to approve releases, exculpations, and injunctions. Section 105(a) of the Bankruptcy Code permits this Court to issue injunctions and approve of the releases and exculpations set forth in Article VIII of the Plans.  For the avoidance of doubt, the releases and exculpations set forth in the Plan are applicable to the Debtors' independent

directors or managers and their respective advisors. Moreover, the Plans provide for payment in full of the Allowed Claims in these Chapter 11 Cases and as a result, nothing in the Tenth Circuit prohibits approval of third-party releases.

2. Notwithstanding anything in the Plans or this Order to the contrary, UBS Securities, LLC ("UBS") is hereby included as a Debtor Released Party solely for purposes of the release provisions provided for in Paragraph G of Article VIII of the Plans, except that nothing in this provision shall (i) release UBS from any claims or defenses the Debtors may have against UBS, (ii) release UBS from any claims or defenses JD Holdings may have against UBS arising out of or related to UBS' employment by the Debtors in these cases, or (iii) preclude JD Holdings from contesting any claims asserted by UBS against the estates.

3. Based on the record before this Court, the releases by the Debtors, the releases by JD Holdings, the releases by third parties (as clarified at the Confirmation Hearing to exclude AJJ Hotel Holdings, Inc. n/k/a JWJ Hotel Holdings, Inc.), the exculpation provisions, and the injunction provisions set forth in the Plans (a) confer substantial benefit to the Debtors, (b) are fair, equitable, and reasonable, (c) are in the best interests of the Debtors, the Holders of Claims or Equity Interests, and parties in interest, (d) are supported by valuable consideration, and (e) do not relieve any Person of liability arising out of an act or omission constituting willful misconduct or fraud.

4. Therefore, this Court finds that the releases by the Debtors, the releases by JD Holdings, the releases by third parties, the exculpation provisions, and the injunction provisions set forth in the Plans (a) were proposed in good faith, are essential to the Plans, are appropriately tailored, and are intended to promote finality and prevent parties from attempting

to circumvent the Plans' terms and (b) are consistent with the Bankruptcy Code and applicable law and, therefore, are legal, valid, binding and enforceable.

JJ. Retention of Jurisdiction. This Court may properly retain jurisdiction over any matter arising under the Bankruptcy Code, or arising in, or related to, the Chapter 11 Cases or the Plans, after the Confirmation and after the Effective Date, and any other matter or proceeding that is within this Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. Findings of Fact and Conclusions of Law. The findings of fact and conclusions of law set forth herein or incorporated herein by reference, and the record of the Confirmation Hearing, constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent that any of the prior findings of fact constitute conclusions of law, they are adopted as conclusions of law. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as findings of fact.

2. Confirmation. All requirements for the confirmation of the Plans have been satisfied. Accordingly, the Plans, in their entirety, are CONFIRMED pursuant to section 1129 of the Bankruptcy Code. Each of the terms and conditions of the Plans and the exhibits and schedules thereto, including, but not limited to, the Plans Supplement, and any amendments, modifications, and supplements thereto, and any amendments set forth in this Order, are an integral part of the Plans and are incorporated by reference into this Order. The failure to specifically describe or include any particular provision of the Plans in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plans be approved and confirmed in their entirety. The Plans comply with all applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Upon execution, the documents comprising the Plans and all other documents contemplated by the Plans, including, without limitation, the Plans Documents and the Sale Financing Facility Documents, shall constitute the legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and conditions and the terms and conditions of the Plans and this Order.

3. Objections. All parties have had a fair opportunity to litigate all issues raised by the Objections, or which might have been raised, and the Objections have been fully and fairly litigated. All Objections, responses, statements, reservation of rights, and comments in opposition to the Plans, other than those withdrawn with prejudice in their entirety, waived, settled, or resolved prior to the Confirmation Hearing, or otherwise resolved on the record of the Confirmation Hearing and/or in this Order, are hereby overruled for the reasons stated on the record.

4. Notice. Notice of the Confirmation Hearing, the Plans, and all Plans Documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

5. Plan Classification. The categories listed in Article II of the Plans classify all Claims against, and Equity Interests in, each of the Debtors, if any, for all purposes, including, but not limited to, Confirmation of the Plans and distributions pursuant to the Plans and sections 1122 and 1123(a)(l) of the Bankruptcy Code. This Court hereby holds that: (a) the classifications of Claims and Equity Interests under the Plans (i) are fair, reasonable, and appropriate and (ii) were not done for any improper purpose; (b) valid business, legal, and

factual reasons exist for separately classifying the various Classes of Claims and Equity Interests under the Plans; and (c) the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Equity Interests.

6. Compromise of Controversies. Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plans, the provisions of the Plans shall constitute a good faith compromise of all Claims, Equity Interests, Causes of Action, and controversies and disputes resolved pursuant to the Plans and relating to any contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distributions to be made on account of such Allowed Claim or Equity Interest. The entry of this Order shall constitute this Court's approval of the compromise or settlement of all such Claims, Equity Interests, Causes of Action, and controversies and disputes, as well as a finding by this Court that such compromise or settlement is in the best interests of the Debtors and Holders of Claims or Equity Interests, and is fair, equitable, and reasonable. Any settlements of objections to the Plans which are conditioned upon the occurrence of the effectiveness of the Plans, shall become effective contemporaneously or substantially contemporaneously on the Effective Date, subject to the terms and conditions of such settlements. Distributions made to Holders of Allowed Claims or Equity Interests are intended to be final. In accordance with the provisions of the Plans, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of this Court, or any other Entity, after the Effective Date, JD Holdings may compromise and settle Claims against, or Equity Interests in, the Debtors, if any, and Causes of Action against other Entities.

7.    Plans Transactions.

a.    This Order shall be deemed to (i) authorize, among other things, the Sale and other Plans Transactions, including assumption and assignment of Assumed Agreements, and the implementation of the Plans, and (ii) require the Debtors and JD Holdings or its Affiliates to execute the APA and other Plans Documents, and take all other actions, as required under these Plans or that JD Holdings otherwise determines are necessary or appropriate to consummate the Sale and other Plans Transactions and implement the Plans.  On and after the Confirmation Date, JD Holdings may take, or require Debtors to take, all actions as may be necessary or appropriate to effect the Sale and other Plans Transactions and the implementation of the Plans.

b.    The APA contemplates a series of closings, starting on the Effective Date and ending no later than the Outside Closing Date.  Notwithstanding the foregoing, if JD Holdings is unable to obtain a required consent for certain Assets, a waiver of a third-party termination right that would be triggered by the sale of certain Assets, or consent for the assumption of the Assumed Loans, by such Outside Closing Date (the "Delayed Assets"), but all Allowed Claims existing as of the Outside Closing Date have been paid by the Outside Closing Date (except only as set forth in section 7.1(c) of the APA), the Debtors shall retain such Delayed Assets free and clear of all Liens and Claims until such time that such Delayed Assets are transferrable to JD Holdings, all as set forth in more detail in section 7.1(c) of the APA.  In such case, all economic benefits and interests from such Delayed Assets shall inure to the benefit of JD Holdings pending such closing on the Delayed Assets and the Debtors and JD Holdings shall execute such agreements as are necessary to effect and evidence that such benefits inure to the benefit of JD Holdings.

c. JD Holdings shall deposit $50 million into escrow (the "Deposit") within three Business Days after this Order becomes a Final Order. If the Effective Date does not occur by the Outside Effective Date, and such failure is not due to a failure of a closing condition in the APA or other Plans Documents, a breach by the Debtors of their obligations under the APA, Plans, the PSA or the Settlement Agreement, a termination by JD Holdings in accordance with the APA, or an appeal of this Order, all as set forth in more detail in section 6.1(a) of the APA, then the Deposit shall be forfeited to the Debtors as their sole and exclusive remedy for such failure.[3]

d. Upon the occurrence of the Effective Date, JD Holdings shall pay the JQH Trust sufficient funds to wrap up the administration and operations of the JQH Trust and the state court probate estate up to $615,000, and subject to the terms, conditions and limitations set forth in the Plans and section 3(a) of the Settlement Agreement.

8. Requirement to Follow Recommendations of Consumer Privacy Ombudsman. JD Holdings shall follow the recommendations in the Consumer Privacy Ombudsman's Report.

9. Section 1146 Exemption. Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to JD Holdings pursuant to, in contemplation of, or in connection with the Plans, or pursuant to (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors, (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (c) the making, assignment, or recording of any lease or sublease, or (d) the making, delivery, or recording of any deed or other instrument of transfer

[3] In addition, the allowance of JD Holdings' Claims may be reversed as set forth in the PSA.

under, in furtherance of, or in connection with, the Plan, including, but not limited to, any deed, bill of sale, assignment, or other instrument of transfer executed in connection with the Sale or other Plans Transaction, shall not be subject to any recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

10.    Vesting of Assets in JD Holdings.

a.    Except as otherwise provided in the Plans, this Order, or any Plans Documents, on the Effective Date, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, all of Debtors' Assets and Causes of Action shall vest in JD Holdings, free and clear of all Liens, Claims, charges, or other encumbrances (except for those Assets (i) contributed to the new Charitable Trust or left behind temporarily, as indicated in the Plans Supplement or APA, or (ii) which will be subject to the security interests of the Sale Lender as provided for in the Sale Financing Facility Documents) without further notice to, or action, order, or approval of, this Court or any other Entity.

b.    On and after the Effective Date, except as otherwise provided in the Plans or this Order, JD Holdings may use, acquire, or dispose of property and compromise or settle any Claims, Equity Interests, or Causes of Action without further notice to, or action, order, or

approval of, this Court, or any other Entity, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

11. Preservation, Transfer, and Waiver of Rights of Action. In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plans, JD Holdings may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including, but not limited to, any Causes of Action that may be described in the Plans Supplement. No Entity may rely on the absence of a specific reference in the Plans, the Plans Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that JD Holdings shall not pursue any and all available Causes of Action against them. JD Holdings expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plans or this Order. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plans or a Court order, the Debtors expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including, but not limited to, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plans. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in JD Holdings.

12. Sale Financing Facility

a. The Debtors and their Affiliates and JD Holdings and its Affiliates, each as applicable, shall execute and deliver to the Sale Lender all such promissory notes, mortgages, deeds of trust, agreements, financing statements, instruments, notices, and other documents the

Sale Lender may reasonably request to release any existing claim or liens on the Debtors' Assets that is subject to the Sale Financing Facility and to more fully evidence, confirm, validate, perfect, preserve and enforce the liens and the security interests of the Sale Lender in such Assets arising under or related to the Sale Financing Facility. All such documents and instruments (other than any such documents and instruments required or permitted by the terms of the applicable Sale Financing Facility Documents to be delivered, recorded or filed after the Effective Date) will be deemed to have been recorded and filed as of the Effective Date. The liens against such Assets shall be valid, binding, perfected and enforceable liens and security interests described in the Sale Financing Facility Documents, and the granting of such liens, and the making of such loans and other extensions of credit to JD Holdings by the Sale Lender, in its capacity as such, shall not be subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as such term is defined in the Bankruptcy Code) of any kind under the Bankruptcy Code or any applicable laws as of the Effective Date and shall not subject the Sale Lender to any liability by reason of incurrence of such obligation or grant of such liens, guarantees or security interests under any applicable law, including, but not limited to, successor or transferee liability.

b.     The guarantees, mortgages, pledges, liens and other security interests, and all other consideration granted pursuant to or in connection with the Sale or other Plans Transactions, including to the Sale Lender, are or will be (as the case may be) hereby deemed to be granted in good faith, for good and valuable consideration and for legitimate business purposes as an inducement to the Sale Lender to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer under the Bankruptcy Code or any applicable laws and shall not otherwise be subject to avoidance,

subordination or recharacterization and shall not subject the Sale Lender to any liability by reason of the incurrence of such obligation or grant of such liens, guarantees or security interests under any applicable law, including, but not limited to, successor or transferee liability. To consummate the Sale and other Plans Transactions and implement the Plans, all Holders of Claims and Equity Interests shall, and hereby are authorized and directed to, promptly cooperate in all respects with the Debtors JD Holdings and the Sale Lender to execute and deliver all instruments, notices, agreements, pay-off letters and other documents reasonably necessary to effectuate and document the satisfaction and release of any and all liens and/or security interests of such Holders in the Debtors Assets, which documents shall be deemed to have been recorded and filed as of the Effective Date or, to the extent a Plans Transaction does not close on the Effective Date, the closing date of such Plans Transaction.

13. Employee and Retiree Benefits.

a. With respect to the approximately 4,000 employees (the "Employees") employed by Debtors and Non-Debtor JQH Entities ("Existing Employer"), upon consummation of the Sale and Other Plans Transactions, JD Holdings or its Affiliates ("New Employer") will offer employment to substantially all of the Employees of Debtors and JQH Accounting (subject to standard background and compliance checks), but in any event a sufficient number of Employees that will not trigger the application of the Worker Adjustment and Retraining Notification Act (or similar local or state laws or regulations) (the "WARN Act"). New Employer will (a) pay salaries or wages to the Employees who accept such offer of employment (the "Rehired Employees") at no less than ninety percent (90%) of the salary or wages of such Rehired Employees existing as of the rehiring date, and (b) recognize the Rehired Employee's

prior years of employment with Existing Employer (including any prior employment with Winegardner & Hammons, Inc. and any predecessor-in-interest to the Debtors).

b.      New Employer shall be responsible for all claims and liabilities with respect to (1) application of the WARN Act, (2) salaries, wages, bonuses, profit sharing and other compensation, vacation and sick leave, worker's compensation, employer's contribution under F.I.C.A., unemployment compensation, welfare benefits, deferred compensation, savings, pension, 401(k) and retirement plan and insurance and other benefits of whatever kind which becomes payable to any Employee, and (3) any alleged or actual unfair labor practices, employment discrimination charges and lawsuits, and other similar claims of any Employees regarding employment matters arising out of or alleged acts or omissions of Existing Manager.

c.      New Employer shall defend, indemnify and hold harmless the Trustees Released Parties from and against all loss, cost, express liabilities, causes of action and claims with respect to the application of the WARN Act.

d.      With respect to the Employees identified in Exhibit A to the Settlement Agreement (the "Designated Employees") who are terminated or resign within 180 days after consummation of the Sale or other Plans Transactions, each Designated Employee shall promptly receive from Existing Employer a lump sum severance payment in the amounts set forth in Exhibit A to the Settlement Agreement upon such termination or resignation.

e.      With respect to the Employees at JQH Management's offices in Springfield, Missouri, or its regional offices, or at JQH Accounting Services, LLC, but who are not specifically identified in Exhibit A to the Settlement Agreement (the "Non-Designated Employees") and who are terminated without cause within 180 days after consummation of the Sale or other Plans Transaction, each Non-Designated Employee shall promptly receive from

Existing Employer a lump sum severance payment equal to one week of salary for every full year of employment by such Non-Employee with any Debtors or Non-Debtor JQH Entities (including any prior employment with Winegardner & Hammons, Inc. or a predecessor-in-interest of the Debtors) up to twenty (20) years of employment.[4]

f. JD Holdings (or its Affiliate) shall provide access to COBRA health insurance coverage to all Employees (both Designated Employees and Non-Designated Employees) who are terminated or resign upon consummation of the Sale or other Plans Transaction.

g. Prior to the Effective Date, each of Ms. Dowdy and Mr. Groves shall continue to perform their regular duties and the duties set forth in the Plans, the Settlement Agreement, and the PSA and receive their regular compensations and benefits provided to them by Existing Employer. Except as otherwise set forth in the Plans Supplement (or other agreement), from and after the Effective Date Ms. Dowdy and Mr. Groves: (a) shall resign from their positions with JQH Management and each and every position they hold with any of the other Debtors (with the exception of their role as successor trustees of the JQH Trust) and (b) shall receive no further compensation from the Debtors in connection with their resignations from such management positions, *provided however,* that promptly upon their respective resignations from JQH Management, unless otherwise agreed to between the Debtors and JD Holdings and as set forth in the Plans Supplement, the Existing Employer or JD Holdings (or its Affiliate) shall pay in a lump sum the severance payable to Ms. Dowdy and Mr. Groves as set forth on Exhibit A to the Settlement Agreement. Notwithstanding the foregoing, as set forth in

[4] If a Non-Designated Employee is offered employment in a location more than 50 miles from his or her current place of employment, the Non-Designated Employee may reject such offer of employment without waiving his or her right to severance under Article VII.F of the Plans.

the Plans Supplements, Mr. Groves and JD Holdings have entered into an agreement pursuant to which Mr. Groves will have continuing duties after the Effective Date for which he will be paid by JD Holdings.

h. With respect to all payments to be made by Existing Employer under Article VII.F. of the plans, JD Holdings (or its Affiliate) shall cause Existing Employer to have sufficient Cash to make such payments.

14. Executory Contracts and Unexpired Leases.

a. JD Holdings shall have until the Effective Date to identify the Rejected Executory Contracts and Unexpired Leases. Any Executory Contracts and Unexpired Leases that are not identified as Rejected Executory Contracts and Unexpired Leases shall constitute Assumed Agreements, and be assumed by the applicable Debtor and assigned to JD Holdings or its Affiliates as of the Effective Date, unless set forth otherwise in the Plans or this Order. The Assumed Agreements to be assumed by the applicable Debtor and assigned to JD Holdings or its Affiliates shall be deemed assigned to JD Holdings or its Affiliates pursuant to section 365(f) of the Bankruptcy Code as of the Effective Date of the Plans, *provided however*, that in some instances, the assignment of the Assumed Agreement will be delayed, with the actual assignment occurring sometime after the Effective Date, and this Order authorizes such delayed assignment. This Court specifically holds that (i) the assumption and assignment of the Assumed Agreements need not occur simultaneously, (ii) pursuant to section 365(f) of the Bankruptcy Code, the assignment may occur after the entry of this Order and after the Effective Date, if necessary, (iii) the effective date of assignment for such delayed Assumed Agreements shall be the actual date of the assignment, and (iv) upon assignment, pursuant to section 365(k) of the Bankruptcy Code, the Debtors, including the JQH Trust, shall have no further liability under such Assumed

Agreements, and upon assignment the counterparty to such Assumed Agreements is enjoined from seeking to enforce any rights or remedies under the Assumed Agreements from the Debtors, including the JQH Trust. The non-Debtor counterparty to the Assumed Agreement is entitled to the Cure Costs of any default under such Assumed Agreement and to adequate assurance of future performance under such Assumed Agreement.

b. Non-Debtor parties to the Assumed Agreements shall File, within twenty (20) days following the Effective Date, a proposed amount of the Cure Costs, and the assumption and assignment of such Assumed Agreement may be conditioned upon the disposition of all issues with respect to such Cure Costs.

c. All Rejected Executory Contracts and Unexpired Leases shall be deemed rejected on the Effective Date, except for those Executory Contracts and Unexpired Leases that have been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date.

d. Non-Debtor parties to Rejected Executory Contracts and Unexpired Leases shall have the right to assert a Claim on account of the rejection of such Rejected Executory Contracts and Unexpired Leases, including under section 502(g) of the Bankruptcy Code, which shall be Filed within twenty (20) days after the Effective Date.

e. With regard to Holiday Inn:

i. JD Holdings (or an affiliate acceptable to HHF) shall assume the Holiday Inn Express Hotel New Development License Agreement dated September 30, 2003 (as same may have been amended), which authorizes the licensee to operate a Holiday Inn Express® & Suites hotel located at 1117 E. St. Louis, Springfield, MO 65806, provided, however, that such assumption shall be in compliance with HHF’s requirements and procedures in HHF’s sole and

absolute discretion, including payment of all fees and costs including attorney's fees incurred by HHF during the pendency of the Chapter 11 Cases.

ii.     Notwithstanding anything to the contrary in this Order or in the Plans, nothing herein shall affect any of the terms, conditions, rights or requirements of that certain (i) Holiday Inn® Hotel Relicensing License Agreement dated April 5, 2016 (as same may have been amended) between Holiday Hospitality Franchising, LLC ("HHF"), as licensor, and W&H Realty, Inc. ("WHR"), as licensee; and (ii) Holiday Inn® Hotel Relicensing Agreement dated June 3, 2011 (as same may have been amended) between HHF, as licensor, and Airport Exchange Hotel Partners, as licensee, all of which terms, conditions, rights and requirements remain unchanged and unaffected by this Order and Plans.

f.     With regard to Oracle:

i.     Notwithstanding anything to the contrary in the Plans, this Order, or the Asset Purchase Agreement, without the prior written consent of Oracle America, Inc., successor in interest to MICROS Systems, Inc. ("Oracle"), the Debtors shall not assume and/or assign to JD Holdings, LLC or its assignee (collectively, "Assignee"), any contract between the Debtors and Oracle unless (1) the appropriate Cure Costs are paid, which amount shall be stipulated to by Oracle and JDH or determined by further Court order; and (2) the execution by the Debtors and Assignee of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Order.

15.     Approved Settlement Agreements.  The settlement agreements previously filed with the Court and announced in Court shall be filed separately as attachments to this Order and are hereby approved pursuant to their terms.

16.     New Charitable Trust.

a.      JD Holdings shall establish the Charitable Trust set forth in Article V of the Plan, as clarified and supplemented in the Plans Supplement, as "The John Q. Hammons Charitable Trust", and shall transfer the amount of $2 million in Cash to the Charitable Trust as of the Effective Date.

b.      Subject to the satisfaction of the conditions set forth in the Plans and Exhibit C of the Plans Supplement or as soon as practicable thereafter, the Missouri Sports Hall of Fame (the "Hall of Fame") shall be transferred by the JQH Trust to the Charitable Trust, or upon the direction of Jacqueline Dowdy and Greggory Groves, directly to the Missouri Sports Hall of Fame, a Missouri not-for-profit corporation.  The Bankruptcy Court shall retain jurisdiction to resolve disputes and issues related to the Charitable Trust and further, to the extent set forth in the Plans Supplement, such disputes may be resolved by the Hon. Dale Somers, in his continuing role as mediator of disputes and issues by and between the Debtors and JD Holdings.

c.      JD Holdings has designated Debtors right, title and interest in Hammons Field, a minor league baseball stadium located in Springfield, Missouri, as described more fully in Exhibit C of the Plans Supplement (the "Stadium") as an asset to transfer to the Charitable Trust under the Plans.  Subject to the satisfaction of the conditions set forth in the Plans and Exhibit C of the Plans Supplement or as soon as practicable thereafter, pursuant to section 365 of the Bankruptcy Code, the JQH Trust shall assume the lease for the Stadium, development agreement, and other agreements, related to the development, ownership, and operation of the Stadium, as well as the lease for the Stadium between the JQH Trust to the Springfield Cardinals, LLC (or its successor or assignee), and the license agreement for the use of the Stadium between the JQH Trust and Missouri State University, as those agreements may have been amended or restated from time to time, and any related agreements thereto.  Upon the occurrence of the

conditions set forth in Exhibit C of the Plans Supplement, or as soon thereafter as is practicable, such leases and agreements shall be assigned by the JQH Trust to the Charitable Trust, and in doing so, the JQH Trust shall assign to the Charitable Trust the development agreement and its rights thereunder including the option to purchase the land for the Stadium. The Charitable Trust shall immediately exercise the option to purchase such land, title to or, if applicable, leasehold interest in such land shall be immediately transferred to the Charitable Trust, and all parties to the relevant agreements and leases are hereby directed to promptly execute such deeds, leases, and other documents necessary to effect such transfer. Upon the transfer to the Charitable Trust of this asset, the sale of such asset shall be governed by Exhibits C and D to the Plans Supplement. In conjunction with the assignment of the foregoing agreements to the Charitable Trust, the Charitable Trust shall execute the promissory note in favor of JD Holdings as set forth in the Plans Supplement, and a mortgage or deed of trust to JD Holdings to secure such promissory note, and JD Holdings shall execute the Parking Agreement as defined and set forth in the Plans Supplement.

17. Disputed Claims and Disputed Equity Interests. The provisions of Article X of the Plans, including, but not limited to, the provisions governing procedures for resolving disputed Claims and disputed Equity Interests, are found to be fair and reasonable and are approved; provided, however, that upon the Effective Date, JD Holdings shall deposit cash equal to the lesser of $25 million or the total disputed amount of all Disputed Claims in a segregated account, with such disputed amounts to be disbursed only upon further order of this Court. Such disputed funds account shall be, and shall be held by an entity that is, subject to the jurisdiction of this Court. Upon the Effective Date, JD Holdings shall promptly provide notice to the holders of all Disputed Claims of the Disputed Claim reserve that they propose to hold pursuant to this

paragraph pending resolution of claims objection. This Court shall retain jurisdiction to adjudicate any disputes between JD Holdings and the holder of any Disputed Claim regarding the appropriate amount of Disputed Claim reserve and shall have the jurisdiction to order that such Disputed Claim reserve be increased or decreased as the Court may determine. The Court may, either sua sponte or upon request of a party in interest, review the appropriate amount of the Disputed Claim reserve.

18. Amendment of Claims. To the extent that any creditors are entitled to amend their Claims, JD Holdings shall have 30 days from the date the amended Claim was Filed to object to the amended Claim.

19. Full and Final Satisfaction of Claims. Except as otherwise provided by the Plans or this Order, all payments and all distributions made by JD Holdings under, and in accordance with, the Plans shall be in full and final satisfaction, settlement, and release of all Claims and Equity Interests.

20. Discharge of Claims and Termination of Interests. Upon the Effective Date and in consideration of the distributions to be made under the Plans, except as otherwise expressly provided under the Plans or this Order, each Holder (as well as any trustees, agents or representatives of each Holder) of a Claim or Equity Interest and any Affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Entities or Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or transferred Equity Interest, if any, in the Debtor JD Holdings, or any of their assets or property,

whether or not such Holder has Filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

21. Release and Exculpation Provisions. All injunctions, releases, and exculpation provisions set forth in the Plans, including but not limited to those contained in Articles VII.C., VII.D., VII.F., and VII.G. of the Plans which shall include the release and exculpation of the independent directors or managers and their advisors, are approved and shall be effective and binding on all Entities or Persons, to the extent provided therein, and as if fully set forth herein.

22. Injunction.

a. Except as otherwise expressly provided in the Plans or this Order, all Entities or Persons who have held, hold, or may hold Claims or Equity Interests that have been released pursuant to the Plans or this Order, discharged pursuant to the Plans and this Order, or are subject to exculpation pursuant to the Plans or this Order are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtors, JD Holdings, or the Sale Lender, in its capacity as such: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Equity Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities or Persons on account of, in connection with, or with respect to any such Claims or Equity Interests; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or Persons or the property or estates of such Entities or Persons on account of, in connection with, or with respect to any such Claims or Equity Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or Persons or against the property or estates of such Entities or Persons on account of, in connection with, or

with respect to any such Claims or Equity Interests unless such Entity or Person has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or proof of Equity Interest or otherwise that such Entity or Person asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Equity Interests released or settled pursuant to the Plans. Nothing in the Plans or this Order shall preclude any Entity or Person from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds so long as the Debtors, as applicable, and any such Entity or Person agrees in writing that such Entity or Person shall (i) waive all Claims against the Debtors, and the estates related to such action and (ii) enforce any judgment on account of such Claim solely against applicable insurance proceeds, if any.

b.      No Holder of any Claim or Equity Interest, and none of any such Holder's Affiliates, or any of their respective current or former trustees, beneficiaries, shareholders, directors, members, partners, managers, officers, employees, agents, representatives, attorneys, beneficiaries, and/or guardians, or the heirs, executors, administrators, successors or assigns of any of the foregoing (collectively, the "Representatives") shall take, or cause to be taken, and each such Holder and each of its Representatives is hereby permanently enjoined from taking, any action that is intended or is reasonably likely to directly or indirectly prevent, impede, hinder, adversely affect, and/or delay any actions or efforts of the Debtors, as applicable, and/or their ability to:  (i) consummate the Sale and the other Plans Transactions and implement the Plans including, without limitation, the Sale Financing Facility Documents; (ii) obtain any

consents and/or approvals, achieve the expiration or termination of any waiting period, and/or take any actions necessary or appropriate to consummate the Sale and the Plans Transactions contemplated by the Plans and this Order including, without limitation, and Sale Financing Facility Documents; or (iii) undertake any acts related to, or in furtherance of, the matters described in clauses (i) and/or (ii) in this paragraph.

23. Modification of Plans. Except as otherwise specifically provided in the Plans or this Order, JD Holdings has the right to alter, amend, modify, or supplement the Plans with respect to any Debtor in any respect, one or more times, after Confirmation, and, to the extent necessary or appropriate, may initiate proceedings in this Court to so alter, amend, modify, or supplement the Plans, or remedy any defect or omission, or reconcile any inconsistencies in the Plans, the Disclosure Statement, or this Order, in such matters as may be necessary or appropriate to effect the purposes and intent of the Plans, *provided that* any such alternation, amendment, modification, or supplement shall not be inconsistent with the terms and conditions of the PSA and Settlement Agreement.

24. Reversal, Modification, or Vacatur of Order. If any or all of the provisions of this Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court of competent jurisdiction, such reversal, modification, or vacatur shall not affect the validity or the enforceability of (i) any act, obligations, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or JD Holdings, as applicable, under or in connection with the Plans (including, but not limited to, pursuant to any other order of this Court) prior to the date that the Debtors or JD Holdings received actual written notice of the effective date of any such reversal, modification, or vacatur or (ii) any provisions of this Order that are not expressly reversed, modified, or vacated by such subsequent order of this Court or any other court of

competent jurisdiction. Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plans, and any alternations, amendments, modifications or supplements thereto.

25. Retention of Jurisdiction. The Bankruptcy Court may properly, and upon the Effective Date shall, retain any jurisdiction it has to the maximum extent possible over all matters arising in, arising under, and related to, the Chapter 11 Cases, including the matters set forth in Article XII of the Plans and section 1142 of the Bankruptcy Code.

26. Successors and Assigns. Except as expressly set forth in the Plans, the rights, benefits, and obligations of any Entity or Person named or referred to in the Plans shall be binding on, and shall inure to the benefit of, (i) any heir, devisee, donee, executor, administrator, guardian of any such Person, and (ii) any Affiliate of such Entity, and each of the foregoing Entities' respective shareholders, members, partners, directors, principals, managers, officers, trustees, beneficiaries, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, consultants, agents, and representatives, and (iii) the predecessors, successors and assigns of each of the foregoing Persons and Entities in clauses (i) and (ii).

27. Further Assurances. The Holders of Claims or Equity Interests receiving distributions under the Plans and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plans or as may be necessary to effectuate the Sale and/or the Sale Financing Facility Documents.

28.    Service of Documents.  Any pleading, notice, or other document required by the Plans to be served shall be served pursuant to the terms of Section XIII.D. of the Plans.

29.    Effectiveness of All Actions.  Except as set forth in the Plans or this Order, all actions authorized to be taken pursuant to the Plans shall be effective on, prior to, or after the Effective Date pursuant to this Order, as applicable, without further notice to, or action, order, or approval of, this Court or further action by the Debtors or JD Holdings or their Affiliates, or their respective Representatives and with the effect that such actions had been taken by unanimous action of such Representatives.

30.    Notice of Confirmation Order and Effective Date; Substantial Consummation of Plan.  Per JD Holdings' agreement with the Office of the United States Trustee, JD Holdings shall provide simple notice of the entry of this Order to all parties in interest, directing them to the website and docket where this Order and all past and future pleadings may be found, as well as advising all parties in interest that there will not be any further notices sent by regular mail. Notwithstanding Bankruptcy Rules 2002(f)(7) and 3020(c), such notice, along with the electronic distribution via CM/ECF of this Order that will occur automatically upon this Court's entry of this Order, shall constitute good and sufficient notice of the entry of this Order.  On the Effective Date, or as soon thereafter as is reasonably practicable, JD Holdings shall file with this Court a "Notice of Effective Date," and the electronic distribution via CM/ECF of this notice that will occur automatically upon its Filing shall constitute appropriate and adequate notice that the Plans have become effective.  Upon the Effective Date, the Plans shall be deemed substantially consummated as to each Debtor entity, consistent with the definition of "substantial consummation" as defined in section 1101(2) of the Bankruptcy Code.

31. Transactions on Business Days. If the date on which a transaction, notice or other action to be taken, or period is to expire, is to occur under the Plans is not a Business Day, then such transaction, notice or other action or expiration shall instead occur on the next succeeding Business Day.

32. Filing of Additional Documents. On or before the Effective Date, JD Holdings may file with this Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plans.

33. Administrative Claims.

a. Except to the extent the Holder of an Allowed Administrative Claim agrees to an alternative treatment, each Holder of an Allowed Administrative Claim (other than of a Professional Compensation Claim) shall receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Administrative Claim, Cash in an amount equal to the unpaid amount of such Allowed Administrative Claim on the date, or as soon thereafter as is reasonably practicable, that is the later of (i) the Effective Date or (ii) the date such Administrative Claim becomes an Allowed Claim or otherwise becomes payable under the Plans.

b. Except for Professional Compensation Claims and U.S. Trustee Fees, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on JD Holdings and other parties in interest no later than the Administrative Claims Bar Date pursuant to the procedures specified in this Order and the notice of the occurrence of the Effective Date. Objections to such requests may be Filed by JD Holdings or any party in interest and must be Filed and served by the Administrative Claims Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy

Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Bankruptcy Court.

c. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, JD Holdings or its Affiliates, or any of their respective property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or JD Holdings or any action by the Bankruptcy Court.

34. Final Fee Applications.

a. Notwithstanding anything herein or in any prior order of this Court to the contrary, all final requests for payment of Claims of a Professional shall be Filed no later than forty-five (45) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by this Court and satisfied in accordance with an order of this Court.

35. Priority Tax Claims. Except to the extent the Holder of an Allowed Priority Tax Claim agrees to an alternative treatment, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the date, or as soon thereafter as is reasonably practicable, that is the later of (i) the Effective Date or (ii) the date such Priority Tax Claim becomes an Allowed Claim or otherwise becomes payable under the Plans.

36. U.S. Trustee Fees. On the Effective Date or as soon thereafter as reasonably practicable, JD Holdings shall pay all U.S. Trustee Fees that are due and owing on the Effective Date. Following the Effective Date, JD Holdings shall pay the U.S. Trustee Fees for each quarter (including any part thereof) until the first to occur of the Chapter 11 Cases being converted, dismissed, or closed.

37. Term of Injunctions or Stays. Unless otherwise provided in this Order or in the Plans, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court, and existing on the Confirmation Date (excluding any injunctions or stays provided in the Plans or this Order), shall remain in full force and effect until the Effective Date. All injunctions or stays provided in the Plans or this Order shall remain in full force and effect in accordance with their terms.

38. Plans Supplement. All materials included in the Plans Supplement (as amended and as may be further amended in accordance with the terms of the Plans or this Order) are integral to, part of, and incorporated by reference into the Plans. The Plans Supplement (as amended and may be further amended in accordance with the terms of the Plans or this Order) and all related documents are hereby approved.

39. No Substantive Consolidation. Nothing in the Plans or this Order shall be interpreted as effecting a substantive consolidation of the Debtors or their estates.

40. Entire Agreement. Except as otherwise indicated, the Plans and the Plans Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plans.

41.     Headings.  The headings in this Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Order.

42.     References to Plan Provisions.  The failure to specifically include or refer to any particular article, section, or provision of the Plans, the Plans Documents, the Sale Financing Facility Documents, or this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of this Court that the Plans be confirmed and any related Plan Documents be approved in their entirety.

43.     Non-Severability.  This Order constitutes a judicial determination that each term and provision of the Plans, as it may have been altered or interpreted in accordance with the foregoing, is (1) legal, valid, binding and enforceable pursuant to its terms, (2) integral to the Plans and may not be deleted or modified without the prior written consent of JD Holdings, and (3) non-severable and mutually dependent.

44.     Appeals.  The period in which an appeal must be filed shall commence upon the entry of this Order on the docket.

45.     Binding Effect; Waiver of Bankruptcy Rules 3020(e), 6004(h), and 7062 and Federal Rule of Civil Procedure 62(a).  The fourteen (14) day stay provided by Bankruptcy Rules 3020(e), 6004(h), and 7062 and Federal Rule of Civil Procedure 62(a) shall not apply to this Order.  Immediately upon the entry of this Order:  (a) the provisions of the Plans shall be binding upon (i) the Debtors, (ii) JD Holdings, (iii) all Holders of Claims against, or Equity Interests in, the Debtors, if any, (iv) each Entity or Person acquiring property under the Plans, (v) any other party in interest, (vi) any Entity or Person making an appearance in the Chapter 11 Cases, and (vii) each of the foregoing's respective affiliates, and each of their respective current or former trustees, beneficiaries, shareholders, directors, members, partners, managers, officers,

employees, agents, representatives, attorneys, beneficiaries, and/or guardians, or the heirs, executors, administrators, successors or assigns of any of the foregoing; and (b) the Debtors and JD Holdings are authorized but not required to consummate the Plans immediately upon entry of this Order.

46. Conflicts with This Order. The provisions of the Plans and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plans provision and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern, and any provision of this Order shall be deemed a modification of the Plans and shall control and take precedence. Subject to paragraph 23 of this Order, the provisions of this Order are integrated with each other and are non-severable and mutually dependent.

47. Failure of the Plans to Go Effective Timely. In the event that the Effective Date does not occur by the Outside Effective Date, then unless the Debtors agree otherwise, and except as otherwise set forth in this paragraph 47, this Order shall be null and void and of no effect, the APA, the PSA, and related Settlement Agreement by and between the Debtors and JD Holdings shall govern the parties' rights, and the assumption of Assumed Agreements set forth herein shall be null and void and of no effect, provided however, that as to any Unexpired Leases of real property the time for which assumption will have expired as of the date of this Order (whether by statute or agreement of the lessor), such Unexpired Leases shall be deemed assumed as of the date of this Order.

Dated: May 11, 2018
Kansas City, Kansas

# # # #

SUBMITTED BY:

OF COUNSEL:

*/s/ Mark Shinderman*
Mark Shinderman (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park East
33rd Floor
Los Angeles, CA 90067-3019
Tel: (424) 386-4000
Fax: (213) 629-5063
mshinderman@milbank.com

Scott A. Edelman (admitted *pro hac vice*)
Jed M. Schwartz (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, NY 10005-1413
Tel: (212) 530-5000
Fax: (212) 530-5219
sedelman@milbank.com
jschwartz@milbank.com

MCDOWELL RICE SMITH & BUCHANAN

Jonathan Margolies (MO 30770)
Skelly Building, Suite 350 (KS Fed 70693)
605 West 47th Street
Kansas City, Missouri 64112
Tel: (816) 753-5400
Fax: (816) 753-9996
jmargolies@mcdowellrice.com

*Counsel for JD Holdings, L.L.C.*