IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | |
| JOHN Q. HAMMONS FALL 2006, LLC et al., | ) ) | Case No.: | 16-21142-RDB |
| | ) | Chapter 11 | |
| | ) | (Jointly Administered) | |
| Debtor(s). | ) | | |

**<u>CLAIMANT INTERQUEST NORTH NO. 1, LLC'S RESPONSE TO THE REVOCABLE TRUST OF JOHN Q. HAMMONS DATED DECEMBER 28, 1989 AS AMENDED AND RESTATED AND RELATED PARTIES' SUPPLEMENTAL SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DETERMINE THE ENFORCEABILITY OF THE THIRD-PARTY RELEASE CONTAINED IN THE CONFIRMATION ORDER</u>**

**COMES NOW,** Claimant Interquest North No. 1, LLC, ("Interquest") and makes the following response to the Revocable Trust of John Q. Hammons dated December 28, 1989 as Amended and Related Parties ("the Trust") Supplemental Suggestions in Support of Their Motion to Determine the Enforceability of the Third-Party Release Contained in the Confirmation Order (Doc. #2764).

## I. <u>RELEVANT TIMELINE & DOCUMENTS</u>

Before considering the merits of the newest arguments asserted by the Trust, it is important to review the procedural history of the case and relevant filings.

1. December 20, 2016, Interquest filed its Proof of Claim (Claim No. 416).

2. March 30, 2018, JD Holdings, L.L.C. filed its Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for all Debtors ("the Plans") (Doc. 1946). The Plans "provide for the Sale of the Assets to JD Holdings and payment in full of all Allowed Claims against Debtors . . . ." (Doc. 1946 at Introduction, Page 1). The Plans further divide the

1

allowed claims into four classes, all of whom are represented to be unimpaired and thus not entitled to vote to accept or reject the Plans. (Doc. 1946 at Art. IV, Para. D at page 14).

3. May 7, 2018, Debtors filed their Sixth Omnibus Objection to Proofs of Claim [Recovery of Debts for Which Debtors are Not Liable] ("Objection") (Doc. 2167) which listed Interquest's claim on Exhibit A. The only basis for the Objection was that the claims "seek recovery of amounts for which the Debtors are not liable." (Doc. 2167 at Para. 9). The Objection provided that "[f]urther explanation of the basis of the objection, where relevant and applicable, may be set forth in Exhibit A hereto." No further or specific basis for the objection to Interquest's claim was set forth in Exhibit A.

4. May 11, 2018, this Court entered its Corrected Order Confirming Modified Amended Joint and Consolidated Chapter 11 Plans for All Debtors field by Creditor JD Holdings L.L.C ("Confirmation Order") (Doc. 2188). This Court found that "all Classes are unimpaired and thus are not entitled to vote." (Doc. 2188 at Sec. H, Para. 2, Page 12). The Court further held that "[a]ll Allowed Claims shall be paid in full in accordance with the terms of the Plans." (Doc. 2188 at Sec. Q, Page 14). Under Article II entitled "Injunction, Exculpation, and Releases" the Court also stated that "the Plans provide for payment in full of the Allowed Claims in these Chapter 11 Cases and as a result, nothing in the Tenth Circuit prohibits approval of third-party releases." (Doc. 2188 at Art. II, Para. 1, Page 19).

5. May 23, 2018, Interquest filed its Response to Debtor's Objection to Proof of Claim (Doc. 2263). Interquest noted that Debtors' Omnibus Objection failed to comply with the Court's Claim Objection Procedures Order (Doc. 1198) and Federal Rule of Bankruptcy Procedure 7008 in that it did not provide precise averment of the objections to Interquest's claims. (Doc. 1198 at Para. 12(a), Page 4). Interquest requested that the Objections be overruled.

6. August – October 2018. Counsel for Interquest and the Trust engaged in settlement discussions via email. In various emails, Counsel for the Trust **for the first time** raises the issue that non-debtor party Jacqueline Dowdy ("Dowdy") was released by the bankruptcy plan. During this time period, Interquest also provided a copy of its proposed first Amended Petition.

7. January 15, 2019, Counsel for the Trust and Interquest meet to discuss settlement. The issue of Dowdy's release is discussed but the parties cannot come to an agreement.

8. June 6, 2019, the Court holds a phone conference and grants Debtors "30 days to file a more exhaustive objection to claim and brief." (Doc. 2695)

9. July 8, 2019, the Trust files its Revised Objections ("Revised Objections") (Doc. 2712). For the first time in a bankruptcy filing, the Trust raises the issue that Dowdy was released by the Plans and the Confirmation Order. (Doc. 2712, Para. 1-6, Pages 2-3). For the first time in a bankruptcy filing, the Trust raises challenges to the sufficiency of Interquest's claim as set forth in its state court petition. (Doc. 2712, Para. 7-35, Pages 3-7).

10. July 29, 2019, Interquest files its Response to the Trust's Revised Objections (Doc. 2726). A copy of Interquest's Proposed First Amended Petition was attached thereto as Exhibit I.

11. August 30, 2019, the Trust filed its Motion for Judgment on the Pleadings on the Claim of Interquest as To Jacqueline A. Dowdy or in the Alternative Motion to Dismiss Jacqueline A. Dowdy from the Interquest Claim and Memorandum of Law in Support Thereof ("Motion for Judgment on the Pleadings") (Doc. 2739). Said motion was noticed for hearing on September 23, 2019.

12. September 17, 2019, Interquest filed its Unopposed Motion to Continue Hearing on Debtors' Revised Objections (Doc. 2743). In said motion, the parties agreed to continue a hearing on the Revised Objections so long as a hearing on the Motion for Judgment on the Pleadings was allowed to proceed on September 23, 2019.

13. September 20, 2019, Interquest field its Response to the Trust's Motion for Judgment on the Pleadings (Doc. 2745).

14. September 23, 2019, The Court conducts a hearing on the Trust's Motion for Judgment on the Pleadings and requests additional briefing from the parties.

15. October 12, 2019, the Trust files a document entitled Supplemental Suggestions in Support of Their Motion to Determine the Enforceability of the Third-Party Release Contained in the Confirmation Order (Doc. 2764). The Court's Docket sheet reflects no Motion with this title.

16. November 8, 2019, the instant brief is filed.

## II. ARGUMENT

### A. Interquest did not Object to the Confirmation Order Because the Order and the Submitted Plans Provided for Payment of All Allowed Claims

The Trust's primary argument is that Interquest cannot now collaterally attack or challenge the language in the Confirmation Order (Doc. 2188) allegedly releasing Jackie Dowdy because Interquest did timely object to the Confirmation Order. Respectfully, this argument ignores and subverts the obvious: Interquest did not object to the Confirmation Order because both the Plans and the Confirmation Order, on their face, provided for payment in full of all allowed claims, as set forth above. The Plans and Confirmation Order further confirmed that allowed claims were unimpaired, "full-pay" basis with no right of creditor voting. In reliance on

4

these representations, there was no reason for Interquest to object because the Order is clear that Interquest's claim, if allowed, would be paid in full.

**B. Interquest was not Placed on Notice or Given an Opportunity to Object to the Release of Third-Party Non Debtors in the Confirmation Order**

It is worth noting that the Trust's argument that Interquest failed to timely object to the Confirmation Order releasing Dowdy and other third-party non-debtors is disingenuous in that the Trust wholly failed to make this specific argument until well after the Confirmation Order was approved and the time for appeal had expired. Specifically, said argument was not raised with Interquest's counsel until October 2018 and was not made in a filing with this Court until the Trust filed its Revised Objections (Doc. 2726) in July of this year. Said argument could and should have been raised in Debtor's Omnibus Objections (Doc. 2167) filed on May 7, 2018, **before** the Court's Confirmation Order was entered later that month. Had it been, Interquest would have objected.[1]

**C. The Release Conflicts with the Plain Language of the Confirmation Order Prohibiting a Discharge for Willful Misconduct and Fraud**

The Trust next argues that the third-party release contained in the Plans and approved by this Court does not contain an exception for fraud and willful misconduct. This is correct; however, the Confirmation Order clearly states that the "releases . . . do not relieve any Person of liability arising out of an act or omission constituting willful misconduct or fraud." (Doc. 2188,

---

[1] Presumably, the Trust will assert that Plan containing language releasing non-debtors should have provided sufficient notice for Interquest to object. This would be nothing more than ripe speculation especially when one considers that the relevant language cited by the Trust is buried in the middle of a paragraph on pages 30-31 of a 44 page document that also provides clear and unambiguous language in the Introduction on Page 1 of the document that all allowed claims would be paid in full.

Art. II, Para. 3). To the extent the release in the Plans and the Confirmation Order conflict, the Confirmation Order, as the "final judgment" (in the Trust's own words) should control. Additionally, the Bankruptcy code itself does not allow discharges for fraudulent activity and willful injury. 11 U.S.C. § 523(a)(4) and (6).

### D. The Colorado Bankruptcy Court's Opinion in *Midway Gold* is Distinguishable and Does Not Support Release of the Non-Debtor Parties in This Case.

The Trust next attempts to distinguish Interquest's argument that non-debtor releases are prohibited in the Tenth Circuit under the holding in *In re Western Real Estate Fund, Inc.,* 922 F.2d 595 (10th Cir. 1990) by citing to *In re Midway Gold US, Inc.,* 575 B.R. 475 (Bankr. D. Co. 2017). At the outset, an opinion from a bankruptcy district court in another state is not binding on this Court, and thus the Court should defer to the Tenth Circuit's holding in *Western Real Estate*. However, even if the Court is inclined to consider *Midway Gold*, it does not support the Trust's position here because it is clear from the *Midway Gold* Court's analysis that it would not have approved non-debtor release in this case had it been presented there. If anything, *Midway Gold* provides support for Interquest's position.

*Midway Gold* is a nearly 50 page opinion concerning proposed confirmation of a Chapter 11 liquidation plan that is very narrowly tailored and must read in its entirety and carefully considered. The passages selectively cited by the Trust appear on only two pages of the opinion and ignore the full analysis and conclusions of the Court over the subsequent 15-16 pages wherein it found both 1) that it lacked subject matter jurisdiction over the claims against the third-party non-debtor released parties; and 2) denied confirmation of the plan. *Midway Gold* 575 B.R. at 522. Underlying the whole opinion is a deep skepticism of third-party non-debtor releases which the Court repeatedly--citing to Circuit Court precedent--stated should be used

6

only in rare cases or in cases presenting "truly unusual" circumstances. *Id.* at 503 n. 89 and 504. This is not one of those cases.

Perhaps the most critical language from *Midway Gold* appears at page 506 of the opinion, which the Trust cites for the proposition that this Court should allow discharge of Dowdy and other third-party non-debtors because the release is necessary for reorganization; the release is narrowly tailored; and Interquest did not object or consent to the proposed injunction. (Doc. 2764 at page 4). This language is removed from the Court's full context and analysis at page 506 of the opinion which reads as follows:

> The Court must also find the release to be necessary for the reorganization and appropriately tailored to apply only to claims arising out of or in connection with the reorganization itself, and not to matters which would have no effect upon the estate. Otherwise, the releases in question may be beyond the jurisdiction of the bankruptcy court and its authority to finally adjudicate such matters. The Court must also examine whether the releasing creditors have consented to or objected to the proposed injunctions. **Lastly, the releases may not provide nondebtors with "blanket immunity" for all times, transgressions and omissions and may not include immunity from gross negligence or willful misconduct. It is not the intention of the Court to permit non-debtors to purchase immunity from unrelated torts, no matter how substantial their contribution to a debtor's reorganization.**

*Id.* at 506 (emphasis added).[2]

Here, there can be no doubt that Dowdy and other non-debtors are attempting to use the third-party non-debtor release as "blanket immunity" from any and all tort claims, including Interquest's claims that existed prior to the bankruptcy filing and allege fraud and willful misconduct. This is the opposite of "narrowly tailored" and the argument raised in *Midway Gold*. *See id.* at 514 (noting Debtors' argument that the releases were narrow in scope because they excluded claims based on gross negligence, willful misconduct and fraud.) Further, as noted by the *Midway Gold* court during its examination of *Western Real Estate*, use of third-party non-

---

[2] Like here, the third-party release language in the *Midway Gold* case excluded "any claims or Causes of Action against any Released Party resulting from gross negligence, willful misconduct, or fraud." *Midway Gold,* 575 B.R. at 492.

debtor releases to permanently enjoin claims post-bankruptcy in such a manner remains impermissible. *See Midway Gold,* 575 B.R. at 500-501.

*Midway Gold* is also factually distinguishable. First, the third-party release was narrowly tailored to apply to post-petition claims to claims or causes of action "existing or taking place on or after the Petition Date but prior to or on the Effective Date . . . ." *Id.* at 492 and 515. *See also id.* at 521 ("It is not enough for the releases to be narrowly tailored to relate only to conduct or omissions during the Chapter 11 case.") Here, the Trust would have the non-debtor releases applied to pre-petition claims such as Interquest's, which is the exact scenario disapproved of by the *Western Real Estate* Court. 922 F.2d at 599-600. Second, the proposed confirmation order in *Midway Gold* afforded impaired creditors voting rights and contained defined "opt-out" and objection mechanisms, which were discussed at length by the *Midway Gold* court. *Id.* at 492, 515, 521-22. No such "opt-out" provisions exist here, because both the Plans and the Confirmation Order provided that creditors were unimpaired and not entitled to vote.

Most critical however, remains the fact that in this case, both the Plans and the Confirmation Order provided that all allowed claims should be paid in full. As noted by the *Midway Gold* Court, the presence of such language in confirmation plans in crucial in determining whether to allow non-debtor releases or enjoin non-consenting creditors' claims against non-debtors. *See, e.g., Midway Gold,* at 503-504 (discussing and citing cases from the First, Second, Fourth, Sixth, Eighth and Eleventh Circuits each holding that a bankruptcy court should consider, as a relevant factor or element, whether the plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction or non-debtor release).

Accordingly, for all the reasons stated above, *Midway Gold* provides no support for the Trust's position and cannot be read to support a non-debtor third party release bar under the facts present in this case.

**E. Interquest Should not be Barred from Filing an Amended Petition**

In its last argument, the Trust argues that Interquest should be barred from filing a motion to lift the stay or amend its claim to file an Amended Petition. Notably, the Trust cites no authority for this proposition, choosing instead to basically make a laches or waiver argument that too much time has passed.

Simply put, Interquest filed its petition in state court when it did to ensure that said claims were filed within the relevant statutes of limitation. During the time the case was pending in state court and before the bankruptcy was filed, Interquest and counsel were aware of and monitoring the ongoing litigation disputes between JD Holdings and the various JQH companies (collectively "JQH"). Interquest and counsel surmised that such proceedings could result in JQH's bankruptcy or insolvency. Accordingly, Interquest opted to take a "wait and see" approach, knowing that it had as a matter of right the ability to file an amended petition under Missouri Rule of Civil Procedure 55.33(a). This assumption proved correct and countless hours and expense were saved by not ligating the matter prior to bankruptcy being filed.[3]

With respect to seeking relief from this Court to file an Amended Petition or Claim, counsel for Interquest desired to wait an receive guidance from this Court about how it wanted to proceed with this matter during the June 2019 telephone conference. At that time, Interquest's position as set forth in its response to the Objections (Doc. 1198) was that the Trust's Objections were wholly insufficient and there was some thought that the Court might summarily overrule

---

[3] It is also worth noting that JQH—as the filer of the motion to dismiss—could have noticed it its motion for hearing in state court at any time but never did.

9

them and allow the claim. Instead, the Trust requested and was granted leave to file Revised Objections in July which raised for the first time in the bankruptcy case specific objections to the sufficiency of Interquest's state court claims. Had Interquest sought relief at that time to file a Claim and the Court granted relief allowing them to do so, the Trust would then have filed additional revised objections, in turn requiring another response from Interquest, and further delaying this matter. Indeed, shortly thereafter, the Trust filed its separate Motion to Dismiss Dowdy. The parties then agreed in an unopposed motion (Doc. 2743), to pass all objections and focus on the release of Dowdy at the September 20, 2019 hearing. Following that hearing, the Court ordered further briefing as to whether or not Dowdy should be released. Once that issue is resolved and the Court has made its order, only then will Interquest be in the appropriate position to file an Amended Petition or Claim.

### III. CONCLUSION

As noted by Interquest previously in its Response to the Trust's Revised Objections (Doc. 2726),

> "Interquest is not asking the Court to reconsider Confirmation of the Plans or to vacate or modify the Order confirming the Plans. Interquest is simply requesting that its claims be adjudicated as allowed or disallowed and if allowed, be paid as contemplated by the Plan." (Doc. 2726 at page 5)

This statement remains as true today as when the Response was first filed in August of this year, despite multiple changing arguments from the Trust. Accordingly, for all these reasons, as well as the reasons previously stated in Interquest's previous filings, incorporated herein by reference, the Trust's Motion must be denied.

10

Case 16-21142    Doc# 2772    Filed 11/08/19    Page 10 of 11

Respectfully Submitted,

**The Olsen Law Firm, LLC**


By: __/s/ Jill D. Olsen_____
Jill D. Olsen          KS #20105
118 N. Conistor Ln., Suite B290
Liberty, MO 64068
Telephone: (816) 521-8811
Fax: (816) 278-9493
jill@olsenlawkc.com


**David Schroeder Law Offices, P.C.**


By: /s/ David E. Schroeder_____
David E. Schroeder
1524 E. Primrose, Suite A
Springfield, MO 65804
bk1@dschroederlaw.com
(417) 890-1000
(417) 886-8563 facsimile
ATTORNEYS FOR INTERQUEST


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served electronically to those parties who have entered an appearance in the Court's Electronic Court Filing (ECF) System and conventionally, via first-class mail, postage prepaid, to those parties who have requested notice but are not participating in the ECF System, pursuant to instructions appearing on the electronic filing receipt received from the U.S. Bankruptcy Court, on this 8th day of November, 2019.

/s/ Jill D. Olsen_____
Jill D. Olsen