# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF KANSAS AT KANSAS CITY

In re

JOHN Q. HAMMONS FALL 2006, LLC, *et al.*,

Debtors.

Chapter          11

Case No. 16-21142 (RDB)
*Jointly administered*

## DEBTORS' MOTION TO DETERMINE EXTENT OF LIABILITY FOR QUARTERLY FEES PAYABLE TO THE UNITED STATES TRUSTEE PURSUANT TO 28 U.S.C. § 1930(a)(6) AND MEMORANDUM IN SUPPORT

The above-captioned debtors in these jointly administered bankruptcy cases (collectively, the "Debtors") hereby file this Motion to Determine Extent of Liability for Quarterly Fees Payable to the United States Trustee Pursuant to 28 U.S.C. § 1930(a)(6) (the "Motion"). In support of the Motion, the Debtors state as follows:

### PRELIMINARY STATEMENT

The current fee dispute involves the United States' unequal treatment of bankruptcy debtors based on when and where debtors filed their petitions. The Constitution requires laws to be applied uniformly and prohibits retroactive application of laws unless explicitly intended by Congress. The 2017 amendment to 28 U.S.C. § 1930 discussed herein violates the Constitution because it was unequally applied during the first three quarters of 2018 and because it was applied retroactively both without clear Congressional intent and only in states where the United States Trustee Program operates – excluding bankruptcy petitions filed in North Carolina and Alabama.

In 2017, Congress amended the United States Trustee ("UST") fee-calculation statute. The amendment increased the trustee fee by at least 833 percent for certain debtors, including the Debtors in this case. The amendment was not uniformly applied and was applied retroactively without clear Congressional intent. The amendment only applied in certain bankruptcy

jurisdictions and not in all bankruptcy jurisdictions during the first three quarters of 2018. And the amendment applied to pending bankruptcy cases. The amendment violates the Constitution because it only applied in certain jurisdictions and not in all jurisdictions. The amendment also violates the Constitution if it is applied retroactively because Congress did not expressly intend retroactive application. For these reasons as stated more fully below, the Debtors request that Court find the amendment violates the Constitution and determine Debtors' liability for the trustee fees.

## BACKGROUND FACTS

1.      On June 26, 2016 and July 5, 2016 (the "Commencement Dates"), the Debtors commenced chapter 11 bankruptcy cases by filing their bankruptcy petitions in the United States Bankruptcy Court for the District of Kansas (the "Bankruptcy Court").

2.      As of the Commencement Dates, debtor entity JQH – Concord Development, LLC's principal assets were located in the State of North Carolina and had been located there for the one hundred and eighty days immediately preceding the Commencement Dates; accordingly, venue of JQH – Concord Development, LLC's bankruptcy case was proper in, *inter alia*, the United States Bankruptcy Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1408(1).

3.      As of the Commencement Dates, debtor entity Concord Golf Catering Co., Inc. was a North Carolina corporation with its principal place of business located in North Carolina; accordingly, venue of Concord Golf Catering Co., Inc.'s bankruptcy case was proper in, *inter alia*, the United States Bankruptcy Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1408(1).

4.      As of the Commencement Dates, debtor entity Concord Hotel Catering Co., Inc. was a North Carolina corporation with its principal place of business located in North Carolina;

2

accordingly, venue of Concord Hotel Catering Co., Inc.'s bankruptcy case was proper in, *inter alia*, the United States Bankruptcy Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1408(1).

5.      As of the Commencement Dates, debtor entity Hammons of Huntsville, LLC's principal assets were located in the State of Alabama and had been located there for the one hundred and eighty days immediately preceding the Commencement Dates; accordingly, venue of Hammons of Huntsville, LLC's bankruptcy case was proper in, *inter alia*, the United States Bankruptcy Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1408(1).

6.      As of the Commencement Dates, debtor entity Huntsville Catering, LLC was an Alabama limited liability company with its principal place of business located in Alabama; accordingly, venue of Huntsville Catering, LLC's bankruptcy case was proper in, *inter alia*, the United States Bankruptcy Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1408(1).

7.      As of the Commencement Dates, each of the other Debtors were affiliates of JQH – Concord Development, LLC, Concord Golf Catering Co. Inc., and Concord Hotel Catering Co., Inc.; accordingly, venue of each of the Debtors' bankruptcy cases was proper in, *inter alia*, the United States Bankruptcy Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1408(2).

8.      As of the Commencement Dates, each of the other Debtors were affiliates of Hammons of Huntsville, LLC and Huntsville Catering, LLC; accordingly, venue of each of the Debtors' bankruptcy cases was proper in, *inter alia*, the United States Bankruptcy Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1408(2).

CORE/0836979.0002_0002/156318270.5

9.      On October 26, 2017, more than one year after the Commencement Dates, the United States Congress amended Title 28, Section 1930 to increase substantially the formula for UST fee calculations. Effective October 26, 2017, this statute was amended to provide for at least an 833 percent increase in the maximum post-confirmation quarterly fees payable in the cases of certain chapter 11 debtors, from $30,000 per quarter to $250,000 per quarter. *See* Pub. L. 115-72, Div. B, § 1004(c), 131 Stat. 1232 (Oct. 26, 2017). The increases in the quarterly fee payment structure became effective on January 1, 2018, and were applied by the UST across the board to all Chapter 11 cases, including those pending prior to effective date of the amendment, as well as all cases filed thereafter.

10.      Initially upon amendment, however, the increases only applied to quarterly fees paid within the United States Trustee system. Specifically, such fee increases initially were not applied in the Bankruptcy Administrator ("BA") system utilized in the states of North Carolina and Alabama. *See St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1535 (9th Cir. 1994), *superseded by statute*, Balanced Budget Downpayment Act, I, Pub. L. No. 104-99, 110 Stat. 26, 37-38 (1996), *as stated in In re Pettibone Corp.*, 244 B.R. 906, 919 (Bankr. N.D. Ill. 2000).

11.      The relevant portion of this amended section provides:

> During each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000.

28 U.S.C. § 1930(a)(6)(B).[1]

---

[1] The balance in the Fund was less than $15 million at the end of fiscal year 2017. See Chapter 11 Quarterly Fees, https://www.justice.gov/ust/chapter-11-quarterly-fees (last visited November 26, 2019). Absent the 2017 enactment of subparagraph (B), the United States Trustee System Fund (the "Fund") was predicted to have a negative balance in fiscal year 2018. *See* U.S. Dep't Justice, *United States Trustee Program FY 2018 Performance Budget Congressional Submission*, at 9, https://www.justice.gov/file/968761/download.

CORE/0836979.0002_0002/156318270.5

12.     On March 30, 2018, JD Holdings, L.L.C. filed its Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for all Debtors filed by Creditor JD Holdings, L.L.C. (the "Plan") (ECF Doc. 1946).

13.     The Court confirmed the Plan and, on May 11, 2018, entered its Corrected Order Confirming Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for all Debtors Filed by Creditor JD Holdings, L.L.C. (the "Confirmation Order") (ECF Doc. 2188).

14.     The Effective Date of the Plan was May 17, 2018. (ECF Doc. 2238).

15.     On June 1, 2018, the Debtors filed their Chapter 11 Monthly Operating Report Filed by Debtor John Q. Hammons Fall 2006, LLC for January of 2018, showing disbursements totaling $40,186,407.00. (ECF Doc. 2292).

16.     On June 1, 2018, the Debtors filed their Chapter 11 Monthly Operating Report Filed by Debtor John Q. Hammons Fall 2006, LLC for February of 2018, showing disbursements totaling $36,249,768.00. (ECF Doc. 2293).

17.     On September 12, 2018, the Debtors filed their Chapter 11 Monthly Operating Report Filed by Debtor John Q. Hammons Fall 2006, LLC for March of 2018, showing disbursements totaling $43,470,348.00. (ECF Doc. 2467).

18.     As a result of the reported disbursements for the first quarter of 2018, the Debtors paid $1,221,423.43 in UST fees, as set forth on Exhibit A attached hereto.

19.     On December 16, 2019, the Debtors filed their Chapter 11 Monthly Operating Report Filed by Debtor John Q. Hammons Fall 2006, LLC for April of 2018, showing disbursements totaling $45,575,321.00. (ECF Doc. 2788).

20.     On December 16, 2019, the Debtors filed their Chapter 11 Monthly Operating Report Filed by Debtor John Q. Hammons Fall 2006, LLC for May of 2018, showing disbursements totaling $757,776,421.00. (ECF Doc. 2789).

21.     On February 28, 2020, the Debtors filed their Quarterly Operating Report for the second quarter of 2018, showing disbursements of $12,208,287.00. (ECF Doc. 2815).

22.     As a result of the reported disbursements for the second quarter of 2018, the Debtors paid $1,119,874.41 in UST fees, as set forth on Exhibit B attached hereto.

23.     On February 28, 2020, the Debtors filed their Quarterly Operating Report for the third quarter of 2018, showing disbursements totaling $40,194,073.73. (ECF Doc. 2816).

24.     As a result of the reported disbursements for the third quarter of 2018, the Debtors paid $405,336.54 in UST fees, as set forth on Exhibit C attached hereto.

25.     On February 28, 2020, the Debtors filed their Quarterly Operating Report for the fourth quarter of 2018, showing disbursements totaling $43,229,725.57. (ECF Doc. 2817).

26.     As a result of the reported disbursements for the fourth quarter of 2018, the Debtors paid $440,034.16 in UST fees, as set forth on Exhibit D attached hereto.

27.     On February 28, 2020, the Debtors filed their Quarterly Operating Report for the first quarter of 2019, showing disbursements totaling $28,662,756.75. (ECF Doc. 2818).

28.     As a result of the reported disbursements for the first quarter of 2019, the Debtors paid $289,938.79 in UST fees, as set forth on Exhibit E attached hereto.

29.     On February 28, 2020, the Debtors filed their Quarterly Operating Report for the second quarter of 2019, showing disbursements totaling $5,703,467.78. (ECF Doc. 2819).

30.     As a result of the reported disbursements for the second quarter of 2019, the Debtors paid $63,616.82 in UST fees, as set forth on Exhibit F attached hereto.

6

31.     On February 28, 2020, the Debtors filed their Quarterly Operating Report for the third quarter of 2019, showing disbursements totaling $5,869,527.16 (ECF Doc. 2820).

32.     As a result of the reported disbursements for the third quarter of 2019, the Debtors paid $61,973.53 in UST fees, as set forth on Exhibit G attached hereto.

33.     On February 28, 2020, the Debtors filed their Quarterly Operating Report for the fourth quarter of 2019, showing disbursements totaling $6,045,414.37 (ECF Doc. 2821).

34.     As a result of the reported disbursements for the fourth quarter of 2019, the Debtors paid $62,195.71 in UST fees, as set forth on Exhibit H attached hereto.

35.     As a result of such structural statutory changes delineating a new fee structure under Section 1930 and based upon the filed Monthly and Quarterly Operating Reports (for all four quarters in the 2018 and 2019 calendar years, the Debtors have paid the UST $3,618,547.00. As the exponential statutory increase was imposed more than a year following the Commencement Dates, none of the relevant parties or the Court was (or could have been) aware of future substantial fee changes as of the Commencement Dates.

36.     Absent the increase, the UST fee that would have otherwise been due and paid would have been $1,122,591.00, a $2,495,956.00 difference (the "Unconstitutional Difference").

37.     The UST will continue substantial, additional payments from the Debtors pursuant to 28 U.S.C. § 1930(a)(6) until final distributions are completed.

## JURISDICTION

38.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

39.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 as well as Paragraph 41 of the Confirmation Order and Article XI of the Plan.

7

## RELIEF REQUESTED

40.     The Debtors respectfully request that the Court determine (a) the amount of UST Fees due and payable by the Debtors as required by 28 U.S.C. § 1930(a)(6), the Plan and this Court's Confirmation Order is equal to the amounts that would have been owed under 28 U.SC. § 1930(a)(6) prior to the Amendment, (b) that 28 U.S.C. § 1930 is unconstitutional due to its violation of the Uniformity Clause as applied to these Bankruptcy Cases, and (c) that the amendment cannot be retroactively applied at all to these Bankruptcy Cases. The Debtors respectfully request the Court also determine that all prospective UST fees due likewise shall be calculated based upon the payment and fee structure in place pursuant to 28 U.S.C. § 1930 as of the Commencement Dates. Finally, the Debtors seek recovery of all excess amounts previously remitted pursuant to the United States Trustee based on the application of the 28 U.S.C. § 1930 amendment to the Bankruptcy Cases, including but not limited to the Unconstitutional Difference.

### A.     The Amendment to Section 1930(a)(6) Creates Non-Uniform Law.

41.     The Uniformity Clause of the Constitution states "Congress shall have Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States; but all Duties, Imposts and Excises shall be *uniform throughout the United States*." U.S. Const. art. I § 8, cl. 1 (emphasis added). Moreover, the Bankruptcy Clause of the Constitution similarly mandates that Congress enact only "uniform Laws on the subject of Bankruptcies throughout the United States." *Id*. art. I § 8, cl. 4; *see, e.g.*, *Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 468 & 472 (1982). As applied to the Debtors and these Bankruptcy Cases, Section 1930 is unconstitutionally non-uniform given that when first applied to the Debtors, the Bankruptcy Administrator ("BA") program utilized in North Carolina

CORE/0836979.0002_0002/156318270.5

and Alabama was not subject to the Section 1930 fee increase amendment approved by Congress in 2017. *See St. Angelo*, 38 F.3d at 1535.

42.     In *St. Angelo*, the Ninth Circuit Court of Appeals struck down a statutory amendment that extended the BA program as violating the Uniformity Clause because the fee system was not uniform among all districts. *See In re Buffets, LLC*, 597 B.R. 588, 594 (Bankr. W.D. Tex. 2019). In response to the Ninth Circuit's decision in *St. Angelo*, Congress amended 28 U.S.C. § 1930 to allow the imposition of fees in BA districts, stating:

> In districts that are not part of a United States Trustee region … the Judicial Conference of the United States may require the debtor in a case under Chapter 11 of this title 11 to pay fees equal to those imposed by paragraph (6) of this subsection.

28 U.S.C. § 1930(a)(7).

43.     Thereafter, the Judicial Conference of the United States ("JCUS") approved the Bankruptcy Committee's recommendation to impose quarterly fees in BA districts in the amounts specified in 28 U.S.C. § 1930(a)(6). While that may have remedied the constitutional issue in *St. Angelo*, no such remedy exists here. The Bankruptcy Judgeship Act of 2017 violated the Constitution when it increased quarterly fees only in the UST program. "Under any standard of review, when Congress provides no justification for enacting a non-uniform law, its decision can only be considered to be irrational and arbitrary." *St. Angelo*, 38 F.3d at 1532. While the quarterly fees now apply in BA districts from October 1, 2018, forward, the increased fees these Debtors had to pay during the first three quarters of 2018 violates the Uniformity Clause. *See In re Buffets, LLC*, 597 B.R. at 595. Moreover, although the increased fees are now uniformly charged nationwide for debtors filing Chapter 11 cases, debtors in pending cases filed before October 1, 2018 are still experiencing geographic discrimination. *See In re Circuit City Stores, Inc.*, Case No. 08-35653-KRH, 2019 WL 3202203, at \*6 (Bankr. E.D. Va. Jul. 15, 2019).

9

44.     Indeed, while the Bankruptcy Judgeship Act of 2017 revised subsection 1930(a)(6) to increase the UST quarterly fees by up to 833 percent beginning in the first quarter of 2018, this increase did not immediately also apply to the BA districts. In fact, the Judicial Conference of the United States ("JCUS") only authorized such increase to begin applying to BA districts in October 2018, nine months after the effective date in UST districts. *See* Report of the Judicial Conference, at 11-12 (Sept. 2018), https://www.uscourts.gov/sites/default/files/st09-2018_0.pdf. As a result, the Section 1930 amendment violates the Uniformity Clause for this Case. *See In re Buffets, LLC*, Case No. 16-50557-RBK, 2019 Bankr. LEXIS 396 (Bankr. W.D. Tex. Feb. 8, 2019), appeal docketed, Civ. Act. No. 5:19-cv-00173 (W.D. Tex. Feb. 22, 2019).

45.     While *In re Buffets, LLC* suggests that the JCUS's decision to apply the fees to BA districts likely addresses the amendment's violation of the Uniformity Clause for future cases, the uniformity gap between the timing of the fee increases for two programs nevertheless nullifies the application of the increased fees for such disparate period. "The Bankruptcy Judgeship Act of 2017 violated the Constitution when it increased quarterly fees only in the UST program. 'Under any standard of review, when Congress provides no justification for enacting a non-uniform law, its decision can only be considered to be irrational and arbitrary.'" *Buffets, LLC*, 597 B.R. at 594 (quoting *St. Angelo*, 38 F.3d at 1535). As a result, while the quarterly fees apply in BA districts beginning in October 1, 2018, the increased fees charged to the Debtors during the first three quarters of 2018 violate the Uniformity Clause. Therefore, the Debtors are not required to pay the higher fees for the first three quarters of 2018, but instead are entitled to have the uniform quarterly fees capped at $30,000, consisting with the amounts that would be payable in respect of cases pending in the BA districts.

CORE/0836979.0002_0002/156318270.5

46.     This is particularly true in this case, where the Debtors were eligible to file in either North Carolina or Alabama, which would have resulted in the Debtors paying substantially lower quarterly fees. *Id.* at *7. There can be no serious dispute that the cost of a given bankruptcy proceeding for similarly situated debtors must be consistent in every judicial district throughout the country. *Id.* The Amendment is not uniform and is therefore unconstitutional.

**B.     The Amendment To Section 1930(a)(6) Should Have No Retroactive Application.**

47.     In addition to the non-uniformity defect, the higher fees cannot be imposed upon the Debtors for any time period because the amendment would be retroactively applied to the Debtors and the Bankruptcy Cases. This is improper because there is a legal presumption against retroactively applying statutes, including those affecting rights in bankruptcy cases. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 286 (1994); *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79-82 (1982); *Holt v. Henley*, 232 U.S. 637, 639-40 (1914); *Auffm'ordt v. Rasin*, 102 U.S. (12 Otto) 620, 622-23 (1881). In *Landgraf*, the Supreme Court set out a detailed analysis of the presumption. *Id.* Such analysis "is founded upon sound considerations of general policy and practice, and accords with long held and widely shared expectations about the usual operation of legislation." *Id.* Additionally, the logic of the presumption against retroactivity pervades the reasoning in many other constitutional aspects, including the Ex Post Facto Clause, the Obligation of Contracts Clause, the Fifth Amendment Takings Clause, the prohibition on Bills of Attainder, and the Due Process Clause. *Id.* at 266. Put simply,

> [t]he presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other. It ought not to receive such a construction unless the words used are so clear, strong and imperative that no other meaning can be annexed to them or unless the intention of the legislature cannot be otherwise satisfied.

*United States Fid. & Guar. Co. v. United States*, 209 U.S. 306, 314 (1908).

11

48.     As in this instance, when Congress has not expressly prescribed the statute's proper reach, this Court must apply the rules of construction to determine the reach intended by Congress in the statute. *Lindh v. Murphy*, 521 U.S. 320, 323-26 (1997). The text of the statute begins "[d]uring each of fiscal years 2018 through 2022," but this language does not evince a clear intent by Congress to retroactively apply the fees to any already-pending cases. 28 U.S.C. § 1930(a)(6)(B). "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf*, 511 U.S. at 257. Moreover, the legislative history to Section 1930 provides no instruction on the matter, let alone an explicit command for the amendment to have some retroactive effect. *See* H.R. Rep. No. 764, 99th Cong., 2d Sess. 22, reprinted in 1986 U.S.C.C.A.N. 5227, 5234-35. Instead, the Judiciary Committee Report, when proposing the amendment, briefly mentioned that the UST program is funded by fees collected in bankruptcy cases. It further reported that in the past there had been a surplus in the UST fund, but a more recent trend downward in nationwide filings had decreased the amount of funds available. *See Id*. Such brief mention of a downward trend of case filings certainly cannot serve as a legislative directive for retroactive application of the amendment.

49.     If unable to determine the statute's reach, then this Court "must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when [it] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. If the statute is retroactive, "then it does not govern absent clear congressional intent favoring such a result." *Id.* Very recently, Chief Bankruptcy Judge Ronald King of the Western District of Texas utilized these specific principles in *Buffets, LLC* to analyze this Section 1930 fee increase language. Pointing to the *Landgraf*

CORE/0836979.0002_0002/156318270.5

instruction that "absent clear congressional intent, the court is not to read a statute substantially increasing the monetary liability of a private party to apply to conduct occurring before the statute's enactment." *In re Buffets, LLC*, 597 B.R. at 596. Bankruptcy Judge King declined to apply the fee increase retroactively. *Id*.

50.     Consistent with the Chapter 11 policy of maximizing payments to creditors espoused in *Bank of Am. Nat'l Tr. and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) and numerous other authorities, it is not surprising that nothing in the statute or legislative history indicates that Congress intended the UST fee amendment to apply retroactively. While the increase applies only to disbursements made on or after January 1, 2018, it does not specify its application to any cases pending before such date. Consistent with established principles of statutory interpretation and in accord with Bankruptcy Judge King's application and reasoning, the new UST fee of $250,000 per quarter must not be applied to any open cases having a confirmed plan when the statute became effective on October 26, 2017, and the fees became effective in the first quarter of 2018.

51.     As expressed by the Supreme Court, "[t]he extent of a party's liability, in the civil context as well as the criminal, is an important legal consequence that cannot be ignored." *Landgraf*, 511 U.S. at 283-84. Absent clear congressional intent, the Court is not to read "a statute substantially increasing the monetary liability of a private party to apply to conduct occurring before the statute's enactment." *Id*. at 284. Yet that is precisely what the UST's purported application of the amendment to Section 1930 has done in the Case.

52.     The amendment imposes new duties and liabilities on the Debtors that were not contemplated at the time the Bankruptcy Cases were filed. This increase in financial liability negatively impacts the Debtors. An increase in UST fees to $250,000 per quarter ($1 million per

13

year) requires the Debtors to pay at least 833 percent more in UST fees than were required as of the Commencement Dates. This certainly was never contemplated by any of the constituents or the Court at the time of the Commencement Dates. And there is nothing to indicate it was contemplated by Congress either.

53.     Finally, the amendment's possible retroactive application would be violative of the Due Process Clause that "No person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend V. The Supreme Court has made clear that "[t]he Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." *Landgraf*, 511 U.S. at 266 (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976)). The Debtors or other constituents certainly had no notice of the increased fees prior to filing the Bankruptcy Cases.

54.     Certainly any notice that might have been given could not have occurred until after the Commencement Dates. Notice provided by the UST in December of 2017 after the amendment cannot constitute adequate due process given that, at the time of such notice, the Debtors had just filed their proposed plan and JD Holdings, L.L.C. was preparing to file its competing plan immediately upon expiration of the Debtors' exclusive period. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf*, 511 U.S. at 265.

55.     Unlike future potential debtors who, with the advance knowledge of the increased fee structure, may make informed choices regarding the viability of a Chapter 11 filing versus

CORE/0836979.0002_0002/156318270.5

other restructuring options outside of bankruptcy to avoid the quarterly fees, the Debtors had no such opportunity. *See Buffets, LLC*, 597 B.R. at 597.

56.     Additionally, the equities weigh strongly in favor of granting the Motion. When assessing the imposition of UST fees upon distributions calculated on direct rollover payments, the Bankruptcy Court in *In re Cranberry Growers Coop.*, 592 B.R. 325 (Bankr. W.D. Wis. 2018), direct appeal granted, No. 18-3289 (7th Cir. Dec. 10, 2018), noted that such assessment would not further the underlying purposes of Section 1930(a)(6)—to impose a tax on those who use the UST system so that system self-funds. In that context the Court noted that the debtor and its creditors are adequately represented, and as a result there is a very limited need for UST involvement. As in *Cranberry Growers*, the huge new fees bear no reasonable relationship or proportionality to the amount of work performed, which makes the purported retroactivity and nonuniformity even more problematic. *See, e.g., Cranberry Growers Coop.*, 592 B.R. at 334.

57.     Accordingly, the Debtors should not be required to comply with the new fee structure. Instead, the Debtors should continue to follow the fee structure in place prior to the amendment. Such modified payment structure is required in order to avoid constitutional violations and an unintended retroactive application of the statute in contravention of what was intended at the time the Debtors commenced these Bankruptcy Cases.

WHEREFORE, the Debtors respectfully request that the Court enter an order:  (a) finding and concluding that the Amendment is unenforceable because it violates the United States Constitution; (b) holding that the Debtors are only liable for quarterly fees under 28 U.S.C. § 1930 as it existed prior to the Amendment; (c) directing the Office of the United States Trustee to refund the Unconstitutional Difference to the Debtors; and (d) granting such other and further relief as is just and proper.

Respectfully submitted,

STINSON LLP

/s/ Nicholas J. Zluticky
Nicholas J. Zluticky KS # 23935
1201 Walnut, Suite 2900
Kansas City, MO 64106
(816) 691-3278
nicholas.zluticky@stinson.com

*Counsel for the Debtors*

16