**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 27th day of July, 2020.**



_____
Robert D. Berger
United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

**JOHN Q. HAMMONS FALL 2006, LLC, et al.**,   Case No. 16-21142
                                              Chapter 11
                       Debtors.               Jointly Administered

---

### ORDER DENYING DEBTORS' MOTION TO DETERMINE
### EXTENT OF LIABILITY FOR QUARTERLY FEES PAYABLE
### TO THE UNITED STATES TRUSTEE

Article I, Section 8, Clause 4 of the United States Constitution provides that Congress shall have power "to establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." In their "Motion to Determine Extent of Liability for Quarterly Fees Payable to the United States Trustee Pursuant to

28 U.S.C. § 1930(a)(6),"[1] Debtors[2] argue that Congress violated this "**Bankruptcy Clause**" when it amended 28 U.S.C. § 1930(a)(6) in 2017 to adjust the quarterly fee payable to the United States Trustee in large Chapter 11 cases.  Moreover, Debtors argue, application of that "**2017 Amendment**" to their cases—which had already been filed when the amendment was enacted—is unconstitutionally "retroactive" under *Landgraf v. USI Film Productions*, 511 U.S. 244 (1994).[3]  Debtors' motion seeks an order directing the Trustee to refund them $2,495,956, representing the difference between the fees Debtors actually paid and the fees Debtors allege they would have paid under the previous version of § 1930(a)(6).  For the reasons that follow, this Court will deny the motion.[4]

### A. The 2017 Amendment to 28 U.S.C. § 1930(a)(6)

Section 1930(a)(6) provides that a Chapter 11 debtor must pay a quarterly fee to the Trustee until the case is converted or dismissed.  Such fees are deposited into the United States Trustee System Fund (the "**UST System Fund**") to offset the

---

[1] ECF 2823.

[2] "**Debtors**" are The Revocable Trust of John Q. Hammons dated December 28, 1989 as Amended and Restated and 75 of its subsidiaries and affiliates.

[3] The "antiretroactivity principle" articulated in *Landgraf* "finds expression in several provisions of our Constitution," including the Due Process Clause.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994).

[4] Because the Court will deny Debtors' motion on substantive grounds, it need not reach the Trustee's argument that the motion is procedurally improper (i.e., that Debtors' challenge to § 1930 should have been brought via adversary proceeding rather than by motion).  *See, e.g.*, *In re Exide Techs.*, 611 B.R. 21, 25 n.2 (Bankr. D. Del. 2020).

cost of trustee operations.[5] The quarterly fee, which is based on that quarter's disbursements and calculated on a sliding scale, was capped at $30,000 when Debtors filed for bankruptcy in 2016.[6] However, on October 26, 2017, Congress amended § 1930(a)(6) to add the provision Debtors now challenge as unconstitutional (the "**2017 Amendment**"):

> During each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000,[7] the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000.[8]

The 2017 Amendment became effective on January 1, 2018.[9] Because the UST System Fund was below the $200 million threshold at the end of the 2017, 2018,

---

[5] *See* 28 U.S.C. § 589a(a), (b)(5); *but see* Bankruptcy Judgeship Act of 2017, Pub. L. 115-72, § 1004(b), 131 Stat. 1224, 1232 (2017) (temporarily diverting 2% of the quarterly fees collected through § 1930(a)(6) from the UST System Fund to the general fund of the Treasury).

[6] Under the previous version of § 1930(a)(6), which now constitutes most of § 1930(a)(6)(A), the sliding scale began at $325 for each quarter in which disbursements totaled less than $15,000 and maxed out at $30,000 for each quarter in which disbursements totaled more than $30 million. *See* 28 U.S.C. § 1930(a)(6) (2016).

[7] Congress increased the threshold in 2019 to $300 million for fiscal years 2020 and 2021. *See* Department of Justice Appropriations Act, 2020, Pub. L. No. 116-93, div. B, tit. II, § 219, 133 Stat. 2317, 2415 (2019).

[8] 28 U.S.C. § 1930(a)(6)(B); *see* § 1004(a), 131 Stat. at 1232.

[9] *See* § 1004(c), 131 Stat. at 1232 ("The amendments made by this section shall apply to quarterly fees payable under section 1930(a)(6) of title 28, United States Code, as amended by this section, for disbursements made in any calendar quarter that begins on or after the date of enactment of this Act.").

3

and 2019 fiscal years,[10] the 2017 Amendment increased the quarterly fee for each quarter in which disbursements exceeded $1 million, and the cap on that fee increased from $30,000 to $250,000.[11] As a result, Debtors have collectively paid (by their calculation) $2,495,956 more in quarterly fees than they would have under the previous version of § 1930(a)(6).

B. <u>Bankruptcy Administrator Districts and 28 U.S.C. § 1930(a)(7)</u>

The United States Trustee system ("**UST system**") was first introduced in 1979 as a pilot program in eighteen federal judicial districts.[12] With the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Congress expanded the system nationwide to include all remaining districts except—as a result of successful lobbying by bankruptcy judges and senators—the six federal judicial districts in North Carolina and Alabama.[13] Although the Bankruptcy Act of 1986 required those two states to join the UST system by October

---

[10] *See* U.S. Dep't of Justice, *Chapter 11 Quarterly Fees*, https://www.justice.gov/ust/chapter-11-quarterly-fees ("The balance in the Fund as of September 30, 2017 was less than $15 million. . . . The balance in the Fund as of September 30, 2018 was less than $45 million. . . . The balance in the Fund as of September 30, 2019 was less than $135 million.").

[11] The 2017 Amendment thus increased the maximum fee for each quarter in which disbursements exceeded $1 million by $220,000, or 733% of the original maximum fee.

[12] *See* Dan J. Schulman, *The Constitution, Interest Groups, and the Requirements of Uniformity: The United States Trustee and the Bankruptcy Administrator Programs*, 74 Neb. L. Rev. 91, 119 (1995).

[13] *See id.* at 123.

4

1, 1992, Congress later extended the deadline for ten years[14] and subsequently removed it altogether.[15] As a result, and even though 28 U.S.C. § 581(a) requires the Attorney General to appoint United States trustees in regions that specifically include North Carolina and Alabama, today's Chapter 11 debtors in those two states participate in a Bankruptcy Administrator system ("**BA system**") instead.[16] Because the BA system is separate from the UST system,[17] section 1930(a)(6) does not require Chapter 11 debtors in North Carolina and Alabama to pay any fees to the United States Trustee.

In *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994),[18] a divided panel of the Ninth Circuit held that § 317(a) of the Judicial Improvements Act of 1990, which amended 28 U.S.C. § 581(a) by extending the deadline for North Carolina and Alabama to enter the UST system from 1992 to 2002, violated the Bankruptcy Clause.[19] In response, Congress—rather than require those states to

---

[14] *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 317(a), 104 Stat. 5089 (1990).

[15] *See* Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, § 501, 114 Stat. 2410 (2000).

[16] *See* Schulman, *supra* note 12, at 119-20.

[17] The two systems are located in different branches of government: the UST system is part of the Department of Justice, whereas the BA system is part of the Administrative Office of the United States Courts. *See id.*

[18] The Ninth Circuit amended *St. Angelo* the following year by removing the paragraph beginning "We need not" and the first two words of the following paragraph ("In addition"). *See St. Angelo v. Victoria Farms, Inc.*, 46 F.3d 969 (9th Cir. 1995).

[19] "In the absence of any evidence that Congress was addressing a geographically isolated problem or some other legitimate concern, we are required to hold that its

5

enter the UST system—enacted 28 U.S.C. § 1930(a)(7), under which the Judicial Conference of the United States "may require" a Chapter 11 debtor in a district outside the UST system "to pay fees equal to those imposed" by § 1930(a)(6).[20] The Judicial Conference did so in 2001, ordering that such fees "as . . . amended from time to time" be imposed in BA districts.[21] Thus, although the constitutional issue identified in *St. Angelo* remained, the "injury" identified in that case (i.e., the fee discrepancy) was eliminated. This was the case until 2018, when—despite the Judicial Conference's 2001 order—BA districts did not implement the 2017 Amendment until October 1, 2018, and then only in newly-filed cases.[22] In contrast, the UST system has applied the 2017 Amendment since January 1, 2018, to pending and newly-filed cases alike.

### C. The 2017 Amendment Is Not "Retroactive" Under *Landgraf*

Because they filed their Chapter 11 cases in 2016, before Congress amended § 1930(a)(6), Debtors argue that for the Trustee to apply the amendment to them would be impermissibly "retroactive" under *Landgraf v. USI Film Prods.*, 511 U.S.

---

decision to ignore the [Bankruptcy] Clause in enacting section 317(a) renders that section unconstitutional." *St. Angelo*, 38 F.3d at 1532.

[20] Such fees are used to fund the operation and maintenance of the United States courts, not the UST system. *See* 28 U.S.C. §§ 1930(a)(7), 1931.

[21] *See* Report of the Proceedings of the Judicial Conference of the United States 45-46 (Sept./Oct. 2001), https://www.uscourts.gov/sites/default/files/2001-09_0.pdf.

[22] *See* Report of the Proceedings of the Judicial Conference of the United States 11 (Sept. 13, 2018), https://www.uscourts.gov/sites/default/files/2018-09_proceedings.pdf.

6

244 (1994).[23] However, the Tenth Circuit rejected a similar argument in 1998. Before 1996, Chapter 11 debtors were only required to pay quarterly trustee fees until plan confirmation. That year, Congress amended § 1930(a)(6) to require payment of the fee until the case was converted or dismissed. In *In re CF & I Fabricators of Utah, Inc.*, 150 F.3d 1233 (10th Cir. 1998), a Chapter 11 debtor argued that it would be impermissibly retroactive under *Landgraf* to assess the newly-applicable post-confirmation fees against debtors whose Chapter 11 plans had already been confirmed (and, in that particular debtor's case, substantially consummated) when § 1930(a)(6) was amended. The Tenth Circuit rejected that argument, holding that the 1996 amendment to § 1930(a)(6) did not operate "retroactively" under *Landgraf* because it "only trigger[ed] *prospective* assessment of fees." *See CF & I*, 150 F.3d at 1237 (citation omitted). Like the amendment of § 1930(a)(6) at issue in *CF & I*, the 2017 Amendment assesses no new fees against *past* disbursements; rather, it only increases fees for *future* disbursements. If increasing the future fees of a Chapter 11 debtor with a confirmed plan is not retroactive under *Landgraf*, application of the 2017 Amendment to Debtors—whose Chapter 11 plans had not even been filed when the 2017 Amendment was enacted—

---

[23] "A statute does not operate 'retroactively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . . Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 269. Under *Landgraf*, a law has "retroactive" effect where it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. "If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*

7

is not retroactive under *Landgraf* either.[24] The majority of bankruptcy courts to have considered this issue agree that application of the 2017 Amendment to pending cases is not "retroactive" under *Landgraf*.[25] *See, e.g., MF Global Holdings LTD. v. Harrington (In re MF Global Holdings LTD)*, Case No. 11-15059 (MG), Adv. Pro. Case No. 19-01379 (MG), 2020 WL 1970507, at *11-13 (Bankr. S.D.N.Y. Apr.

---

[24] Debtors cite *Lindh v. Murphy*, 521 U.S. 320 (1997), in their *Landgraf* analysis. According to the Tenth Circuit:

> *Lindh* merely clarified that *Landgraf* does not make traditional rules of statutory construction completely irrelevant to retroactivity problems. If the district court, using normal rules of construction, can conclude that a statute should not be applied to the case before the court, there is no need to address *Landgraf*'s question of whether the statute would have a retroactive effect.

*F.D.I.C. v. UMIC, Inc.*, 136 F.3d 1375, 1385 (10th Cir. 1998). Here, using normal rules of construction, the Court concludes that the 2017 Amendment does apply to Debtors' cases. *See Exide*, 611 B.R. at 27 (The language of the subsection indicates that the object of the amendment is not cases, but disbursements. . . . Similarly, the temporal reach of the amendment is also expressly defined, not through case dates, but through fiscal years: 2018 through 2022. . . . The legislative history supports this interpretation. . . . The 2017 Amendment partially displaced the fee schedules contained in section 1930(a)(6) but did not amend the introductory sentence."); *see also* § 1004(c), 131 Stat. at 1232 ("The amendments made by this section shall apply to quarterly fees payable under section 1930(a)(6) of title 28, United States Code, as amended by this section, for disbursements made in any calendar quarter that begins on or after the date of enactment of this Act."); Obj. of the United States to Debtor's Mot. ¶ 97, ECF 2868 ("Debtors effectively ask the Court to re-write the amendment to apply to quarterly fees payable in 'any calendar quarter that begins on or after the date of enactment other than in pending cases.' But those are not the words that Congress wrote.").

[25] Although some cases have held that the 2017 Amendment is "retroactive" under *Landgraf*, those cases involved Chapter 11 debtors with already-confirmed plans. *See In re Life Partners Holdings, Inc.*, 606 B.R. 277 (Bankr. N.D. Tex. 2019); *In re Buffets, LLC*, 597 B.R. 588 (Bankr. W.D. Tex. 2019).

8

24, 2020); *In re Exide Techs.*, 611 B.R. 21, 27-30 (Bankr. D. Del. 2020). Therefore, Debtors' first argument fails.

### D. The 2017 Amendment Does Not Violate the Bankruptcy Clause

Next, Debtors argue that the 2017 Amendment violates the Bankruptcy Clause, under which Congress has the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." According to Debtors, the 2017 Amendment is unconstitutionally "non-uniform" because Chapter 11 debtors in BA districts were not subject to increased quarterly trustee fees until October 1, 2018, and then only in newly-filed cases. This Court disagrees.

"To survive scrutiny under the Bankruptcy Clause, a law must at least apply uniformly to a defined class of debtors." *Ry. Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 473 (1982). That clause, however, "does not deny Congress power to take into account differences that exist between different parts of the country, and to fashion legislation to resolve geographically isolated problems." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 159 (1974). Rather, the Bankruptcy Clause "forbids only two things. The first is arbitrary regional differences in the provisions of the Bankruptcy Code. The second is private bankruptcy bills—that is, bankruptcy laws limited to a single debtor—or the equivalent." *In re Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (Posner, C.J.) (citing *Gibbons*, 455 U.S. at 472).

At issue in *Blanchette* was the Rail Act, which "[b]y its terms . . . only applied to rail carriers operating in a region defined to include the Midwest and Northeast of the United States" and "solely applied to railroads that were in reorganization on

9

January 21, 1974, or entered reorganization within 180 days thereafter."[26] Citing *The Head Money Cases*, 112 U.S. 580, 595 (1884),[27] the *Blanchette* Court held that the Rail Act satisfied the Bankruptcy Clause because it was "designed to solve 'the evil to be remedied.'" *Blanchette*, 419 U.S. at 161.

> Our construction of the Bankruptcy Clause's uniformity provision comports with this Court's construction of other "uniform" provisions of the Constitution. The Head Money Cases . . . involved the levy on ships' agents or owners of a 50-cent tax for any passenger not a United States citizen who entered an American port from a foreign port "by steam or sail vessel." Individuals engaged in transporting passengers from Holland to the United States challenged the levy as contrary to Art. I, s 8, cl. 1, under which Congress is empowered to lay and collect "all Duties, Imposts and Excises (which) shall be uniform throughout the United States." The argument was that the head tax violated the uniformity clause because it was not also levied on noncitizen passengers entering this country by rail or other inland method of transportation. The Court upheld the tax, stating: "The tax is uniform when it operates with the same force and effect in every place where the subject of it is found. The tax in this case . . . is uniform and operates precisely alike in every port of the United States where such passengers can be landed." 112 U.S., at 594, 5 S. Ct., at 252.
>
> That the tax was not imposed on noncitizens entering the Nation across inland borders did not render the tax nonuniform since "the evil to be remedied by this legislation has no existence on our inland borders, and immigration in that quarter needed no such regulation." Id., at 595, 5 S. Ct., at 252. Similarly, the Rail Act is designed to solve "the evil to be remedied," and thus

---

[26] Schulman, *supra* note 12, at 112; *see Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 109-11 (1974).

[27] *Cf. United States v. Ptasynski*, 462 U.S. 74, 83 n.13 (1983) ("Although the purposes giving rise to the Bankruptcy Clause are not identical to those underlying the Uniformity Clause, we have looked to the interpretation of one clause in determining the meaning of the other.") (citing *Blanchette*, 419 U.S. at 160-61).

10

> satisfies the uniformity requirement of the Bankruptcy Clause.

*Blanchette*, 419 U.S. at 160-61.[28] According to *Blanchette*, a law does not violate the Bankruptcy Clause simply because it operates in a particular geographic region: "This argument has a certain surface appeal but is without merit because it overlooks the flexibility inherent in the constitutional provision." *Id.* at 158.

Against this background, this Court joins the bankruptcy courts of Delaware and the Southern District of New York in holding that the 2017 Amendment satisfies the Bankruptcy Clause.[29] *Cf. MF Global*, 2020 WL 1970507, at *22-24; *Exide*, 611 B.R. at 36-38. Like the Rail Act at issue in *Blanchette*, the 2017 Amendment was designed to solve "the evil to be remedied"—here, the depletion of the UST System Fund. The lack of a concurrent fee increase in North Carolina and Alabama did not render the amendment itself non-uniform, because the UST system does not operate in those states; as in *Blanchette*, "the evil . . . has no existence" there. Like the Rail Act, the 2017 Amendment operates on a uniform class of debtors (here, Chapter 11 debtors within the UST system) and applies with

---

[28] *Cf. Ptasynski*, 462 U.S. at 83 ("Where Congress defines the subject of a tax in nongeographic terms, the Uniformity Clause is satisfied."); *id.* at 82 ("[T]he Framers did not intend to restrict Congress' ability to define the class of objects to be taxed. They intended only that the tax apply wherever the classification is found.").

[29] Because the Court holds that the 2017 Amendment is constitutional under the Bankruptcy Clause, the Court does not reach the Trustee's argument that the Congress enacted the 2017 Amendment under its power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing powers," U.S. Const. art. 1, § 8, cl. 18, which does not require uniformity.

11

the same force and effect in every place where such debtors are found.  *Cf. MF Global*, 2020 WL 1970507, at *23:

> We agree with those cases that have concluded that the 2017 Amendment applies uniformly to debtors in UST Districts to solve the depleting funding unique to the UST Districts.  The BA Districts do not support the UST Fund and the UST Fund does not support the BA Program.  The Plaintiffs do not challenge the dual UST/BA system as unconstitutional, and as long as the two regimes co-exist, they will face funding problems that may be unique to only one of them.

Debtors here do not challenge the dual UST/BA system either.  While *St. Angelo* would suggest that § 501 of the Federal Courts Improvement Act of 2000 (which removed the deadline for North Carolina and Alabama to enter the UST system) is unconstitutional, the constitutionality of § 501 is not before this Court.  The only law at issue here is the 2017 Amendment, which—because it was "designed to solve the evil to be remedied" and applies uniformly to a defined class of debtors—satisfies the Bankruptcy Clause.  And because the 2017 Amendment satisfies the Bankruptcy Clause, Debtors' second argument fails.

### E. Conclusion

Because the 2017 Amendment is not retroactive under *Landgraf* and does not violate the Bankruptcy Clause, Debtors' motion is hereby denied.

IT IS SO ORDERED.

###

12

Case 16-21142    Doc# 2942    Filed 07/27/20    Page 12 of 12